UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

|  |  |  |
|---|---|---|
| VALERIE BEZDEK, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 12-10513-DPW |
| v. | ) ) ) | **HEARING REQUESTED** |
| VIBRAM USA INC. and VIBRAM FIVEFINGERS LLC, | ) ) ) | |
| Defendants. | ) ) | |

_____

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION
TO DISMISS THE AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

Dana Baiocco
Christopher M. Morrison
Joseph B. Sconyers
JONES DAY
100 High Street, 22nd Floor
Boston, Massachusetts 02110
(617) 960-3939

Counsel for Defendants
Vibram USA Inc. and
Vibram FiveFingers LLC

July 18, 2012

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ............................................................................................. ii

INTRODUCTION ........................................................................................................... 1

RELEVANT BACKGROUND ........................................................................................ 2

ARGUMENT .................................................................................................................. 5

I.   PLAINTIFF'S STATUTORY CLAIMS ARE
DEFICIENT BECAUSE SHE HAS NOT PLED THE REQUISITE
ELEMENTS OR FACTS NECESSARY TO SUSTAIN THOSE CLAIMS ...................... 6

    A.   None of Plaintiff's False Advertising Claims Are
Supported By Particularized Averments of Falsity or Deception ................................. 8

    B.   Plaintiff's Failure to Plead an Actionable
Injury Likewise Disposes of Her Statutory Claims .................................................... 11

    C.   Plaintiff's Claim Under Mass. Gen. Laws ch. 266, § 91
Fails For The Additional Reason That She Has Not Pled Scienter ............................. 13

II.  PLAINTIFF'S UNJUST ENRICHMENT
"CLAIM" MUST ALSO BE DISMISSED ....................................................................... 14

III. PLAINTIFF CANNOT MAINTAIN
EITHER OF HER PROPOSED CLASS CLAIMS ........................................................... 14

CONCLUSION ................................................................................................................ 20

# TABLE OF AUTHORITIES

**Page**

## CASES

*Am. Honda Motor Co., Inc. v. Motorcycle Info. Network, Inc.*,
  390 F. Supp. 2d 1170 (M.D. Fla. 2005) ...................................................................14

*Andrews v. Am. Tel. & Tel. Co.*,
  95 F.3d 1014 (11th Cir. 1996) .............................................................................20

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...............................................................................................5

*Begualg Inv. Mgt. Inc. v. Four Seasons Hotel Ltd.*,
  No. 10-22153-CIV, 2011 WL 4434891 (S.D. Fla. Sept. 23, 2011) ..........................6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...............................................................................................5

*Casavant v. Norwegian Cruise Line, Ltd.*,
  919 N.E.2d 169 (Mass. App. Ct. 2009) ...................................................................6

*DeGiovanni v. Jani-King Intern., Inc.*,
  262 F.R.D. 71 (D. Mass. 2009) .............................................................................14

*Gather v. Credit Control Services*,
  623 F.Supp.2d 113 (D. Mass. 2009) .......................................................................7

*Gen. Tel. Co. of Southwest v. Falcon*,
  457 U.S. 147 (1982) .............................................................................................18

*Greebel v. FTP Software, Inc.*,
  194 F.3d 185 (1st Cir. 1999) ...................................................................................5

*Hager v. Vertrue*,
  Civil Action No. 09-11245-GAO, 2011 WL 4501046 (D. Mass. Sept. 28, 2011) ..................14

*Hammond v. JPMC Specialty Mortg. LLC*,
  Civil Action No. 10–11121-DPW, 2011 WL 1463632 (D. Mass. Apr. 15, 2011) ...................5

*Healy v. Beer Inst.*,
  491 U.S. 324 (1989) .............................................................................................19

*Himes v. Brown & Co. Sec. Corp.*,
  518 So. 2d 937 (Fla. Dist. Ct. App. 1987) ...............................................................7

*In re Citigroup, Inc.*,
   Civil Action No. 00-11912-REK, 2001 WL 1682865 (D. Mass. Dec. 19, 2001) ..................20

*In re LifeUSA Holding, Inc.*,
   242 F.3d 136 (3d Cir. 2001)..................................................................................................20

*In re Lupron Mktg. and Sales Practices Litig.*,
   295 F. Supp. 2d 148 (D. Mass. 2003) ..................................................................................14

*In re M3 Power Razor Sys. Mktg. & Sales Pract. Litig.*,
   270 F.R.D. 45 (D. Mass. 2010)............................................................................................17

*K-S Pharm., Inc. v. Am. Home Prods. Corp.*,
   962 F.2d 728 (7th Cir. 1992) ..............................................................................................19

*Kilbane v. Sec'y of Human Servs.*,
   438 N.E.2d 89 (Mass. App. Ct. 1982) .............................................................................7, 13

*Kwaak v. Pfizer, Inc.*,
   881 N.E.2d 812 (Mass. App. Ct. 2008) ..............................................................................19

*Llado-Carreno v. Guidant Corp.*,
   No. 09-20971-CIV, 2011 WL 705403 (S.D. Fla. Feb. 22, 2011)..........................................7

*Lopes v. Commonwealth*,
   811 N.E.2d 501 (Mass. 2004) ............................................................................................14

*Markarian v. Conn. Mut. Life Ins.Co.*,
   202 F.R.D. 60 (D. Mass. 2001)...........................................................................................18

*Martin v. Mead Johnson Nutrition Co.*,
   Civil Action No. 09-11609-NMG, 2010 WL 3928710 (D. Mass. Sept. 13, 2010) .............8, 13

*Martin v. Mead Johnson Nutrition Co.*,
   Civil Action No. 09-11609-NMG, 2010 WL 3928707 (D. Mass. Sept. 30, 2010) .............8, 13

*N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale*,
   567 F.3d 8 (1st Cir. 2009)...................................................................................................13

*Philip Morris USA Inc. v. Hines*,
   883 So. 2d 292 (Fla. Dist. Ct. App. 2003) ..........................................................................12

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985).............................................................................................................19

*Prohias v. Pfizer, Inc.*,
   485 F. Supp. 2d 1329 (S.D. Fla. 2007) ...............................................................................12

*Rule v. Fort Dodge Animal Health, Inc.*,
   604 F. Supp. 2d 288 (D. Mass. 2009) ..................................................................12

*Safavi v. Vibram USA, Inc., et al.*,
   Civil Action No. 2012-5900-RSWL (C.D. Cal.) .....................................................20

*Smith v. Jenkins*,
   626 F. Supp. 2d 155 (D. Mass. 2009) ..................................................................14

*Spence v. Glock*,
   227 F.3d 308 (5th Cir. 2000) .............................................................................20

*Stirman v. Exxon Corp.*,
   280 F.3d 554 (5th Cir. 2002) .............................................................................20

*Trans-Spec Truck Serv. v. Caterpillar*,
   524 F.3d 315 (1st Cir. 2008) ..............................................................................3

*United States v. AVX Corp.*,
   962 F.2d 108 (1st Cir. 1992) ..............................................................................5

*Varela v. E\*Trade Bank*,
   Civil Action No. 10-10186-MLW, 2011 WL 6757434 (D. Mass. Dec. 23, 2011)....................7

*Watkins v. Omni Life Sci., Inc.*,
   692 F. Supp. 2d 170 (D. Mass. 2010) ..................................................................5

## STATUTES

Fla. Stat. § 501.201. ..............................................................................................6

Fla. Stat. § 501.211 ..............................................................................................7

Mass. Gen. Laws Ch. 93A .............................................................................. passim

Mass. Gen. Laws Ch. 266, § 91 ...................................................................... passim

## RULES

Fed. R. Civ. P. 8..................................................................................................16

Fed. R. Civ. P. 9.............................................................................................. passim

Fed. R. Civ. P. 12..............................................................................................4, 14

Fed. R. Civ. P. 23..............................................................................................2, 15

## **INTRODUCTION**

Plaintiff Valerie Bezdek filed her initial Complaint on March 21, 2012, the same day she made a written demand on Vibram USA Inc. and Vibram FiveFingers LLC (collectively, "Vibram" or "Defendants") pursuant to Mass. Gen. Laws ch. 93A.  Despite the fact that Vibram timely responded to her demand letter, tendering reasonable relief, she did not include in her Original Complaint any Chapter 93A claim.

On June 5, 2012, Vibram moved to dismiss Bezdek's Complaint.  On the day her opposition to Vibram's Motion to Dismiss was due, Bezdek instead amended her complaint, making, at most, superficial edits in an attempt to circumvent Vibram's dismissal arguments, and adding her Chapter 93A claim.  The Amended Complaint states no more actionable claims than did the original Complaint.  Plaintiff still fails to reveal key facts, including why she bought the shoes, or even if she ever wore them.  Critically, and unlike situations that have received recent publicity, neither the Complaint nor the Amended Complaint contains any allegation that Vibram conducted sham clinical trials or falsified or concealed any testing data.

In her Amended Complaint, as in the initial pleading, Plaintiff continues to plead little more than personal opinions and protests about the concept of barefoot running.  Although she softens her attack on barefoot running, the inescapable conclusion remains that her real disagreement is with the concept or sport of barefoot or minimalist running, not with Vibram or its shoes.

The Amended Complaint still fails to state any claim justifying relief.  Plaintiff's conclusory accusations that Vibram made false or misleading statements regarding its FiveFingers shoes and/or their unique relationship to barefoot running still do not meet the pleading standards to which she must conform.  Her averments do not establish any wrongdoing

on Vibram's part and, despite her amendment, Plaintiff still makes no attempt to satisfy the requirement that she at least plead that she suffered some actionable harm.

Furthermore, Plaintiff's changes to her proposed class definition do not address the myriad flaws with her initial class definition.  Instead, she has merely <u>broadened</u> her proposed class to encompass <u>anyone</u> who "purchased FiveFingers running shoes." Am. Compl. ¶¶ 57-58. She added no substantive allegations that would satisfy even the most basic requirements set forth in Federal Rule of Civil Procedure 23.  Indeed, her Amended Complaint still does not contain sufficient factual assertions to establish that Plaintiff's own vague and injury-less claims are representative of individuals alleged to be "similarly situated."

## <u>RELEVANT BACKGROUND</u>

Barefoot running has been around for centuries, and has a well-documented history. Abebe Bikila, the Ethiopian marathon champion after whom the FiveFingers Bikilas shoes Plaintiff purchased were named, famously won the 1960 Rome Olympics marathon gold medal competing barefoot.  In fact, the "conventional" running shoe, characterized generally by a thick wedge of padding beneath the heel, was not even invented until the 1970s.  Before then, runners generally wore shoes with minimal cushioning and low heels or, like Bikila, no shoes at all.

The reemergence of barefoot running, and of minimalist running shoes like FiveFingers, is often attributed to the 2009 New York Times bestseller *Born to Run: A Hidden Tribe, Superathletes, and the Greatest Race the World Has Never Seen,* by Christopher MacDougal. *Born to Run* chronicles the Tarahumara Indians of the Copper Canyon region of Mexico, who are renowned for their ability to run extraordinarily long distances through rough terrain barefoot or wearing only homemade sandals.  McDougal attributes this unique ability to the fact that the Tarahumara land lightly on the balls of their feet in what is commonly referred to as a "forefoot strike."  One of the goals of those who favor barefoot running is to maintain a forefoot strike.  By

contrast, sport runners wearing more conventional running shoes generally land on their heel, in what is referred to as a "heel strike."  *See, e.g.*, Daniel E. Lieberman *et al.*, *Foot Strike Patterns and Collision Forces in Habitually Barefoot Versus Shod Runners*, 463 NATURE 531, 531 (2010) (cited in the Amended Complaint at ¶ 48).[1]

Barefoot running, *i.e.*, running with skin to ground, presents obvious dangers associated with the running surface.  Even though feet are often far more resistant than skin from other parts of the body, environmental surfaces are not always suited for this kind of training.  Stones, glass, nails, and other debris can obviously pose significant dangers to barefoot runners.  Consequently, a basic principle behind FiveFingers shoes is to provide an option for barefoot running enthusiasts to have a barefoot-like running experience while being better-protected from the elements and environmental hazards.  In many ways, FiveFingers function like work gloves for the feet.[2]

There is a good deal of literature discussing and debating the impact forces and effects of a forefoot strike compared to a heel strike, some of it cited by Plaintiff in her Original and Amended Complaints, and even more analysis in the social media by those who prefer one form of running over the other.  Proponents of barefoot running often describe it as more natural, less straining and confining, and as a way to improve muscle strength in the foot.  But barefoot

---

[1] Material attached to the Complaint, or incorporated by reference, is a part of the pleading itself, and the Court may consider it on a motion to dismiss.  *Trans-Spec Truck Serv. v. Caterpillar*, 524 F.3d 315, 321 (1st Cir. 2008).  In this case, Plaintiff incorporated by reference in her Amended Complaint, *inter alia*, several articles and Vibram's website, which the Court may therefore consider in connection with this motion.

[2] The American Podiatric Medical Association's position on barefoot running, cited, *inter alia*, at paragraph 42 of the Amended Complaint, points out that "risks associated with barefoot running include a lack of protection—which may lead to injuries such as puncture wounds—and to increased stress on the lower extremities."

The Amended Complaint ironically misleads the reader into concluding that the APMA has taken a position against barefoot running. To the contrary, the "Position Statement," consisting of only three paragraphs, merely "encourages the public to consult a podiatrist with a strong background in sports medicine to make an informed decision on all aspects of their running and training programs."  APMA Barefoot Running, http://www.apma.org/Media/position.cfm?ItemNumber=995 (visited July 2, 2012).

running is not for everyone and it is not easily interchangeable with "conventional," heel-strike running.  Indeed, the fact that it takes time to adjust to the forefoot strike form and to experience the individual benefits ascribed to barefoot running, with or without the protection of FiveFingers, is not only well documented, it is disclosed frankly by Vibram, and clearly acknowledged by Plaintiff in both versions of her Complaint.  There is nothing false or misrepresentative about these concepts or what FiveFingers shoes do and do not do.

The FiveFingers Bikila shoes that Plaintiff purchased are not intended for conventional-style running—no FiveFingers shoes are—and Vibram conspicuously and repeatedly urges those who may want to try FiveFingers to facilitate their transition to a barefoot-style of running to do so slowly and only according to specific and detailed instructions.  Plaintiff's original Complaint acknowledged these instructions.[3]  Plaintiff, on second thought, removed these references from the Amended Complaint, apparently deeming them to be unhelpful.  Even so, the amendment does not change the fact that Vibram has been more than forthright in informing consumers (and runners in particular) about the potential challenges they may encounter when using FiveFingers or converting to barefoot-style running.

Simply ignoring these disclosures here does not make them go away.  The Amended Complaint suffers from the same failings as did the original one.  It should therefore be dismissed pursuant to Rules 12(b)(6) and 9(b).

---

[3] It appears that Plaintiff believes that by removing such references and acknowledgements respecting Vibram's disclosures and instructions from her Amended Complaint she can withstand this motion.  For example, Plaintiff originally pointed out that the hang tag attached to FiveFingers shoes cautions: "If you are running in FiveFingers for the first time, we encourage a very gradual transition to ensure a safe and pleasurable experience.  Please visit our website, www.vibramfivefingers.com for resources related to natural running and training."  Compl. ¶ 31. That this allegation was excised from the Amended Complaint does not change the fact that Plaintiff concedes such disclosures are made.

## **ARGUMENT**

To survive this motion, the Amended Complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). Its factual allegations must "raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and establish "more than an unadorned, the defendant-unlawfully-harmed-me accusation," *Iqbal*, 556 U.S. at 678. That the Court must accept any well-pleaded factual allegations as true for the purpose of this motion "does not mean . . . that [the Court] must (or should) accept every allegation made by the complainant, no matter how conclusory or generalized." *United States v. AVX Corp.*, 962 F.2d 108, 115 (1st Cir. 1992). Neither "naked assertion[s]" nor "conclusory statements" are sufficient to state a claim. *Iqbal*, 556 U.S. at 678. Even under this forgiving standard, the Amended Complaint states no cognizable claim.

Because her claims are rooted in alleged misrepresentations attributed to Vibram, Plaintiff is required to go even farther, and must plead "with particularity the circumstances constituting fraud" in connection with all of her claims. Fed. R. Civ. P. 9(b); *see Greebel v. FTP Software, Inc.*, 194 F.3d 185, 193 (1st Cir. 1999) (Rule 9(b) requires that a complaint must specify the time, place and content of "any alleged false representation"); *Hammond v. JPMC Specialty Mortg. LLC*, Civil Action No. 10-11121-DPW, 2011 WL 1463632, at *7 (D. Mass. Apr. 15, 2011) (Massachusetts law requires a plaintiff alleging fraud to particularize the identity of the person(s) making the representation, the contents of the misrepresentation, where and when it took place, the materiality of the misrepresentation, the plaintiff's reliance, and the resulting harm.); *Watkins v. Omni Life Sci., Inc.*, 692 F. Supp. 2d 170, 177 (D. Mass. 2010) ("any claim sounding in fraud must satisfy the requirements of the heightened pleadings standard regardless of what label the pleader assigns to it") (internal quotation marks omitted). Even with

the benefit of Vibram's Motion to Dismiss the original Complaint as a roadmap, Plaintiff's

Amended Complaint does not clear these hurdles.

I.     **PLAINTIFF'S STATUTORY CLAIMS ARE
       DEFICIENT BECAUSE SHE HAS NOT PLED THE REQUISITE
       ELEMENTS OR FACTS NECESSARY TO SUSTAIN THOSE CLAIMS.**

Plaintiff accuses Vibram of marketing and advertising FiveFingers shoes as providing

certain performance benefits that the shoes "are not proven to provide" and further contends that

the shoes are not "proven to perform as advertised."  *See, e.g.*, Am. Compl. ¶¶ 3, 8.  Allegedly

"[i]n reliance on the misleading health benefit claims about FiveFingers on Defendants' website,

Plaintiff purchased a pair of FiveFingers (Vibram Bikilas)" that she claims she would not have

purchased had she known "the truth" about Vibram's representations.  *Id.* ¶ 11.

Based on these allegations, and a heap of unfounded legal conclusions and opinions,

Plaintiff pleads three alternative causes of action and a fourth theory of recovery masquerading

as a cause of action.  First, she asserts a violation of Mass. Gen. Laws ch. 266, § 91, a criminal

statute that also permits an "aggrieved party" to pursue injunctive relief (but not money

damages) against any person who makes an advertisement containing "any assertion,

representation or statement of fact which is untrue, deceptive or misleading, and which such

person knew, or might on reasonable investigation have ascertained to be untrue, deceptive or

misleading."  Mass. Gen. Laws ch. 266, § 91.

Next, she pleads both the ubiquitous 93A claim and its Florida cousin, the Florida

Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, *et seq*.  In order to

prevail under either statute, she must plead and later prove "(1) a deceptive act or practice on the

part of the seller; (2) an injury or loss suffered by the consumer; and (3) a causal connection

between the seller's deceptive act or practice and the consumer's injury." *Casavant v. Norwegian

Cruise Line, Ltd.*, 919 N.E.2d 169 (Mass. App. Ct. 2009); *Begualg Inv. Mgt. Inc. v. Four Seasons*

*Hotel Ltd.*, No. 10-22153-CIV, 2011 WL 4434891, at *5 (S.D. Fla. Sept. 23, 2011) (elements of

FDUTPA are (i) a deceptive act or unfair practice, (ii) causation, and (iii) actual damages).

Although the Amended Complaint claims Vibram's advertisements are deceptive, it

makes no attempt to identify an injury suffered by the Plaintiff or connect the alleged deceptions

to any actionable harm. Both Chapter 93A and FDUTPA limit recovery of damages to

individuals who suffered a loss as a result of a violation and, just like Mass. Gen. Laws ch. 266,

§ 91, make injunctive relief available only to "aggrieved" persons. Fla. Stat. § 501.211(1), (2);

*Gather v. Credit Control Services*, 623 F.Supp.2d 113, 123 (D. Mass. 2009) ("A plaintiff seeking

a remedy under Mass. Gen. Laws ch. 93A, § 9 must demonstrate that an alleged deception

caused an actual loss. This holds true even for alleged *per se* violations."); *Himes v. Brown &

Co. Sec. Corp.*, 518 So. 2d 937, 938 (Fla. Dist. Ct. App. 1987) (A consumer who "did not suffer

any actual damages proximately caused by" an alleged deception cannot recover under

FDUTPA). The Amended Complaint simply fails to plead this element.

Moreover, Plaintiff's statutory claims all sound in fraud, and Plaintiff must therefore

plead "with particularity" the basis for her allegations that Vibram made statements that were

either objectively untrue or were misleading in an effort to induce her (and other consumers) into

purchasing FiveFingers at a premium price that she (and they) would not have otherwise paid.

*See* Fed. R. Civ. P. 9(b); *Varela v. E*Trade Bank*, Civil Action No. 10-10186-MLW, 2011 WL

6757434, *1-2 (D. Mass. Dec. 23, 2011) (dismissing Ch. 93A claims because they sounded in

fraud and were not pled with particularity); *Llado-Carreno v. Guidant Corp.*, No. 09-20971-CIV,

2011 WL 705403, *5 (S.D. Fla. Feb. 22, 2011) (dismissing FDUTPA claims because "[t]he

particularity requirement of Rule 9(b) applies to all claims that sound in fraud"); *Kilbane v. Sec'y

of Human Servs.*, 438 N.E.2d 89, 91 (Mass. App. Ct. 1982) (Mass. Gen. Laws ch. 266, § 91

enacted to deal with "advertising frauds"). And while Rule 9 usually allows allegations respecting a state of mind to be pled generally, because Mass. Gen. Laws ch. 266, § 91 is a criminal statute, Plaintiff must plead with particularity that Vibram had a particular intent—"scienter"—to make false statements knowing that they were indeed false and with the intent to deceive. *Martin v. Mead Johnson Nutrition Co*., Civil Action No. 09-11609-NMG, 2010 WL 3928710, at *15 (D. Mass. Sept. 13, 2010) (*"Martin I"*) (recommending dismissal of Mass. Gen. Laws ch. 266, § 91 claim because plaintiff inadequately pled the "critical element" of scienter), *report and recommendation adopted in relevant part*, 2010 WL 3928707, at *4-5 (D. Mass. Sept. 30, 2010) ("*Martin II*"). Plaintiff has not shouldered this pleading burden.

### A. None of Plaintiff's False Advertising Claims Are Supported By Particularized Averments of Falsity or Deception.

In view of the more rigorous pleading standard embodied in Fed. R. Civ. P. 9(b), the Amended Complaint must be dismissed because the required particularity is lacking. Although the Amended Complaint removes some of the equivocal allegations made in the initial complaint, s*ee, e.g.*, Compl. ¶ 29 ("Defendants make these representations either specifically about FiveFingers or about barefoot running . . . ."), it retains Plaintiff's admissions, which demonstrate that Vibram lacked any intent to deceive and that any perceived deception was unreasonable in view of Vibram's other contemporaneous statements. For example, Plaintiff affirmatively pleads that FiveFingers shoes are intended to mimic running barefoot. Am. Compl. ¶ 3. She continues by quoting Vibram's marketing materials: "According to Defendants' website, with FiveFingers, 'you get all the health benefits of barefoot running combined with our patented Vibram® sole that protects you from elements and obstacles in your path.'" *Id*. at ¶ 17. Construed charitably in Plaintiff's favor, these assertions suggest only that Vibram favors and promotes the concept of barefoot running. They do not support any legal claims against Vibram.

The miscellaneous studies, positions, and undifferentiated comments cherry-picked and cited by Plaintiff suggest no more than a difference of opinion about the efficacy of barefoot running.  Not one of the articles cited by Plaintiff supports a conclusion that Plaintiff could ever prove that Vibram's statements were false.  At most, the articles and statements relied upon by Plaintiff suggest there is a difference of opinion in the relevant scientific community regarding various aspects of barefoot running.[4]  They certainly do not make out a claim for fraud, particularly when Vibram's own marketing materials and website expressly advise consumers about the potential challenges associated with transitioning to running in FiveFingers.[5]  Such disclosures and cautions are hardly the hallmark of fraudulent advertising.

Desperate to identify some actionable statement, Plaintiff quotes a statement by Tony Post, Vibram's then-CEO, reported by *India Retail News*.  In that statement, made in connection with the launch of a fitness resource portal on its website, Vibram noted that the Company's "strong commitment to research and innovation, along with passionate consumer feedback,

---

[4] To the extent Vibram's advertisements make any such claims, they are supported by studies and materials not referenced in the Amended Complaint, and therefore not susceptible of review at this stage of the proceedings.

[5] For example, the FiveFingers website to which Plaintiff directs the Court's attention provides several transitioning tips, including:

- Run no more than 10% of your typical running distance for the first 2–3 weeks
- After 2–3 weeks, gradually increase mileage by 10%–20% every couple of weeks
- If you ever start to feel pain during a run, stop! You can always try again in a couple of days
- Never run 2 days in a row for the first month
- Stretch before and after each run, focusing on calves and feet, because Vibram FiveFingers running will stimulate these muscles
- If, after several weeks of training, you are consistently very sore, you need to rest and back-off on your mileage.

*Barefoot Running FAQ's*, http://www.vibramFiveFingers.com/faq/barefoot_running_faq.htm (last visited June 4, 2012).

inspired [its] new educational section on the Vibram website."[6]  (Am. Compl. ¶ 34 & n.14).  The

qualification that the studies inspired the creation of an "educational section," like Plaintiff's

complaints about individual testimonials, are far too general to support a cause of action for

fraud.

Plaintiff's gripe is, as it was in her original Complaint, with barefoot running and its

adherents, not with FiveFingers.  At the outset of the initial Complaint, Plaintiff alleged that

"[g]iven that Defendants' advertising and marketing equates barefoot running with running in

FiveFingers, Defendants' uniform deceptive statements about barefoot running are also

deceptive statements about FiveFingers."  Compl. ¶ 3.  Although she has, in her second draft,

removed some of these allegations, which were obviously an illogical leap in the first place, the

balance of her Amended Complaint remains an indictment of barefoot running.  Her dislike of,

or disagreement with, the concept of barefoot running is not an actionable claim about Vibram's

marketing, any more than she could complain that swimming goggles do not facilitate the

benefits of swimming because some users do not know how to swim.

The <u>only</u> statement in the Amended Complaint about Plaintiff's own personal

interactions with Vibram is contained in Paragraph 11, where Plaintiff alleges that in "reliance

on the misleading health benefit claims about FiveFingers on Defendants' website," she

---

[6] Though it is far from clear how a U.S. consumer might have been influenced by a quotation in *India Retail News*, the referenced educational section of Vibram's website likewise does not speak in terms of absolutes, but instead admits that other viewpoints exist, stating at the outset:

> Since the launch of Vibram FiveFingers® in 2006, the concept of minimalism, and minimalist running in particular, has spawned a recurring public debate.  So, how are we supposed to do this minimalist/barefoot thing? The truth is, there isn't a single correct approach – it's probably more complicated than that. However, as one of the prominent leaders in this movement, we want to give you Vibram's take on it.  We believe that moving and running in FiveFingers can make us healthier, happier, and more connected to our bodies.  We hope the following information will help you discover how YOU can safely explore the joys of natural movement.

Getting Started, http://www.vibramFiveFingers.com/education/why_barefoot_works.htm (last visited July 13, 2012).

purchased a pair of the shoes that she would not have purchased if she knew "the truth about Defendants' representations."  Am. Compl. ¶ 11.  Plaintiff makes no other claim anywhere in the Amended Complaint regarding which particular health benefit she read about, was interested in, or motivated by when she elected to purchase her shoes.  Not surprisingly, she therefore does not specify which claimed benefit was not delivered, was false, or was deceptive.  Instead, Plaintiff resorts to general allegations about what is (and historically was) on various sections of Vibram's website without even suggesting that she visited those sections before or in connection with her purchase.  The Amended Complaint even contains a list of allegations about statements made on the website in 2007 and 2010, well before the date on which Plaintiff bought her shoes.  *See, e.g.*, *id.* ¶¶ 30-31.  Plaintiff does not describe how the allegedly false representations "induced" her to purchase FiveFingers shoes or aver facts showing that her purported reliance on the false representations was reasonable.  Absent substantially more specificity about the statements Plaintiff saw, was influenced by, and now proclaims to be false, the Amended Complaint fails to adequately plead any of her causes of action.

**B.      Plaintiff's Failure to Plead an Actionable
         Injury Likewise Disposes of Her Statutory Claims.**

Though the foregoing failings in the Amended Complaint justify its dismissal, the Amended Complaint suffers from another fatal infirmity insofar as it fails to disclose any cognizable injury to Plaintiff caused by Vibram.  At most, Plaintiff obliquely pleads a "price premium" theory of damages in which she alleges that as a result of various undefined misrepresentations, Vibram has been able to charge more for FiveFingers.  Am. Compl. ¶ 56 ("Reasonable consumers would not have paid the amounts charged for FiveFingers…").  The "price premium" theory has been squarely rejected in cases like this one, where a plaintiff has not alleged that she made a calculated decision to pay more for a product based on some

purportedly unique feature or ingredient. *See, e.g.*, *Prohias v. Pfizer, Inc.*, 485 F. Supp. 2d 1329, 1335-39 (S.D. Fla. 2007) (dismissing FDUTPA claim because the alleged injury was the payment of a premium price); *Rule v. Fort Dodge Animal Health, Inc.*, 604 F. Supp. 2d 288 (D. Mass. 2009), *aff'd* 607 F.3d 250 (1st Cir. 2010) (rejecting a premium price theory as insufficient to state a claim under Mass. Gen. Laws ch. 93A).

In *Prohias*, the court dismissed an FDUTPA claim based on allegations that the plaintiff paid a higher price for Lipitor than the market would have supported if not for the manufacturer's misrepresentations about the drug's coronary benefits. 458 F. Supp. 2d at 1335-39. In concluding that there was no injury, the court observed that "price premium" damages were "too speculative to constitute an injury-in-fact," because they depended "on the faulty premise that the price of Lipitor fluctuates based on the public's knowledge of Lipitor's benefits, even though drug prices (unlike stock prices which are necessarily set by the price at which buyers are willing to buy, or sellers willing to sell) are fixed by the product's manufacturer." *Id.* at 1336-37; *see also Rule*, 604 F. Supp. 2d 288 (reaching the same result).

There are no well-pleaded allegations in the Amended Complaint that Plaintiff paid more money to buy FiveFingers than she would have if she bought another pair of running shoes. In fact, other than the price Plaintiff paid for her Bikilas, there are no allegations on this point whatsoever. In addition, her failure to reveal the reason she purchased FiveFingers shoes in the first place (*i.e.*, whether for running—the broad purpose she ascribes to her proposed class—or for another purpose) further underscores her failure to identify, as she must, a less expensive, comparable alternative. *Philip Morris USA Inc. v. Hines*, 883 So. 2d 292, 294 (Fla. Dist. Ct. App. 2003) (whether a smoker was damaged by deceptive advertising for "light" cigarettes depended on why the "light" cigarettes were chosen by the particular smoker).

Because she is neither "aggrieved" nor has suffered actual damages, Plaintiff cannot state a viable claim under either Massachusetts or Florida law.  This defect requires dismissal of her claims.

### C.    Plaintiff's Claim Under Mass. Gen. Laws ch. 266, § 91 Fails For The Additional Reason That She Has Not Pled Scienter.

In addition to her failure to plead facts with sufficient particularity as they relate to her allegations of deception, Plaintiff still, even with the benefit of an amendment, lacks specific averments supporting the element of scienter, a "critical" element of a claim under Mass. Gen. Laws ch. 266, § 91.  *See, e.g., Kilbane*, 438 N.E.2d at 91 ("Massachusetts adopted the Printer's Ink Act by St. 1916, c. 149, which altered the model text only (albeit significantly) by adding a requirement of scienter.");  *Martin I*, 2010 WL 3928710, at \*15, *Martin II*, 2010 WL 3928707, at \*4-5.  Without this element, Plaintiff's Section 91 claim fails as a matter of law and must be dismissed.

Plaintiff's Amended Complaint omits any factual allegations that Vibram acted with the necessary intent to deceive.  Instead, Plaintiff merely recites the statutory text, asserting that "Defendants knew, or could, upon reasonable investigation, have ascertained that their labeling, marketing, advertising, and promotion of the FiveFingers shoes were untrue, deceptive, and/or misleading." Am. Compl. ¶ 69.  This parroting of the statutory language simply is not enough under Section 91 or Rule 9(b).  *See, e.g., N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 13 (1st Cir. 2009) ("Rule 9(b) requires not only specifying the false statements and by whom they were made but also identifying the basis for inferring scienter.");  *Martin I*, 2010 WL 3928710, at \*15 ("There is nothing in the complaint which would support that Mead Johnson knew or should have known about the alleged problems in its advertising for a large portion of the purported class period.  Absent any factual allegations to support a critical

element of this false advertising claim, Count II [Mass. Gen. Laws ch. 266, § 91] should be dismissed.").  The absence of this element also supports dismissal.

## II.   PLAINTIFF'S UNJUST ENRICHMENT "CLAIM" MUST ALSO BE DISMISSED.

Plaintiff's claim for unjust enrichment cannot withstand Vibram's motion for two reasons.  First, unjust enrichment is a theory of equitable recovery, not a separate cause of action. *DeGiovanni v. Jani-King Intern., Inc.*, 262 F.R.D. 71, 84 (D. Mass. 2009); *Smith v. Jenkins*, 626 F. Supp. 2d 155, 170 (D. Mass. 2009); *Lopes v. Commonwealth*, 811 N.E.2d 501 (Mass. 2004). On that basis alone, Plaintiff's unjust enrichment claim should be dismissed.

Second, recovery under a theory of unjust enrichment is only appropriate when a plaintiff has no other remedy at law.  *See, e.g.*, *Hager v. Vertrue*, Civil Action No. 09-11245-GAO, 2011 WL 4501046, at *7 (D. Mass. Sept. 28, 2011) (entering judgment for defendants on unjust enrichment theory because plaintiff "would have an adequate remedy at law if she could prove she was damaged by [the alleged] deceptive acts"); *Am. Honda Motor Co., Inc. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005) (dismissing unjust enrichment claim because it was "predicated on the same set of allegations" as FDUTPA claim and thus "an adequate remedy exists at law"); *In re Lupron Mktg. and Sales Practices Litig.*, 295 F. Supp. 2d 148, 182 (D. Mass. 2003).  Because Plaintiff has not pled the absence of an adequate remedy at law, her claim cannot withstand a Rule 12(b)(6) challenge.

## III.   PLAINTIFF CANNOT MAINTAIN
## EITHER OF HER PROPOSED CLASS CLAIMS.

In addition to pursuing her own claims, Plaintiff asks the Court to appoint her as a knight-errant championing the rights of two alternative classes: (1) "all persons in the United States who purchased FiveFingers running shoes during the period from March 21, 2009 until notice is disseminated to the Class," or (2) "all persons who purchased FiveFingers running shoes in the

State of Florida, during the period from March 21, 2008 until notice is disseminated to the Class."  Am. Compl. ¶¶ 57-58.[7]  In advancing these alternative classes, Plaintiff pays no more than lip service to the requirements of Rule 23, and fails to meet even the most basic pleading requirements for stating a cause of action on behalf of a putative class.

The mere filing of a putative class action can have significant consequences for a company.  Therefore, a plaintiff should not be immune from satisfying her basic pleading obligations as they relate to a proposed class simply because the substantive elements will be addressed in the context of a class certification motion.  As with any other claim, a plaintiff must at least set forth the necessary elements and factual support to show that she should be permitted to proceed beyond the pleadings stage.

Here, Rule 23(a) outlines the elements required for class treatment.  To meet her burden, Plaintiff must plead: (1) the type of class sought; (2) averments that establish commonality in the factual and legal claims of the class members; (3) facts that show that the claims of the representative parties are typical of the class members; (4) factual allegations sufficient to support an ultimate finding of class certification; (5) numerosity; and (6) facts that establish that the Plaintiff is an adequate representative of the class.  *See* Fed. R. Civ. P. 23.  Plaintiff fails to identify, with regard to either putative class, the required elements, and in fact does little more than copy the language of Rule 23 into the Complaint.

First, Plaintiff's overbroad class descriptions are vague and incomplete, and do not sufficiently illuminate what type of class she seeks to represent.  Besides geography and time, each of the proposed classes purports to include all persons who purchased FiveFingers "running

---

[7] In her initial Complaint, Plaintiff limited her purported class actions to those who bought FiveFingers "for running."  Her more recent effort compounds the problems with to the original definition by making the putative classes even less susceptible of identification.

shoes." This provides no description at all, and certainly would never enable the parties or the Court to ever identify class members. FiveFingers shoes are susceptible of innumerable uses, and many consumers use them for purposes unrelated to the Amended Complaint, including water sports, travel, hiking, yoga, and even just for fashion. Indeed, some consumers buy FiveFingers merely because they look different. Recent newspaper clippings, for example, report celebrities wearing them on the red carpet at the Golden Globe Awards, the Tony Awards, and elsewhere. *E.g.*, The Telegraph, "Five finger barefoot running shoes to become latest fashion phenomenon," http://www.telegraph.co.uk/news/newstopics/howaboutthat/ 9350932/Five-finger-barefoot-running-shoes-to-become-latest-fashion-phenomenon.html (visited July 17, 2012) ("Now the 'Five Fingers' shoe… is threatening to become the fashion phenomenon of the summer…. Wearers of the shoes – who include Danny Glover, the actor, and Kate Hudson and Scarlett Johansson, the actresses – claim they are stylish and good for posture."); Washington Post Online, "Shailene Woodley's post-Golden Globes toe shoes win her fans and foes," http://www.washingtonpost.com/blogs/arts-post/post/shailene-woodleys-post-golden-globes-toe-shoes-win-her-fans-and-foes/2012/01/17/gIQAkF6f5P_blog.html. (visited July 17, 2012).

Plaintiff's Amended Complaint includes photos of nine varieties of FiveFingers (though paragraph 18 of the Amended Complaint deceptively includes two pictures of each style), but those nine styles do not represent all of the styles that are used for running, and it is far from clear whether styles that are not appropriate for running are intended to be within the ambit of the Amended Complaint. Such generic pleading is prohibited even under the forgiving standard of Rule 8.

Second, Plaintiff does not provide any of the relevant factual details that would establish the elements of commonality and typicality.  Class plaintiffs must demonstrate that "the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory."  *In re M3 Power Razor Sys. Mktg. & Sales Pract. Litig.*, 270 F.R.D. 45, 54-55 (D. Mass. 2010).  Plaintiff purports to identify seven common questions of law and fact that predominate over any questions affecting only class members. Am. Compl. ¶ 60.  Only by sweeping with the broadest of brushes could such a pleading be deemed to state a cognizable claim; what common questions of fact are at issue here is not ascertainable at all from the Amended Complaint.[8]  Plaintiff does not suggest whether the members of the proposed class would include: (1) purchasers of FiveFingers styles other than the Bikila shoes, which Plaintiff herself purchased, (2) purchasers who bought the shoes exclusively for running; (3) consumers who bought FiveFingers to use while participating in yoga, surfing, hiking, travel, walking, or any other purpose; (4) purchasers who followed or ignored Vibram's detailed instructions respecting the use of FiveFingers; (5) those who engaged in barefoot running or other barefoot exercise regimens before purchasing their FiveFingers (or not); (6) purchasers who obtained benefits they expected or did not expect from their experiences; (7) consumers who bought FiveFingers merely because they are unique, different, or fashionable; or (8) those who bought their shoes through Vibram's website or in a retail outlet.

Plaintiff describes only generally viewing Vibram's website and purchasing her shoes online, but does not specify the representations she viewed, which ones motivated her to buy her Bikilas, and which claims ultimately disappointed her.  She makes no reference to other

---

[8] Among the alleged commonalities is whether "Plaintiff and members of the Class have been injured by Defendants' conduct."  Plaintiff, however, has cast an unreasonably wide net, which necessarily includes those who bought FiveFingers for reasons wholly unassociated with the advertisements Plaintiff claims are misleading.

members of the proposed classes who had a similar purchasing experience, much less whether they were exposed to or motivated by the same or similar statements about barefoot running. Those who purchased FiveFingers at a retail outlet, trade show, on the secondary market, or in a host of other forums could arguably fall into both proposed class definitions as drafted, even though their purchasing experience, and their exposure to Vibram's marketing, would necessarily be substantially different from Plaintiff's and therefore not appropriate for class treatment.  Certainly, the motivations and expectations of potential class members in each of these categories and myriad others are different; there simply can be no "typical" claim or experience in a class that is cast as broadly as these.  *See Markarian v. Conn. Mut. Life Ins.Co.*, 202 F.R.D. 60, 68-69 (D. Mass. 2001) (class treatment is inappropriate when consumer motivations for purchase raise individualized issues).

In addition, Plaintiff never identifies any injury that is personal to her, let alone one that is suffered by the class.  Without pleading that Plaintiff suffered an injury typical of the claims of each class member, she fails to appropriately plead the element of typicality.  *See, e.g., Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 156 (1982) ("We have repeatedly held that a class representative must be part of the class and possess the same interest and suffer the same injury as the class members.") (internal quotation marks omitted).  Even if she had established an actionable injury, the class as pleaded would require individualized proof of what each member paid for his or her shoes (Plaintiff herself pleads the shoes sell over a broad range of $80-$125, Am. Compl. ¶ 2).

For her new Chapter 93A claim, in particular, this is a critical requirement.  Issues such as causation and actual damages must include common proof in order to certify a putative class under that statute.  Indeed, the Massachusetts Appeals Court has observed that false advertising

claims such as those asserted here are particularly ill-suited for class treatment.  *See, e.g., Kwaak v. Pfizer, Inc.*, 881 N.E.2d 812, 819 (Mass. App. Ct. 2008) (no Chapter 93A class where there were "too many different reasons why consumers purchased these particular products, too many different types of advertisements, too much variation in exposure to the advertisements, too fine a line between permissible puffery and actionable deception… and too little information on the market impact of the deceptive aspects of the advertising campaign to support a conclusion that the consumers in the class … were similarly situated and similarly injured by a common deceptive act or practice").

Furthermore, Plaintiff's proposed nationwide class should be dismissed because there is no constitutionally permissible basis for applying the Massachusetts deceptive advertising statute, FDUTPA, or Chapter 93A beyond state borders except in limited circumstances not pled here.  *See, e.g., Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821-22 (1985) (concluding, in nationwide class action based on state law claims, that the Due Process Clause of the Fourteenth Amendment and the Full Faith and Credit Clause of Article IV, § 1 prohibit application of a particular state's law to sales transactions having little or no relationship to that state); *K-S Pharm., Inc. v. Am. Home Prods. Corp.*, 962 F.2d 728, 731 (7th Cir. 1992) (interpreting a Wisconsin statute forbidding price discrimination in prescription drugs to apply only to sales in Wisconsin, lest it be invalidated under the Commerce Clause); *see also Healy v. Beer Inst.*, 491 U.S. 324, 335-36 (1989) (explaining that these limitations "reflect the Constitution's special concern both with the maintenance of a national economic union unfettered by state-imposed limitations on interstate commerce and with the autonomy of the individual States within their respective spheres").  Plaintiff makes no attempt to suggest how consumers who purchased

FiveFingers at a specialty running store outside the Commonwealth could claim any rights under Massachusetts law because Constitutional considerations would obviously prohibit such a claim.

As pled, the putative nationwide class implicates the laws of every state and district in which FiveFingers are sold.[9]  The variations of those laws necessarily would trump any common issues and defeat predominance, to the extent they were even pleaded, and would preclude Plaintiff's nationwide class.  *See, e.g.*, *In re Citigroup, Inc.*, Civil Action No. 00-11912-REK, 2001 WL 1682865, *3 (D. Mass. Dec. 19, 2001) ("[c]ertification of a nationwide class would impermissibly require the application of statutory and case law of every jurisdiction in which a class member may be found."); *see also Stirman v. Exxon Corp.*, 280 F.3d 554, 564-66 (5th Cir. 2002); *In re LifeUSA Holding, Inc.*, 242 F.3d 136, 147 (3d Cir. 2001); *Spence v. Glock*, 227 F.3d 308, 316 (5th Cir. 2000); *Andrews v. Am. Tel. & Tel. Co.*, 95 F.3d 1014, 1025 (11th Cir. 1996).  Thus, Plaintiff could never state a claim applicable to a nationwide class.  Dismissal is warranted.

## CONCLUSION

Plaintiff amended her Complaint having had the benefit of Vibram's prior motion to dismiss.  That she could not adequately address the issues raised there, and reiterated here, confirms that this motion should be granted and the Amended Complaint should be dismissed with prejudice.

---

[9] On July 9, 2012, Plaintiff's counsel filed a substantially identical putative class action in California, purportedly on behalf of California purchasers of FiveFingers.  *Safavi v. Vibram USA, Inc., et al.*, Civil Action No. 2012-5900-RSWL (C.D. Cal.).

Dated: July 18, 2012
   Boston, Massachusetts

Respectfully submitted,

DEFENDANTS,

VIBRAM USA INC.
and VIBRAM FIVEFINGERS LLC,

By their counsel,

/s/ Christopher M. Morrison
Dana Baiocco (BBO #624886)
Christopher M. Morrison (BBO #651335)
Joseph B. Sconyers (BBO #666094)
JONES DAY
100 High Street, 22nd Floor
Boston, Massachusetts 02110
Telephone:  (617) 960-3939
Facsimile:  (617) 449-6999
dbaiocco@jonesday.com
cmorrison@jonesday.com
jsconyers@jonesday.com


**CERTIFICATE OF SERVICE**

  I, Christopher M. Morrison, hereby certify that a true copy of the foregoing document filed through the ECF system will be electronically sent to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on July 18, 2012.

/s/ Christopher M. Morrison
Christopher M. Morrison