**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| _____ ) | |
| VALERIE BEZDEK, Individually and on ) | |
| Behalf of All Others Similarly Situated, ) | Case No. 12-10513-DPW |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| VIBRAM USA INC. and VIBRAM ) | |
| FIVEFINGERS LLC, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| _____) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**

# Table of Contents

**Page**

INTRODUCTION ....................................................................................................... 1

STATEMENT OF FACTS ........................................................................................... 2

ARGUMENT .............................................................................................................. 7

    I. .........Pleading Standards ..................................................................................... 7

        A…Motion to Dismiss ................................................................................. 7

        B…The Complaint Easily Meets Rule 9(b) .................................................. 8

    II. ........Plaintiff Adequately Pleads Claims Under 93A and FDUTPA ............................ 9

        A…Deceptive Acts Under 93A and FDUTPA Are Adequately Alleged .................... 9

            1…Defendants' Acts are Deceptive .................................................... 9

            2…Defendants' Arguments That Plaintiff Has Not Adequately Pleaded Falsity or Deception Are Without Merit ................................................... 11

        B…The Complaint Alleges Causation and Injury Under 93A and FDUTPA ............ 13

            1....Causation and Injury Alleged ...................................................... 13

            2....Defendants' Arguments That Causation and Injury Are Not Adequately Pleaded Are Meritless ............................................................. 14

    III........The Mass. Gen. Laws Ch. 266 § 91 Claim is Adequately Pleaded ..................... 16

    IV. ......Plaintiff has Adequately Pleaded Unjust Enrichment ......................................... 17

    V.........Plaintiff Properly Alleges a Class Action ......................................................... 17

    VI. ......Conclusion .................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

<u>**C**ASES</u>

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)........................................................................................................7

*Aspinall v. Philip Morris Co., Inc.,*
   813 N.E.2d 476 (Mass. 2004) ...................................................................9, 10, 14

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007)........................................................................................................7

*Brown v. Le Clair,*
   482 N.E.2d 870 (Mass. App. Ct. 1985) ...............................................................16

*Brueggemann v. NCOA Select, Inc.,*
   No. 08-cv-80606, 2009 U.S. Dist. LEXIS 121584 (S.D. Fla. Dec. 29, 2009)........................17

*Casavant v. Norwegian Cruise Line, Ltd.,*
   919 N.E.2d 165 (Mass. App. Ct. 2009) ...............................................................9

*Chenlen v. Philips Elec. N. Am.,*
   No. 05-cv-525, 2006 Mass. Super. LEXIS 101 (Mass. Superior Ct. Mar. 1, 2006)...............17

*Cholakyan v. Mercedes-Benz USA, LLC,*
   796 F. Supp. 2d 1220 (N.D. Cal. 2011) ...............................................................18

*Clorox Co. P.R. v. Proctor & Gamble Comm. Co.,*
   228 F.3d 24, 32 (1st Cir. 2000)............................................................................2

*In re Colonial Mortgage Bankers Corp.,*
   324 F.3d 12 (1st Cir. 2003)...................................................................................7

*Crisp Human Capital Ltd. v. Authoria, Inc.*
   613 F. Supp. 2d 136 (D. Mass. 2009) ...................................................................8

*De Giovanni v. Jani-King Int'l, Inc.,*
   262 F.R.D. 71 (D. Mass. 2009)............................................................................17

*Donovan v. Philip Morris USA, Inc.,*
   268 F.R.D. 1 (D. Mass. 2010)..............................................................................19

*Fitzpatrick v. General Mills, Inc.,*
   635 F.3d 1279 (11th Cir. 2011) .......................................................................9, 13

*Fraser Engineering Co. v. Desmond,*
    524 N.E.2d 110 (Mass. 1988) ...............................................................13

*Gather v. Credit Control Services,*
    623 F. Supp. 2d 113 (D. Mass. 2009) ....................................................14

*Gavron v. Weather Shield Mfg.,*
    819 F. Supp. 2d 1297 (S.D. Fla. 2011) ...............................................9, 14

*Haymer v. Countrywide Bank, FSB,*
    No. 10-cv-5910, 2011 U.S. Dist. LEXIS 76910 (N.D. Ill. July 15, 2011) .............................18

*Himes v. Brown & Co. Sec. Corp.,*
    518 S. 2d 937 (Fla. Dist. Ct. App. 1987) ..............................................15

*Hunter v. Bev Smith Ford, LLC,*
    No. 07-cv-80665, 2008 U.S. Dist. LEXIS 34982 (S.D. Fla. Apr. 29, 2008) ...........................9

*Iannacchino v. Ford Motor Co.,*
    888 N.E.2d 879 (Mass. 2008) .........................................................15, 16

*Kenneth F. Hackett & Assocs. Inc. v. GE Capital Info. Tech. Solutions, Inc.,*
    744 F. Supp. 2d 1305 (S.D. Fla. 2010) ...................................................8

*Klay v. Humana, Inc.,*
    382 F.3d 1241 (11th Cir. 2004) .........................................................20

*Kwaak v. Pfizer, Inc.,*
    881 N.E.2d 812 (Mass. App. Ct. 2008) .................................................18

*Laughlin v. Target Corp.,*
    No. 12-cv-489, 2012 U.S. Dist. LEXIS 104526 (D. Minn. July 27, 2012) ...........................11

*Lopes v. Commonwealth,*
    811 N.E.2d 501 (Mass. 2004) ...........................................................17

*In re M3 Power Razor Sys. Mktg. & Sales Practices Litig.,*
    270 F.R.D. 45 (D. Mass. 2010) .........................................................20

*Martin v. Mead Johnson Nutrition Co.,*
    No. 09-cv-11609, 2010 U.S. Dist. LEXIS 104923 (D. Mass. Sept. 30, 2010) ........................10

*McCormick v. Festiva Dev. Group, LLC.*
    No. 09-cv-365, 2010 U.S. Dist. LEXIS 14856 (D. Me. Feb. 11, 2010) ...............................18

*Moniz v. Bayer Corp.,*
    484 F. Supp. 2d 228 (D. Mass. 2007) ...................................................8

*Moss v. Walgreen Co.*,
    765 F. Supp. 2d 1363 (S.D. Fla. 2011) ...............................................................14

*Payne v. Goodyear Tire & Rubber Co.*,
    216 F.R.D. 21 (D. Mass. 2003) ...............................................................19, 20

*Phillip Morris USA Inc. v. Hines*,
    883 So. 2d 292 (Fla. Dist. Cit. App. 2003) ...............................................16

*Picker Int'l v. Leavitt*,
    128 F.R.D. 3 (D. Mass. 1989) ...............................................................20

*Prohias v. Pfizer, Inc.*,
    485 F. Supp. 2d 1329 (S.D. Fla 2007) ...............................................................15

*Richards v. Arteva Specialities S.A.R.L.*,
    850 N.E.2d 1068 (Mass. App. Ct. 2006) ...............................................9

*Rikos v. P&G*,
    782 F. Supp. 2d 522 (S.D. Ohio 2011) ...............................................................13

*Rollins, Inc. v. Butland*,
    951 So. 2d 860 (Fla. Dist. Ct. App. 2006) ...............................................16

*Rosales v. FitFlop USA LLC*,
    No.11-cv-00973, 2012 U.S. Dist. LEXIS 111023 (S.D. Cal. Feb. 8, 2012) ...........................11

*Rule v. Fort Dodge Animal Health, Inc.*,
    604 F. Supp. 2d 288 (D. Mass. 2009) ...............................................................15

*Samuels v. King Motor Co.*,
    782 So. 2d 489 (Fla. Dist. Ct. App. 2001) ...............................................9

*Siever v. BWGaskets, Inc.*,
    669 F. Supp. 2d 1286 (M.D. Fla. 2009) ...............................................................12

*Slaney v. Westwood Auto, Inc.*,
    322 N.E.2d 768 (Mass. 1975) ...............................................................9

*Smith v. Jenkins*,
    626 F. Supp. 2d 155 (D. Mass. 2009) ...............................................................17

*Smith v. Wm. Wrigley Jr. Co.*,
    663 F. Supp. 2d 1336 (S.D. Fla. 2009) ...............................................9, 10, 15

*Suk Jae Chang v. Wozo LLC*,
    No. 11-cv-10245, 2012 U.S. Dist. LEXIS 42896 (D. Mass. Mar. 28, 2012) ...................8, 12

*Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc.*, ............................................................................2
    524 F.3d 315, 321 (1st Cir. 2008)

*Vieira v. First Am. Title Ins. Co.*,
    668 F. Supp. 2d 282 (D. Mass. 2009) ...................................................................................17

## STATUTES

Fla. Stat. § 501.201 ............................................................................................................................1

Mass. Gen. Laws Ch. 93A ......................................................................................... *passim*

Mass. Gen. Laws Ch. 266, § 91 ...............................................................................1, 16, 17

## RULES

Fed. R. Civ. P. 8 ...............................................................................................................................8

Fed. R. Civ. P. 9 ......................................................................................................................8, 16

Fed. R. Civ. P. 12 ...........................................................................................................2, 7, 17, 18

Plaintiff Valerie Bezdek ("Plaintiff"), individually and on behalf of the class she seeks to represent, respectfully submits this Memorandum of Law in Opposition to the Motion to Dismiss ("Motion") filed by Vibram USA Inc. and Vibram Fivefingers LLC (collectively, "Defendants").

## INTRODUCTION

Defendants ask this Court to absolve them of all liability as a matter of law for their false and deceptive "health benefits" claims about Vibram FiveFingers shoes ("FiveFingers"), but then they never address any of those representations at issue in the Complaint or the many sources from the Complaint demonstrating the falsity and deceptiveness of those claims.

Defendants' extensive, comprehensive, and uniform marketing and advertising campaign represents that their FiveFingers shoes (which are considered to be in the so-called "minimalist" or "barefoot" category of shoes) are *scientifically* proven to provide a number of "health benefits" that traditional shoes do not provide.  Importantly, Defendants specifically identify such claims as, in their own words, "health benefits." As the Complaint[1] plausibly alleges, however, these "health benefits" claims are false and misleading because there are no well-designed scientific studies supporting such claims.  These "health benefits" claims, and sources demonstrating their falsity and deceptiveness, are identified with great particularity throughout the Complaint.

Rather than address the actual allegations in the Complaint, each argument asserted in the Motion relies on mischaracterizations of the Complaint and relevant law and/or relies on premature and irrelevant arguments about the merits of the Complaint's deception, injury, and Rule-23 related allegations.  Defendants also misdirect the Court to irrelevant facts, including allegations outside of the pleadings, such as allegations from the superseded initial complaint and

---

[1] The Complaint asserts claims for violations of Mass. Gen. Laws ch. 266 § 91, M.G.L., 93A, § 2 ("93A"), the Florida Deceptive and Unfair Trade Practices Act, Florida Statutes §501.201 *et seq.* ("FDUTPA") and unjust enrichment.

facts about the Golden Globe Awards and actress Scarlett Johansson.[2] Furthermore, though not

all claims here are subject to Rule 9(b), Defendants ask this Court to hold Plaintiff to a

heightened pleading standard not grounded in any law on all alleged claims.  In short,

Defendants do not meet their burden on this Motion.  If anything, they merely identify factual

contentions raised by the Complaint that cannot be resolved on a motion to dismiss.

Defendants' Motion should be denied in its entirety.

## **STATEMENT OF FACTS**

FiveFingers are "thin, flexible soles that are contoured to the shape of the human foot,

including visible individual sections for the toes." ¶ 17.  With conventional running shoes, a

runner runs with a heel-strike manner. ¶ 5.  But with FiveFingers, a runner must run with a

forefoot strike pattern.  *Id*.  Running in FiveFingers is intended to mimic running barefoot. ¶ 17.

Through an extensive, comprehensive, and uniform nationwide marketing campaign,

Defendants make certain "health benefits" claims that represent implicitly and explicitly that

scientific research shows that their FiveFingers will provide certain physiological "health

benefits" that traditional running shoes do not provide.  *See, e.g.*, ¶ 2.   Such "health benefits"

claims are false and deceptive because they have no adequate scientific support.  *See*, *e.g*., ¶¶ 2,

3, 20, 40-56.  These false and deceptive claims are made through a fully-integrated advertising

campaign at point of sale, on in-store displays, on packaging that typically includes booklets and

hang tags, and on the Internet.  *See, e.g.*, ¶¶ 7, 22.

---

[2] Under Rule 12(b)(6), "the district court may properly consider only facts and documents that are part of or incorporated into the complaint."  *Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc.*, 524 F.3d 315, 321 (1st Cir. 2008).  Defendants include improper factual assertions in support of their Motion that are extraneous to Plaintiff's Complaint, such as the history of and a book on barefoot running (Motion at 2), oblique references to other unidentified cases (*id*. at 1), and supposed celebrity usage of FiveFingers (*id.* at 16).  These extraneous factual assertions, often unsupported by any documentary evidence, cannot be properly considered by the Court on a Rule 12(b)(6) motion.  While there are certain exceptions, such as when the extraneous material is "integral to or explicitly relied upon in the complaint," none of the exceptions applies here.  *Clorox Co. P.R. v. Proctor & Gamble Comm. Co.*, 228 F.3d 24, 32 (1st Cir. 2000).  Accordingly, Plaintiff respectfully requests that the Court exclude from consideration those extraneous factual assertions.

As set forth below, the Complaint specifically identifies Defendants' "health benefits" claims and quotes them verbatim.  For example, on their website,[3] Defendants represent (¶ 28) that:

> Vibram FiveFingers® footwear *is different than any other footwear on the planet*.[4]  Not only does it bring you closer to your environment, it also delivers a number of *positive health benefits*—by leveraging all of the body's natural biomechanics, so you can move as nature intended.
>
> **5 Reasons to Wear Vibram FiveFingers:**
>
> **1. Strengthens Muscles in the Feet and Lower Legs**—Wearing Vibram FiveFingers will stimulate and strengthen muscles in the feet and lower legs, improving general foot health and reducing the risk of injury.
> **2. Improves Range of Motion in Ankles, Feet and Toes**—No longer 'cast' in a shoe, the foot and toes move more naturally.
> **3. Stimulates Neural Function Important to Balance and Agility**—When wearing Vibram FiveFingers, thousands of neurological receptors in the feet send valuable information to the brain, improving balance and agility.
> **4. Eliminate Heel Lift to Align the Spine and Improve Posture**—By lowering the heel, your bodyweight becomes evenly distributed across the footbed, promoting proper posture and spinal alignment.
> **5. Allow the Foot and Body to Move Naturally**—Which just FEELS GOOD.
>
> * * *

Indeed, when reading FiveFingers' marketing and advertising, the reader cannot but conclude that FiveFingers are scientifically proven to provide these "health benefits."

Point of sale displays and Defendants' facebook.com page make these same "health benefits" claims.  ¶¶ 24, 29.  Additionally, Defendants' website states that "scientific research" and "ample evidence" substantiate Defendants' "health benefits" claim.  For example, the website states (¶ 33) that:

> The benefits of running barefoot have long been supported by scientific research. And there is ample evidence that training without shoes allows you to run faster and farther with fewer injuries.

---

[3] Defendants' website is "instrumental" in "spread[ing] the word" about FiveFingers.  ¶ 27.  Indeed, Defendants' website, which had 5,806,936 page views in one month alone, is replete with similar representations as those cited herein.  *Id.*
[4] Unless otherwise noted, internal citations are omitted and emphasis is added.

No footwear comes closer to recreating this natural sensation than Vibram FiveFingers®. . . .Running in FiveFingers . . . stimulates and strengthens muscles in the feet and lower legs.

In FiveFingers, you get all the ***health benefits*** of barefoot running combined with our patented Vibram® sole that protects you from elements and obstacles in your path.

* * *

Defendants make similarly deceptive claims in a brochure included with FiveFingers, such as the following claim (¶ 26):

The benefits of running barefoot have long been supported by scientific research, coaches, and athletes who believe that a gradual system of training barefoot will strengthen muscles in the feet and lower legs, leading to better running form and improved injury resistance.  However, running completely barefoot also exposes you to elements and obstacles that can cause injury. Running in FiveFingers enables you to reap the rewards of running barefoot while reducing those risks. To learn more about running barefoot in Vibram FiveFingers, please visit www.vibramfivefingers.com.

* * *

In addition, Defendants' website includes the endorsement of doctors that further the myth that there is scientific support for Defendants' uniform "health benefits" claims. ¶ 35.

Regardless of the medium used, Defendants' "health benefits" claims include that wearing or training in FiveFingers will improve foot health, reduce risk of injury, strengthen muscles in feet and lower legs, improve range of motion in ankles and feet, improve spine alignment, improve posture, reduce lower back pain, and improve proprioception, all in a superior way over traditional footwear.  *See, e.g.*, ¶¶ 24, 28-30.

However, as demonstrated by the numerous studies, literature, and other sources cited in the Complaint, Defendants' conduct is false and deceptive because there is no (and has never been) adequate scientific proof supporting Defendants' "health benefits" claims. Defendants know or, at the very least, should know of sources demonstrating that there is no scientific evidence that substantiates or proves Defendants' "health benefits" claims. *See, e.g.*, ¶ 37.  The

4

following specific statements from studies, literature, and other sources (of which Defendants

should be aware), which are cited in the Complaint, illustrate how Defendants' "health benefits"

claims are false and deceptive:

- The American Podiatric Medical Association's ("APMA") position on barefoot running is that "research has not yet adequately shed light on the immediate and long term effects of this practice . . . *Research is ongoing in regards to the risk and benefits of barefoot running*." ¶ 42;

- "[P]rofessional organizations and many clinicians with a keen interest in foot health and podiatric sports medicine are becoming more aware of the purported claims and risks but are going to be reluctant to support or oppose barefoot running until more definitive research and evidence are available." ¶ 43;

- The U.S. Army plans to study the effectiveness of minimalist shoes, like FiveFingers, because the "effectiveness of minimalist shoes is scientifically unproven." ¶ 44;

- A recent article from the American Academy of Physical Medicine and Rehabilitation states that "it should be obvious that foot intrinsic muscle strengthening cannot be a potential benefit from barefoot running." That article also states that "other aspects of muscle function might be improved by barefoot running, but this remains to be examined." ¶ 45;

- "Despite booming sales in minimalist footwear, there is no evidence that their use has decreased the incidence of injuries in runners." ¶ 46 (from Foot & Ankle Int'l article);

- "Most of the claims regarding the reduction of running-related injuries in barefoot runners are made on the basis of logical assumptions . . . . However, no studies or even surveys have sustained these claims." ¶ 47 (from APMA article);

- "Evidence that barefoot running directly prevents or improves running-related injuries is nonexistent." ¶ 47 (from APMA article);

- Amby Burfoot, editor-at-large for Runner's World, wrote of another study: "No one has ever proven that any running shoes prevent running injuries, and no one has ever proven that barefoot running prevents running injuries." ¶ 47;

- Daniel E. Lieberman, who performs research sponsored "in part, by Vibram USA®," acknowledges that "*[i]t is remarkable how little we know about something so basic and fundamental as barefoot running*, and it should be evident that we need to roll up our shirt sleeves and take off our shoes to answer a wide range of questions about how the bare foot functions during running and the relevance of barefoot running to injury." ¶ 48;

- There is no "publication that provides hard evidence that people running barefoot have fewer running related injuries than people running with running shoes." ¶ 49 (from Footwear Science article);

- It has been suggested that ***"nobody knows at this point in time whether or not people running barefoot have more or less injuries than people running with conventional running shoes."*** ¶ 49 (from Footwear Science article);

- "To date, no clinical studies have been published to substantiate the claims of injury reduction using a 'minimalist' style." ¶ 50 (from Current Sports Medicine Reports article);

- As Craig Payne, a senior lecturer in the department of podiatry at La Trobe University in Melbourne, Australia writes: "The barefoot running community have an appalling track record at how they misinterpret, misuse and misquote research . . . . The simple facts are that not one risk factor study on running injuries has linked high impacts to running injuries, yet the barefoot running community claim that the evidence shows this and consider high impacts as the cause of all injuries." ¶ 51;

- "There is even the consideration that in an unshod [or barefoot] condition, proprioceptive elements (plantar mechanoreceptors) may be dampened through chronic impact loading." ¶ 54 (from APMA article);

- As indicated in a recent study by the University of Wisconsin — La Crosse and published by the American Council On Exercise (the "ACE Study"), "compared with barefoot runners, shod runners and those in Vibrams showed more pronation, which is the natural side-to-side movement of the foot during running. Excessive pronation is associated with more injuries." ¶ 55.

* * *

Transitioning to running with FiveFingers can be long and painful, and can even lead to injuries. As indicated in the ACE Study, "'If you want to run in Vibrams, you should be prepared to change your gait pattern . . . . If you run in them, give yourself time to acclimate to them and adapt.'"¶ 5. Notably, some people may never change their gait. Given that the consumer must change his/her gait to run in FiveFingers and it may involve a long, painful, and injury fraught regimen, it is more than just plausible that a consumer would only purchase FiveFingers in reliance on Defendants' uniform deceptive "health benefits" claims. *See, e.g.*, ¶ 6.

Plaintiff was exposed to Defendants' deceptive and misleading "health benefits" claims (which are identified above and throughout the Complaint, *e.g.,* ¶¶ 24-35) through Defendants'

website, in or about April 2011.  ¶ 11.  In reliance on Defendants' misleading "health benefits"

claims, Plaintiff purchased her FiveFingers on April 13, 2011, through Defendants' website, for

$104.90.  *Id*. Had Plaintiff known the truth about Defendants' representations — that

Defendants' "health benefits" claims are false and unsubstantiated — she would not have

purchased the FiveFingers for $104.90.  *See, e.g*., ¶¶ 11, 74.  Accordingly, Plaintiff alleges she

was damaged in the amount of her overpayment of FiveFingers, the amount of the entire

purchase price of the shoes, or statutory damages. *See, e.g*., ¶¶ 11, 74, 79.  She does not allege

her damages are the result of any personal injury.

Despite overwhelming evidence that Defendants' "health benefits" claims are

unsubstantiated, Defendants continue to market FiveFingers as if such claims are truthful and

have adequate scientific support and Defendants have reaped millions of dollars of profit at the

expense of the misled consumers as a result.  *See, e.g.,* ¶ 7.

## ARGUMENT

### I.   Pleading Standards

#### A.   Motion to Dismiss

When considering a motion to dismiss under Rule 12(b)(6), a court must assume all

allegations are true and draw all inferences in the plaintiff's favor.  *See Bell Atlantic Corp. v.

Twombly,* 550 U.S. 544, 555 (2007) (facts alleged taken as true, even if doubtful); *In re Colonial

Mortgage Bankers Corp.,* 324 F.3d 12, 15 (1st Cir. 2003). A complaint is not required to contain

"'detailed factual allegations.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 663 (2009).  The complaint

need only state enough facts to "'state a claim to relief that is plausible on its face.'"  *Ashcroft*,

556 U.S. at 678.  "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id*.

**B.      The Complaint Easily Meets Rule 9(b)**

To the extent that Plaintiff's claims do not sound in fraud, the proper pleading standard for these claims is Rule 8(a).  *See Crisp Human Capital Ltd. v. Authoria*, Inc., 613 F. Supp. 2d 136, 139 (D. Mass. 2009); *Kenneth F. Hackett & Assocs. Inc. v. GE Capital Info. Tech. Solutions, Inc.*, 744 F. Supp. 2d 1305, 1312 n.7 (S.D. Fla. 2010).  Under that liberal notice pleading standard, Plaintiff properly states claims.

Even if Defendants were correct (which they are not) that Rule 9(b) applies, Plaintiff has satisfied it.  Under Rule 9(b), "a plaintiff must identify the fraudulent statement or representation, the person making the statement, and when the statement was made." *See, e.g., Suk Jae Chang v. Wozo LLC,* No. 11-cv-10245, 2012 U.S. Dist. LEXIS 42896, at *41 (D. Mass. Mar. 28, 2012).  Rule 9(b) only requires that allegations regarding the circumstances constituting fraud are sufficient enough "to ensure that the defendants are adequately informed of the nature of the allegations against them so they can prepare a defense to the action."  *Moniz v. Bayer Corp.*, 484 F. Supp. 2d 228, 231 (D. Mass. 2007).

Here, the Complaint alleges that Plaintiff was exposed to Defendants' uniformly deceptive "health benefits" messages, which are specifically identified throughout the Complaint, while in "the state of Florida through Defendants' website on or about April 2011." ¶ 11.  The Complaint also alleges why Defendants' statements are deceptive and that, as a result of Defendants' deception, Plaintiff was injured.  *See, e.g.*, ¶¶ 11, 74.

Defendants cannot seriously contend that the 94-paragraph Complaint, which specifically identifies the "health benefits" claims and the sources contradicting those claims, fails to adequately inform them of the nature of Plaintiff's allegations.  Accordingly, the Complaint satisfies Rule 9(b).

## II.     Plaintiff Adequately Pleads Claims Under 93A and FDUTPA

93A requires "(1) a deceptive act or practice on the part of the [defendants]; (2) an injury

or loss suffered by the [plaintiff]; and (3) a causal connection between the [defendants']

deceptive act or practice and the [plaintiff's] injury." *Casavant v. Norwegian Cruise Line, Ltd.,*

919 N.E.2d 165, 169 (Mass. App. Ct. 2009).  "[I]n enacting . . . 93A the Legislature intended to

create new substantive rights and procedural devices substantially broadening the vindication of

consumers' rights." *Richards v. Arteva Specialities S.A.R.L.*, 850 N.E.2d 1068, 1073 (Mass.

App. Ct. 2006); *see also  Slaney v. Westwood Auto, Inc.*, 322 N.E.2d 768, 779 (Mass. 1975)

(93A "goes far beyond the scope of the common law action for fraud and deceit.").  Likewise,

FDUTPA has three elements:  "'(1) a deceptive act or unfair practice; (2) causation; and (3)

actual damages.'"  *Smith v. Wm. Wrigley Jr. Co.*, 663 F. Supp. 2d 1336, 1339 (S.D. Fla. 2009).

In the interests of consumer protection, courts must liberally construe FDUTPA.  *See Samuels v.*

*King Motor Co.*, 782 So. 2d 489, 499 (Fla. Dist. Ct. App. 2001).[5]

### A.     Deceptive Acts Under 93A and FDUTPA Are Adequately Alleged

#### 1.     Defendants' Acts are Deceptive

Under Plaintiff's consumer law claims, "conduct is deceptive if it possesses a tendency to

deceive."  *See Aspinall v. Philip Morris Co., Inc.,* 813 N.E.2d 476, 487 (Mass. 2004); *see also*

*Fitzpatrick v. General Mills, Inc.*, 635 F.3d 1279, 1283 (11th Cir. 2011) (under FDUTPA "a

plaintiff must simply prove that an objective reasonable person would have been deceived.");

*Gavron v. Weather Shield Mfg*., 819 F. Supp. 2d 1297, 1302 (S.D. Fla. 2011) (same).  Stated

another way, "a practice is 'deceptive' for purposes of G.L. c. 93A 'if it could otherwise be

---

[5] FDUTPA "was created with the intention of providing Florida consumers with a simplified statutory cause of action that provides additional remedies to recover economic damages incurred as a result of" a seller's unfair or deceptive practices or acts.  *Hunter v. Bev Smith Ford, LLC*, No. 07-cv-80665, 2008 U.S. Dist. LEXIS 34982, at *19 (S.D. Fla. Apr. 29, 2008).

found to have caused a person to act differently from the way he [or she] reasonably would have acted.'" *Aspinall,* 813 N.E.2d at 486.  Under 93A, "advertising need not be totally false in order to be deemed deceptive." *Id.* at 487.  In fact, "[t]he criticized advertising may consist of a half truth, or may even be true as a literal matter, but may still create an over-all misleading impression, through failure to disclose material information." *Id.*

Notwithstanding that Defendants never even discuss or address in their entire motion to dismiss their own "health benefits" claims, or the lack of substantiation for those claims, the Complaint details why Defendants' uniform marketing campaign is deceptive under 93A and FDUTPA.  For example, Plaintiff alleges that Defendants' conduct is deceptive because Defendants advertised FiveFingers *as scientifically proven* to provide certain "health benefits" when there is no scientific proof to substantiate those claims.  Specifically, the Complaint identifies the "health benefits" claims and identifies numerous studies, literature, and other sources which demonstrate that the claims are false or deceptive.  *See, e.g.*, *supra* 2-6.  Numerous courts have held that such allegations are sufficient under 93A and FDUTPA.  *See, e.g., Smith*, 663 F. Supp. 2d at 1338 (deception allegation under FDUTPA upheld on a motion to dismiss where it was alleged that a chewing gum was advertised as "scientifically proven to help kill the germs that cause bad breath," but the claim was unsubstantiated); *Martin v. Mead Johnson Nutrition Co*., No. 09-cv-11609, 2010 U.S. Dist. LEXIS 104923, at *6-8 (D. Mass. Sept. 30, 2010) (deception allegations under 93A upheld on a motion to dismiss where it was alleged that an infant formula's benefits were advertised as the only such formula supported by clinical data to contained certain characteristics when, in fact, such exclusivity or uniqueness representations were misleading).

Very recently courts have upheld allegations factually similar to this case pleaded under comparable consumer laws.  *See Laughlin v. Target Corp*., No. 12-cv-489, 2012 U.S. Dist. LEXIS 104526, at *14 (D. Minn. July 27, 2012) (upholding a claim under the Minnesota consumer fraud statutes where plaintiff identified the alleged false statements about the toning shoes at issue and supported those allegations of falsity with scientific studies); *Rosales v. FitFlop USA LLC*, No.11-cv-00973, 2012 U.S. Dist. LEXIS 111023, at *13-14 (S.D. Cal. Feb. 8, 2012) (S.D. Cal. Feb. 8, 2012) (rejecting argument that plaintiffs did not adequately allege that footwear was not as advertised where complaint cited several studies supporting contention that the footwear had "no beneficial effect on exercise intensity, improved muscle strength, or toning.").  Here, similarly, Plaintiff has adequately alleged that Defendants' footwear is not as advertised and that their claims are unsubstantiated and Plaintiff cites numerous studies supporting that contention.

Accordingly, Plaintiff has properly pleaded that Defendants' marketing and advertising is a deceptive and unfair practice under 93A and FDUTPA, and whether an objectively reasonable person would have been deceived is a question of fact for the jury.

### 2. Defendants' Arguments That Plaintiff Has Not Adequately Pleaded Falsity or Deception Are Without Merit

Realizing they cannot dispute the fact that the Complaint contains detailed allegations that Defendants' "health benefits" claims are false and deceptive, Defendants resort to several irrelevant, and often confused, arguments that are unsupported by authority and that blithely ignore the allegations in the Complaint.

**Argument 1**: Defendants claim their "health benefits" representations cannot be deceptive because Defendants "expressly advise consumers about the potential challenges associated with transitioning to running in FiveFingers."  Motion at 9.  That Defendants may

11

have advised consumers of "potential challenges" is a red herring and does not remotely address the misrepresentations at issue here.  The Complaint alleges that Defendants' "health benefits" representations are false or deceptive because they are unsubstantiated. *See, e.g.*, ¶¶ 2, 3, 20, 40-56.  It does not allege the representations are false or deceptive because Defendants failed to notify consumers that *transitioning* to FiveFingers can be dangerous.  This argument is a classic straw man that has no merit.

**Argument 2**: Defendants argue that the Complaint cannot speak to Defendants' conduct because FiveFingers merely "facilitates" barefoot running, like goggles for swimming.  Motion at 10.  But Defendants represent that it is the act of wearing FiveFingers that will provide the purported "health benefits" and it is Defendants who equate running in FiveFingers with running barefoot.  *See*, *e.g*., ¶¶ 26, 28, 33.  Their argument is mere semantics, ignores the reality of their own representations, and should not be credited.

**Argument 3**: Defendants argue that "[n]ot one of the articles cited by Plaintiff supports a conclusion" that the statements at issue are false.  Motion at 9.  However, because the sources cited in the Complaint demonstrate that Defendants' "health benefits" claims are unproven, *see, e.g.*, ¶¶ 42-55, Defendants' representations that the "health benefits" claims are proven are indeed alleged to be false.  Whether the statements are actually false is an issue for another day.

Defendants also assert that the Complaint's sources "suggest no more than a difference of opinion about the efficacy of barefoot running."  Motion at 9.  Defendants also improperly refer to "studies and materials not referenced in the Complaint" that purportedly support their "health benefits" claims.  *Id.* at n.4.  These arguments do nothing more than establish that the Complaint raises issues of fact, requiring the denial of Defendants' Motion.  *See Suk Jae Chang*, 2012 U.S. Dist. LEXIS 42896, at *37-38 (finding factual dispute assertion inappropriate for resolution in

the context of a motion to dismiss); *Siever v. BWGaskets, Inc.*, 669 F. Supp. 2d 1286, 1293 (M.D. Fla. 2009) ("[w]hether particular conduct constitutes such an unfair or deceptive trade practice is a question of fact."). Indeed, Defendants admit such "studies" are "not susceptible to review at this stage of the proceedings." Motion at 9, n.4.

**Argument 4**: Defendants attempt to hold Plaintiff to an unreasonable pleading standard by arguing (without citation to any authority) that Plaintiff fails to plead facts such as what "interested" her about FiveFingers, what induced her and what motivated her to purchase the FiveFingers. Plaintiff alleges that she relied on Defendants' "health benefits" claims before purchasing FiveFingers. ¶ 11. No more detail is required. To the extent Defendants suggest that Plaintiff must plead reliance, they are wrong. *See Fraser Engineering Co. v. Desmond,* 524 N.E.2d 110, 113 (Mass. 1988) (a 93A claim does not require "proof of actual reliance on a misrepresentation . . .so long as the evidence warrants a finding of a causal relationship between the misrepresentation and the injury to the plaintiff."); *Fitzpatrick*, 635 F.3d at 1283 (affirming that "a plaintiff need not prove reliance on the allegedly false statement to recover damages under FDUTPA").[6]

## B.    The Complaint Alleges Causation and Injury Under 93A and FDUTPA

### 1.    Causation and Injury Alleged

Defendants argue that the Complaint fails to identify any cognizable injury. Motion at 11-12. This argument ignores the Complaint's well-pleaded allegations of injury. Under 93A, "[c]ausation and injury can . . . be established by a practice that 'could reasonably be found to have caused a person to act differently from the way he [or she] otherwise would have acted.'"

---

[6] Defendants take issue that the Complaint contains "statements made on [Defendants'] website in 2007 and 2010, well before the date on which Plaintiff bought her shoes." Motion at 11. However, because the deceptive health benefits message has remained consistent since 2006, the Complaint properly includes such allegations. *See Rikos v. P&G*, 782 F. Supp. 2d 522, 535 (S.D. Ohio 2011) (rejecting argument that Plaintiff's false advertising claim is limited to the advertisements made on the label of the product he purchased where "Plaintiff alleges that all of the advertisements for [the product at issue] carried the same message and misrepresentations.").

*Gather v. Credit Control Services*, 623 F. Supp. 2d 113, 124 n.19 (D. Mass. 2009).[7]  Causation

under FDUTPA may be similarly established.  *See Gavron*, 819 F. Supp. 2d at 1301.  In addition,

under FDUTPA:

> a deceptive practice can cause a consumer damages even [without reliance].
> Ostensibly, a deceptive practice allows a manufacturer or vendor to charge a
> premium for a product that the manufacturer would not be able to command
> absent the deceptive practice. Thus, even if an individual consumer does not rely
> on a deceptive practice when deciding to purchase that product, the consumer will
> have paid more for the product than she otherwise would have. Consequently, the
> consumer suffers damages.

*Moss v. Walgreen Co.*, 765 F. Supp. 2d 1363, 1367 n.1 (S.D. Fla. 2011).

Defendants' prominent "health benefits" claims are the central message used in

marketing FiveFingers.  Without those claims, "[r]easonable consumers would not have paid the

amounts charged for FiveFingers, or would not have purchased FiveFingers at all."  *See, e.g.,* ¶

56; *see also* ¶¶ 38, 52, 74.  Even Defendants do not dispute that their "health benefits" claims are

the driving force behind FiveFingers' explosive sales.  *See, e.g., id.* at ¶ 7.  Vibram's Tony Post

admits that Defendants' "consumer franchise" has "really grown" as a result of Vibram's

messages on the Internet — and Defendants' website is replete with Defendants' uniform "health

benefits" claims.  *See, e.g.,* ¶ 27.  In fact, Plaintiff alleges that she would not have purchased

FiveFingers if she knew the truth about Defendants' "health benefits" clams.  *See, e.g.,* ¶ 11.  In

sum, Plaintiff has adequately alleged that but for Defendants' "health benefits" claims,

consumers would either not purchase FiveFingers or would have paid less for FiveFingers.

### 2. Defendants' Arguments That Causation and Injury Are Not Adequately Pleaded Are Meritless

---

[7] As stated in *Aspinall,* under 93A, statutory damages may be available "without regard to whether the plaintiffs are
successful in establishing that consumers were overcharged for the deceptively advertised" product. 813 N.E.2d at
402. Here, Defendants' materially deceptive advertising entitles Plaintiff to statutory damages.

Plaintiff alleges that as a result of Defendants' unlawful conduct she was damaged in the amount of (1) her overpayment for FiveFingers; (2) the purchase price for FiveFingers; or (3) statutory damages.  *E.g.*, ¶¶ 11, 74, 79, 87.  Defendants appear to contest only one of these injury allegations: that Plaintiff overpaid for her FiveFingers.  As such, the Court can properly find that Plaintiff has adequately pleaded causation and injury.  Nonetheless, Defendants' arguments are without merit.

Defendants first argue that Plaintiff has not alleged that she "made a calculated decision to pay more for" FiveFingers based on Defendants' "health benefits" claims.  Motion at 11.  That is demonstrably false.  *See, e.g.*, ¶¶ 11, 74.[8]

Defendants' next argument suggests that Plaintiff cannot determine the extent of her overpayment injury unless she can compare the difference between the price for FiveFingers and a cheaper pair of shoes.  Motion at 12.[9]  Even if Defendants' proposed damages methodology were correct, Plaintiff is not required to provide an expert damages analysis at this stage.  Moreover, under FDUTPA and 93A, the difference between the price paid for a product and its

---

[8] Defendants' reliance on *Rule v. Fort Dodge Animal Health, Inc.*, 604 F. Supp. 2d 288 (D. Mass. 2009) (Woodlock, J.), is misplaced.  In *Rule*, plaintiff purchased and administered to her dog medication and only discovered, after the fact, that the medication contained undisclosed health or safety risks.  *Id.* at 291-93.  The court held there could be no compensable loss where the protection sought from the medication was received and where no adverse effects were suffered by the dog from the concealed latent defect within the medication.  *Id.* at 304.  By contrast, Plaintiff here did not receive the benefit of the bargain--a product that comports with Defendants' material representations.  *See Iannacchino v. Ford Motor Co.*, 888 N.E.2d 879, 886 (Mass. 2008) ("overpayment would represent an economic loss" if vehicles purchased that purportedly complied with certain safety standards, did not, in fact, comply with those standards).

[9] *Prohias v. Pfizer, Inc.*, 485 F. Supp. 2d 1329 (S.D. Fla 2007), relied upon by Defendants, is inapposite.  Underlying the court's analysis in *Prohias* was a significant anomaly regarding plaintiffs' allegations: that plaintiffs "still pa[id] for Lipitor notwithstanding their knowledge of its alleged lack of benefits." *Id.* at 1334.  That significant anomaly affected the *Prohias* court's analysis about whether the plaintiffs properly alleged "price inflation" of the drug.  *See id.* at 1337.  Here, there is no allegation that Plaintiff continues to pay any amounts for FiveFingers despite her knowledge that Defendants' "health benefits" claims are unsubstantiated.  *See Smith*, 663 F. Supp. 2d at 1339 (distinguishing *Prohias* on similar grounds).  Moreover, *Prohias* was specifically decided in the context of a drug price, which the court appeared to suggest would not be subject to market forces, as opposed to retail prices for FiveFingers.  *Himes v. Brown & Co. Sec. Corp.*, cited by Defendants is also inapplicable here because the "lost profits" theory of damages in that case, which is not a damages theory asserted here, was ruled on from "substantial evidence in the record" after a bench trial.  518 So. 2d 937, 938 (Fla. Dist. Ct. App. 1987).

true market value without the false and deceptive representations has been held to be an appropriate measure of damages. *See Iannacchino*, 888 N.E.2d at 886 (under 93A, "overpayment would represent an economic loss" if vehicles purchased that purportedly complied with certain safety standards did not, in fact, comply with those standards); *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. Dist. Ct. App. 2006)(same under FDUTPA); *Brown v. Le Clair*, 482 N.E.2d 870, 873 (Mass. App. Ct. 1985) ("'Actual damages' for injuries under G. L. c. 93A comprehend all foreseeable and consequential damages arising out of conduct which violates the statute.").

Defendants contend it is critical that Plaintiff allege the precise reasons she purchased her FiveFingers in order to "identify, as she must, a less expensive, comparable alternative." Motion at 12. Plaintiff alleges she purchased FiveFingers in reliance on the "health benefits" claims, which benefits do not exist. *See, e.g.*, ¶¶ 11, 40-55. Plaintiff's damages theories will be addressed at a later stage, but no more is required at the pleading stage.[10]

## III.     The Mass. Gen. Laws Ch. 266 § 91 Claim is Adequately Pleaded

Defendants argue that scienter is not adequately pleaded under Mass Gen. Laws ch. 266 § 91. This is wrong. Pursuant to Fed. R. Civ. P. 9(b), "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Scienter is adequately alleged under that standard. Defendants' scienter argument ignores the reality of the Complaint's allegations. The Complaint identifies many sources supporting an inference that there has never been adequate scientific substantiation for Defendants' "health benefits" claims. *See, e.g.*, ¶¶ 42-55. Even research funded by Vibram acknowledges that "*[w]ell-controlled studies are needed to determine whether barefoot running results in fewer injuries.*" ¶ 37. Accordingly, the

---

[10] *Phillip Morris USA Inc. v. Hines*, 883 So. 2d 292, 294 (Fla. Dist. Cit. App. 2003), which Defendants rely upon, is of no help to Defendants since the issue resolved in *Hines* was at class certification, not a motion to dismiss.

Complaint plausibly alleges that Defendants know or should know that their claims are

deceptive.  *See, e.g.*, ¶¶ 37, 69.[11]

## IV.    Plaintiff has Adequately Pleaded Unjust Enrichment

Defendants seek dismissal of Plaintiff's unjust enrichment claim on the basis that it is

only appropriate when a plaintiff has no other remedy at law.  Motion at 14.  However, Fed. R.

Civ. P. 8(d) permits a plaintiff "to plead alternative and even inconsistent legal theories," even if

that plaintiff can only recover under one of those theories.  *See Vieira v. First Am. Title Ins. Co*.,

668 F. Supp. 2d 282, 294-295 (D. Mass. 2009) (Woodlock, J.); *Brueggemann v. NCOA Select,

Inc.,* No. 08-cv-80606, 2009 U.S. Dist. LEXIS 121584, at *10 (S.D. Fla. Dec. 29, 2009) (under

Rule 8(d)(2), unjust enrichment claim may be pleaded in the alternative with FDUTPA claim).

Defendants also argue that Plaintiff's unjust enrichment claim must be dismissed because

it is purportedly a "theory of equitable recovery, not a separate cause of action."  Motion at 14.

Defendants' semantic argument does not warrant dismissal here and, in fact, none of the cases

cited by Defendants dismissed claims on a motion to dismiss based solely on this distinction.

*See Smith v. Jenkins*, 626 F. Supp. 2d 155, 170-71 (D. Mass. 2009); *De Giovanni v. Jani-King

Int'l, Inc*., 262 F.R.D. 71, 85 (D. Mass. 2009); *Lopes v. Commonwealth*, 811 N.E.2d 501, 504

(Mass. 2004).  Accordingly, Plaintiff's unjust enrichment claim should not be dismissed.

## V.    Plaintiff Properly Alleges a Class Action

As with their other premature arguments, Defendants make premature Rule 12(b)(6)

arguments about the Complaint's class allegations.  Motion at 14-20.  A Rule 12(b)(6) motion is

subject to "limited inquiry" regarding the sufficiency of pleadings, and is not an opportunity for a

---

[11] In addition, under G.L.c. 266, § 91, an injury from the "untrue, deceptive, or misleading" advertising of "any person who sells merchandise" is required.  *See Chenlen v. Philips Elec. N. Am.,* No. 05-cv-525, 2006 Mass. Super. LEXIS 101, at *22-23 (Mass. Superior Ct. Mar. 1, 2006).  As discussed above, Plaintiff has plausibly alleged such facts.  *See Supra* II.A.1.

party to litigate the propriety of a class action.  When Plaintiff makes her motion for class certification, Defendants will undoubtedly oppose it, but for now, Plaintiff has sufficiently alleged Rule 23's requirements at the pleading stage.

At this stage, a court's role is to examine the pleadings and not make factual determinations, including whether individual issues predominate.[12]  Indeed, "no useful purpose would be served by dismissing th[is] Rule 23 class action case on the basis of a failure to allege sufficient facts to demonstrate entitlement to class certification when, as yet, there has been no opportunity to engage in discovery, and the class certification process provides a superior means for testing the sustainability of maintenance of a class."  *McCormick v. Festiva Dev. Group, LLC*, No. 09-cv-365, 2010 U.S. Dist. LEXIS 14856, at *31-32 (D. Me. Feb. 11, 2010).[13] Recently, another court in a case similar to this rejected identical arguments as Defendants' arguments here.  *See Rosales*, 2012 U.S. Dist. LEXIS 111023, at *21 (rejecting as premature motion to strike class allegations where it was argued that "individual issues overwhelmingly predominate and that the proposed class lacks standing and ascertainability.").  Likewise, the Court should summarily reject Defendants' merit-based class certification arguments as improper on a Rule 12(b)(6) motion to dismiss.  Nonetheless, Plaintiff will briefly address Defendants' premature arguments below.

---

[12] *See, e.g., Haymer v. Countrywide Bank, FSB*, No. 10-cv-5910, 2011 U.S. Dist. LEXIS 76910, at *22-23 (N.D. Ill. July 15, 2011) (arguments that the alleged class failed numerosity and typicality requirements "are premature at this point, where there is no motion for class certification pending."); *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1245-45 (N.D. Cal. 2011) (collecting cases where striking class allegations was premature before discovery has begun).

[13] Defendants cite to *Kwaak v. Pfizer, Inc.*, 881 N.E.2d 812 (Mass. App. Ct. 2008) in support of their premature argument that Plaintiff's claims are "ill-suited for class treatment."  Motion at 19.  *Kwaak*, which was decided at the class certification stage, is inapplicable and irrelevant because the class included "everyone who purchased Listerine products…regardless whether a purchaser was exposed to the [at issue advertising] campaign," "not every product was mislabeled" and therefore, "many of those exposed to the advertising campaign may not have been exposed to unfair or deceptive acts."  881 N.E.2d at 818.

*First*, Defendants make a premature "ascertainability" argument: that "Plaintiff's overbroad class descriptions are vague and incomplete, and do not sufficiently illuminate what type of class she seeks to represent."  Motion at 15.  To be ascertainable, "all class members need not be identified at the outset; the class need only be determinable by 'stable and objective factors.'"  *Donovan v. Philip Morris USA, Inc.*, 268 F.R.D. 1, 9 (D. Mass. 2010).  This standard is met here.  Defendants' false and deceptive "health benefits" claims focus on running in FiveFingers.  *See, e.g.*, ¶¶ 25, 26, 28.  Naturally, then, the class would consist of consumers who purchased FiveFingers running shoes.  Defendants' website very clearly indicates which of their shoes are FiveFingers "running shoes."[14]  Of course, discovery may reveal that all FiveFingers shoes are running shoes and, if so, Plaintiff's class motion will so reflect.  At the pleading stage, however, the class is plainly ascertainable.

*Second*, Defendants prematurely argue that facts are not alleged to establish "commonality" and "typicality" requirements.  Motion at 17.  But these requirements have a "low hurdle"[15] and Plaintiff has adequately alleged them here.  *See, e.g.*, ¶¶ 11, 23-35.

*Third*, Defendants prematurely assert that Plaintiff cannot pursue Massachusetts state law claims on behalf of non-Massachusetts class members because such persons lack sufficient contacts with Massachusetts and, further, that variations in foreign state laws (though they point to none) would "necessarily" predominate.[16]  Motion at 19-20.  The choice of law question (if it turns out there is one) should be determined on Plaintiff's motion for class certification when the

---

[14] *See, e.g.,* http://www.vibramfivefingers.com/barefoot-sports/barefoot_running.htm (last visited August 9, 2012) (illustrating men's and women's FiveFingers running shoes).  The Complaint also includes exemplar photos of 9 male and 9 female FiveFingers' varieties of running shoes.  ¶ 18.

[15] *See Donovan*, 268 F.R.D. at 10 (commonality is a "'low hurdle'" where even "[a] single factual issue can suffice"); *Payne v. Goodyear Tire & Rubber Co.*, 216 F.R.D. 21, 26 (D. Mass. 2003) (with typicality the "'claims only need to share the same essential characteristics, and need not be identical.'").

[16] Vibram appears to argue that the FDUTPA claim improperly seeks application beyond Florida's borders.  Motion at 19.  This argument is premature and wrong as this claim is limited to a Florida-only Class.  *See* ¶¶ 81-89.

class that Plaintiff seeks to have certified is defined and on a factual record of Defendants'
conduct in Massachusetts.  Defendants, as the foreign law proponents, bear the burden to first
demonstrate that any relevant conflicts of law exist, that under Massachusetts' choice of law
rules the foreign state laws apply, and that these foreign law conflicts would predominate such
that class certification would become unmanageable.  *Payne,* 216 F.R.D at 27 ("Under the First
Circuit's standard approach to conflicts questions, the notion that defendants bear the burden to
show that conflicts would defeat the class makes the most sense.").  Defendants do not meet their
burden by empty statements that "obviously" nationwide certification is inappropriate, and that
"Plaintiff could never state a claim."

Moreover, there are no relevant conflicts of law, and certainly none that cannot be dealt
with by grouping of similar laws.  *See, e.g., In re M3 Power Razor Sys. Mktg. & Sales Practices
Litig.,* 270 F.R.D. 45, 60-61 (D. Mass. 2010) (rejecting argument that 93A could not be applied
to a nationwide class where, although relevant variations in state consumer laws may have
existed, they "do not overcome the common factual and legal issues"); *Klay v. Humana, Inc.,*
382 F.3d 1241, 1262 (11th Cir. 2004) ("[I]f the applicable state laws can be sorted into a small
number of groups, each containing materially identical legal standards, then certification of
subclasses embracing each of the dominant legal standards can be appropriate."). Such premature
choice of law arguments are meritless and should be dealt with at the class certification stage.

## VI.   Conclusion

For the reasons set forth above, this Court should deny Defendants' Motion to Dismiss.[17]

---

[17] This is the first complaint tested by a ruling on a motion to dismiss.  Should the Court grant Defendants' motion,
particularly on the grounds of a correctable pleading error, Plaintiff respectfully requests that she be granted
permission to amend her complaint. *See Picker Int'l v. Leavitt,* 128 F.R.D. 3, 8 (D. Mass. 1989) ("Fed. R. Civ. P.
15(a) states that leave to amend a complaint 'should be freely granted when justice so requires.'").

Dated: August 10, 2012

Respectfully submitted,

BERMAN DEVALERIO

/s/ Nathaniel L. Orenstein
Glen DeValerio (BBO #122010)
Nathaniel L. Orenstein (BBO #664513)
One Liberty Square
Boston, MA 02109
Telephone: 617-542-8300
Facsimile: 617-542-1194
gdevalerio@bermandevalerio.com
norenstein@bermandevalerio.com
MILBERG LLP
Janine L. Pollack
One Pennsylvania Plaza, 49th Floor
New York, New York 10119
Telephone: 212-594-5300
Facsimile: 212-273-4388
jpollack@milberg.com

BLOOD HURST & O'REARDON LLP
Timothy G. Blood
Thomas J. O'Reardon II
701 B Street, Suite 1700
San Diego, California 92101
Telephone: 619-338-1100
Facsimile: 619-338-1101
tblood@bholaw.com
toreardon@bholaw.com

SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
James C. Shah
Jayne A. Goldstein
35 East State Street
Media, Pennsylvania 19063
Telephone: 610-891-9880
Facsimile: 610-891-9883
jshaw@sfmslaw.com
jgoldstein@sfmslaw.com

GARY ROBERTS & ASSOCIATES, P.A.
Michael K. Beck
324 Datura Street
Suite 223
West Palm Beach, Florida 33401
Telephone: 561-686-1800
Facsimile: 561-686-1533
Michael@palmbeachtrialattorney.net


THE BREEDEN LAW FIRM
Tony W. Breeden
578 Washington Blvd., Suite 552
Marina Del Ray, CA 90292
Telephone: 310-984-6861
Facsimile: 310-984-6849
tony@breedenlawfirm.com


*Counsel for Plaintiff Valerie Bezdek*


## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and a paper copy will be sent to those indicated as non-registered participants by first class mail on August 10, 2012.


   /s/ Nathaniel L. Orenstein

Dated:  August 10, 2012       Nathaniel L. Orenstein