## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| VALERIE BEZDEK, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Case No. 12-10513-DPW |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| VIBRAM USA INC. and VIBRAM FIVEFINGERS LLC, | ) ) ) | |
| Defendants. | ) ) | |
| BRIAN DE FALCO, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Case No. 13-10764-DPW |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| VIBRAM USA INC. and VIBRAM FIVEFINGERS LLC, | ) ) ) | |
| Defendants. | ) ) ) | |

## SETTLEMENT AGREEMENT

**Table of Contents**

**Page**

I.      INTRODUCTION ...................................................................................................... 1

II.     DEFINITIONS.......................................................................................................... 5

III.    SETTLEMENT RELIEF ........................................................................................ 10

IV.     NOTICE TO THE CLASS ..................................................................................... 14

V.      REQUESTS FOR EXCLUSION ........................................................................... 20

VI.     OBJECTIONS TO SETTLEMENT ....................................................................... 21

VII.    RELEASE AND WAIVER ..................................................................................... 22

VIII.   ATTORNEYS' FEES AND EXPENSES AND INDIVIDUAL PLAINTIFF AWARDS.... 26

IX.     ORDER AUTHORIZING NOTICE, FINAL ORDER, FINAL JUDGMENT AND RELATED ORDERS..................................................................................................27

X.      MODIFICATION OR TERMINATION OF THIS AGREEMENT ...................... 30

XI.     GENERAL MATTERS AND RESERVATIONS................................................... 33

## Table of Exhibits

**Document**                                                           **Exhibit Number**

Claim Form ................................................................................................................1

Class Notice ..............................................................................................................2

Final Order ...............................................................................................................3

Final Judgment .........................................................................................................4

Order Authorizing Notice .........................................................................................5

Summary Settlement Notice ......................................................................................6

Settlement Claim Procedures and Claim Calculation Protocol .................................7

Postcard Notice .........................................................................................................8

Stipulation of Dismissal............................................................................................9

Banner Advertisements..............................................................................................10

**IT IS HEREBY STIPULATED AND AGREED**, by, between and among Plaintiffs Valerie Bezdek, Brian De Falco, and Ali Safavi ("Plaintiffs"), and Defendant Vibram USA Inc. and Vibram FiveFingers LLC (collectively, "Vibram"), with all terms as defined below, through their duly-authorized counsel, that the above-captioned actions, *Bezdek v. Vibram USA Inc., et al.*, Case Number 1:12-cv-10513-DPW (D. Mass.), *De Falco v. Vibram USA Inc., et al.*, Case Number 1:13-cv-10764-DPW (D. Mass.), and *Safavi v. Vibram USA Inc., et al.*, Case Number 12-5900-BRO-JCG (C.D. Cal.), and the matters raised therein, are settled, compromised, and dismissed on the merits with prejudice, on the terms and conditions set forth in this Settlement Agreement and the release set forth herein, subject to the approval of the Court.

## I.   <u>INTRODUCTION</u>

A.     On March 21, 2012, Plaintiff Valerie Bezdek filed the first above-captioned action in this Court, *Bezdek v. Vibram USA Inc., et al.*, Case Number 1:12-cv-10513-DPW (D. Mass.) ("*Bezdek*").  She filed an Amended Complaint on June 25, 2012.  In her Amended Complaint, which focuses its allegations on Vibram's marketing campaign relating to its FiveFingers footwear, Bezdek alleged violations of Mass. Gen. Laws ch. 26, §91, Mass. Gen. Laws ch. 93A, §2, Florida Statutes §501.201 *et seq.*, and unjust enrichment.  She further sought to represent a class of "all others similarly situated consisting of all persons in the United States who purchased FiveFingers running shoes during the period from March 21, 2009 until notice is disseminated to the Class."

B.     On July 9, 2012, a putative class action lawsuit captioned *Safavi v. Vibram USA Inc., et al.*, Case Number CV 12-5900-BRO-JCG ("*Safavi*") was filed in the United States District Court for the Central District of California.  Plaintiff Safavi is represented by the same counsel as Bezdek, and his complaint is substantially similar to hers.  Safavi's Complaint

includes claims for violations of California's Unfair Competition Law, Business and Professions Code §17200 *et seq.*, California's Consumer Legal Remedies Act, Civil Code §1750 et seq., and breach of express warranty.  Safavi proposes to represent "all others similarly situated consisting of all persons in California who purchased FiveFingers running shoes from the time they were first sold in California until notice is disseminated to the Class."   This proposed class is subsumed by the class proposed by Bezdek.  After Vibram moved to dismiss or stay *Safavi*, the parties stipulated to a stay of that case pending a ruling on class certification in *Bezdek*.

C.      On August 8, 2012, Plaintiff Brian De Falco filed an action in the Superior Court for Will County, Illinois, No. 2012L601.   In his Complaint, De Falco asserted claims for violation of the Illinois Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1 *et seq.*, breach of express warranty, and unjust enrichment.  De Falco sought to represent a class of "all Illinois residents who purchased Vibram FiveFingers running shoes from an authorized retailer located in Illinois or online for shipping to an Illinois address."  This proposed class is subsumed by the class proposed by Bezdek.   The *De Falco* action was removed to Federal Court on September 11, 2012, and was docketed as *De Falco v. Vibram USA LLC et al.*, 1:12-CV-07238.  On March 18, 2013, the Court, Hon. Virginia M. Kendall, granted in part and denied in part Vibram's Motion to Dismiss De Falco's Complaint, and by an Order dated April 3, 2013, transferred the case to the United States District Court for the District of Massachusetts, *De Falco v. Vibram USA Inc., et al.*, Case Number 1:13-cv-10764-DPW (D. Mass.) ("*De Falco*", and together with *Bezdek* and *Safavi*, the "Actions").

D.      Vibram filed Answers to the *Bezdek* Amended Complaint and the *De Falco* Complaint, which are both pending before Hon. Douglas P. Woodlock.

E.      Vibram expressly denied and continues to deny any and all wrongdoing alleged in the Actions, and neither admits nor concedes any actual or potential fault, wrongdoing or liability in connection with any of the facts or claims that have been or could have been alleged against it in these actions.

F.      To date, Lead Class Counsel has conducted an extensive and thorough examination, investigation, and evaluation of the relevant law, facts and allegations to assess the merits of the claims and potential claims and the strength of both defenses and liability sought in the Actions.  The Parties agree that throughout the course of the litigation, all Parties and their counsel complied with the provisions of Federal Rule of Civil Procedure 11.

G.      Vibram produced to Plaintiffs, through Lead Class Counsel, extensive discovery, including documents and written responses to Plaintiffs' discovery requests.  In particular, Vibram produced voluminous documentation to Lead Class Counsel regarding the FiveFingers footwear in the following categories: (i) product design, creation and development; (ii) scientific studies and research; (iii) marketing, advertising, media, and public relations; (iv) sales and accounting records; and (v) e-mail correspondence kept by key Vibram custodians.  In total, Vibram produced over 52,000 pages of documents.  Plaintiffs and Lead Class Counsel have thoroughly reviewed the documents.

H.      Based upon their review, investigation, and evaluation of the facts and law relating to the matters alleged in the pleadings, Plaintiffs and Lead Class Counsel, on behalf of the Plaintiffs in the Actions and the other members of the proposed Class, have agreed to settle the Actions pursuant to the provisions of this Agreement, after considering, among other things: (1) the substantial benefits to Plaintiffs and the other Class Members under the terms of this Agreement; (2) the risks, costs, and uncertainty of protracted litigation, especially in complex

actions such as this, as well as the difficulties and delays inherent in such litigation; and (3) the desirability of consummating this Agreement promptly in order to provide effective relief to Plaintiffs and the other Class Members.

I.    Vibram expressly denies any of the wrongdoing alleged in the pleadings and does not admit or concede any actual or potential fault, wrongdoing, or liability in connection with any facts or claims that have been or could have been alleged against it in the Actions and / or any other actions.  Even though Vibram expressly denies any wrongdoing, Vibram considers it desirable for these cases to be settled and dismissed, because this Settlement will finally put Plaintiffs' claims and the underlying matters to rest and will avoid the substantial expense, burdens, and uncertainties associated with the continued litigation of these claims and cases.

## II.    **DEFINITIONS**

A.    As used in this Agreement and the attached exhibits (which are an integral part of this Agreement and are incorporated in their entirety by reference), the following terms have the following meanings, unless this Agreement specifically provides otherwise:

1.    "Action" means *Valerie Bezdek v. Vibram USA Inc., et al.*, Case Number 1:12-cv-10513-DPW (D. Mass.).

2.    "Actions" means *Valerie Bezdek v. Vibram USA Inc., et al.*, Case Number 1:12-cv-10513-DPW (D. Mass.), *Brian De Falco v. Vibram USA Inc., et al.*, Case Number 1:13-cv-10764-DPW (D. Mass.), and *Safavi v. Vibram USA Inc., et al.*, Case Number CV 12-5900-BRO-JCG (C.D. Cal.).

3.      "Agreement" or "Settlement" means this Settlement Agreement and the exhibits attached hereto or incorporated herein, including any subsequent amendments and any exhibits to such amendments.

4.      "Attorneys' Fees and Expenses" means such funds as may be awarded by the Court to Lead Class Counsel from Vibram to compensate all Plaintiffs' Counsel for their fees and expenses in connection with the Actions and the Settlement, as described in Section VIII of this Agreement (below).

5.      "California Case" means *Ali Safavi v. Vibram USA Inc. and Vibram FiveFingers, LLC*, Case Number 11-cv-10632 (C.D. Cal).

6.      "Claim" means the claim of a Class Member or his or her representative attested to on a Claim Form as provided in this Agreement.

7.       "Claim Form" means the document, in substantially the same form as Exhibit 1 attached to this Agreement.

8.      "Claim Period" means the time period in which Class Members may submit a Claim Form for review to the Class Action Settlement Administrator.  The Claim Period shall run for one hundred twenty (120) days from the date of the first dissemination of the Summary Settlement Notice or Class Notice, whichever is earlier.

9.      "Claim Process" means that process for submitting Claims via the Claim Form as described in this Agreement.

10.      "Claimant" means a Class Member who has submitted a completed Claim Form.

11.      "Class" means all people who, during the Class Period, purchased certain FiveFingers footwear (as defined herein) from Vibram and/or its authorized retailers including,

5

without limitation, vibramfivefingers.com.  Excluded from the Class are:  (a) Vibram's Board members, executive-level officers, or employees, including its attorneys; (b) persons or entities who purchased the FiveFingers footwear primarily for the purpose of resale; (c) any claims for personal injury relating to the use of the FiveFingers footwear; (d) distributors or re-sellers of the FiveFingers footwear; (e) the judge and magistrate judge presiding over the Actions and their immediate families; (f) governmental entities; and (g) persons or entities who timely and properly exclude themselves from the Class as provided in this Agreement.

12.     "Class Action Settlement Administrator" means the third-party agent or administrator agreed to by the Parties and appointed by the Court.  The Parties agree that Heffler Claims Group LLC shall be retained to implement the claims and Settlement requirements of this Agreement, subject to the Court's approval.

13.     "Class Member" means a member of the Class.

14.     "Class Notice" means a notice substantially in the form attached hereto as Exhibit 2.

15.     "Class Period" means the time period from March 21, 2009, up to and including the date of the first dissemination of the Summary Settlement Notice or Class Notice, whichever is earlier.

16.     "Class Representative" means Valerie Bezdek.

17.     "Court" means the United States District Court for the District of Massachusetts.

18.     "Escrow Agent" means Huntington National Bank.

19.     "Fairness Hearing" means the hearing at or after which the Court shall make a final decision whether to approve this Settlement and this Agreement as fair, reasonable,

and adequate.  The Parties shall request that the Court schedule the Fairness Hearing for a date that is at least one hundred and fifty-five (155) days, but no later than one hundred and seventy-five (175) days, after entry of the Court's Order Authorizing Notice.

20.    "Final Order" and "Final Judgment" mean the Court's order approving the Settlement and this Agreement, as described in Section IX.B of this Agreement, which are to be substantially in the forms attached hereto as Exhibits 3 and 4, respectively.

21.    "Final Settlement Date" means the date on which the Final Order and Final Judgment approving the Settlement and this Agreement becomes final. For purposes of this Agreement:

a.    if no appeal has been taken from the Final Order and Final Judgment, "Final Settlement Date" means the date on which the time to appeal therefrom has expired; or

b.    if any appeal has been taken from the Final Order and Final Judgment, "Final Settlement Date" means the date on which all appeals therefrom, including petitions for rehearing or reargument, petitions for rehearing *en banc* and petitions for *certiorari* or any other form of review, have been finally disposed of in a manner that affirms the Final Order and Final Judgment; or

c.    if the Lead Class Counsel and Vibram agree in writing, "Final Settlement Date" can occur on any other agreed date.

22.    "FiveFingers footwear" means the following models of Vibram shoes purchased as new by Class Members during the Class Period:

Alitza, Bikila, Bikila EVO, Bikila EVO WP, Bikila LS, Classic, Classic Smartwool, EL-X, Estrada, Flow, Fresca, Jaya, Komodo Sport, Komodo Sport LS, KMD Sport, KMD Sport LS, KSO, KSO EVO, KSO Trek, Lontra, SeeYa, SeeYa LS, SeeYa LS Night, Signa, Speed, Speed XC,

Sprint, Spyridon, Spyridon LS, Spyridon MR, Trek LS, TrekSport, TrekSport Sandal, V-On, and Vybrid Sneak.

23.     "Lead Class Counsel" means:  Wolf Haldenstein Adler Freeman & Herz LLP.

24.     "Notice Administrator" means the Court-appointed third-party agent or administrator agreed to by the Parties and appointed by the Court.  The Parties agree that Heffler Claims Group shall be retained to implement the notice and related requirements of this Agreement.

25.     "Order Authorizing Notice" means the order to be entered by the Court preliminarily approving the Settlement as outlined in Section IX.A of this Agreement and substantially in the form attached hereto as Exhibit 5.

26.      "Parties" means Plaintiffs and Vibram, collectively, as each of those terms is defined in this Agreement.

27.     "Plaintiffs" means Valerie Bezdek, Ali Safavi, and Brian De Falco.

28.     "Plaintiffs' Counsel" means the following counsel of record:   Wolf Haldenstein Adler Freeman & Herz LLP; Blood Hurst & O'Reardon, LLP; Berman Devalerio; Shepherd, Finkelman, Miller & Shah, LLP; Gary Roberts & Associates, P.A.; Pomerantz LLP; The Breeden Law Firm; Sweetnam LLC; Milberg LLP; and Whatley Drake & Kallas.

29.     "Postcard Notice" means a notice substantially in the form attached hereto as Exhibit 8.

30.      "Release" means the Release and Waiver set forth in Section VII of this Agreement and in the Final Order and Final Judgment.

31.     "Released Parties" means Vibram, its parents (including but not limited to Vibram SpA, and any intermediary and/or ultimate parents), officers, directors, employees,

stockholders, agents, attorneys, administrators, successors, reorganized successors, spin-offs, assigns, holding companies, subsidiaries, affiliates, joint-ventures, partners, members, divisions predecessors, Vibram-owned U.S. Retailers, Vibram-owned Stores and www.vibramfivefingers.com.

32.    "Service Award" means a sum of money, to be paid exclusively out of the Settlement Fund, to compensate a named plaintiff for representing the Class, as is more specifically provided in Section VIII hereof.

33.    "Settlement Claim Procedures and Claim Calculation Protocol" means the protocol attached hereto as Exhibit 7.

34.    "Summary Settlement Notice" means the Summary Class Notice for publication substantially as attached hereto as Exhibit 6.

35.    "Vibram" means Vibram USA Inc. and Vibram FiveFingers LLC.

36.    "Vibram's Counsel" means Jones Day.

B.    Other capitalized terms used in this Agreement but not defined in this Section II shall have the meanings ascribed to them elsewhere in this Agreement.

C.    The terms "he or she" and "his or her" include "it" or "its" where applicable.

## III.    SETTLEMENT RELIEF

Settlement relief shall consist of two primary components: (1) refunds to Class Members who submit valid and completed Claim Forms; and (2) Vibram's agreement to discontinue certain marketing and advertising campaigns relating to its FiveFingers footwear.

A.    Relief Amount:

1.    Vibram shall deposit $3,750,000.00 (the "Settlement Fund") in escrow to be held by the Escrow Agent within ten (10) business days of the issuance of the Order Authorizing Notice and upon notice from Lead Class Counsel to Vibram's Counsel that Lead

Class Counsel has executed and delivered agreements with the Escrow Agent, the Class Action Settlement Administrator, and the Notice Administrator all in form satisfactory to Lead Class Counsel.  At the written direction of Lead Class Counsel, the Escrow Agent shall invest the Settlement Fund exclusively in instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including a U.S. Treasury Money Market Fund or a bank account insured by the Federal Deposit Insurance Corporation ("FDIC") up to the guaranteed FDIC limit.  At the written direction of Lead Class Counsel, the Escrow Agent shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates. Defendants shall not bear any responsibility for or liability related to the deposit of the Settlement Fund with or investment of the Settlement Fund by the Escrow Agent.

2.     All payments, including (a) payments made to any Class Member or any Plaintiff, including any Court-approved Service Awards; (b) administrative/notice costs to the Class Action Settlement Administrator for (i) charges and invoices by the Class Action Settlement Administrator and Notice Administrator relating to this Settlement; (ii) the costs and expenses associated with disseminating the notice, including, but not limited to, the Class Notice and the Summary Settlement Notice, to the Class; (iii) the costs and expenses associated with the claims administration; (iv) the costs and expenses associated with the timely, valid, and approved Claim Forms submitted by Class Members pursuant to the Claim Process (collectively, the "Administrative Costs"); and (c) Plaintiffs' Counsel's Attorneys' Fees and Expenses shall be paid exclusively from the Settlement Fund.  In no event shall Vibram's liability or obligations hereunder exceed the Settlement Fund.

B.     <u>Claim Form Submission and Review:</u>

1.     Class Members may submit a Claim via a Claim Form through the Claim Process during the Claim Period and the Class Action Settlement Administrator shall review and process the Claim Form pursuant to the Settlement Claim Procedures and Claim Calculation Protocol, which is attached hereto as Exhibit 7.  As part of the Claim Process, Class Members shall be eligible for the relief provided for in this Agreement, provided Class Members complete and timely submit a Claim Form to the Class Action Settlement Administrator within the Claim Period.

2.     As further specified in the Settlement Claim Procedures and Claim Calculation Protocol, the Claim Form shall advise Class Members that the Class Action Settlement Administrator has the right to request verification of the purchase of FiveFingers footwear, including, but not limited to, receipt(s) or other documentation demonstrating purchase of any and all of the FiveFingers footwear during the Class Period.  Adequate and customary procedures and standards will be used by the Class Action Settlement Administrator to prevent payment of fraudulent claims and to pay only legitimate claims.

3.     The Class Action Settlement Administrator shall provide periodic updates to Lead Class Counsel and to Vibram regarding Claim Form submissions beginning not later than one week after the entry of an order granting Approval of Notice and continuing on a monthly basis thereafter.

4.     The Class Action Settlement Administrator shall pay timely, valid, and approved Claims commencing ten (10) days after the close of the Claim Period so long as this period is after the Final Settlement Date, or sooner upon Vibram and Lead Class Counsel's joint direction, but not before the issuance of the Court's Final Order and Final Judgment approving

the Settlement.  In the event the Final Settlement Date falls after the close of the Claim Period, then the Class Action Settlement Administrator shall begin to pay timely, valid, and approved Claims commencing ten (10) days after the Final Settlement Date.  The Class Action Settlement Administrator shall have completed the payment to Class Members who have submitted timely, valid and approved Claims pursuant to the Claim Process no later than one hundred twenty (120) days after either the Final Settlement Date or the close of the Claim Period, whichever is later.

5.     The relief to be provided to eligible Class Members for each pair of FiveFingers footwear purchased by an eligible Class Member shall be paid on a pro rata basis from the balance of the Settlement Fund after payment of Administrative Costs, necessary taxes and expenses, Attorneys' Fees and Expenses, and Service Awards, up to a maximum of $94.00 per pair, the average manufacturer's suggested retail price of FiveFingers footwear.  Based on the experience of similar settlements of class actions, it is reasonable to expect that Class Members may receive payment in the range of $20.00 to $50.00 per pair.  Class Members may recover payment for up to two pairs of FiveFingers footwear by timely submitting a valid Claim Form.  Class Members may recover payment for more than two pairs of FiveFingers footwear only by timely submitting a valid Claim Form and providing Proof of Purchase or other documentation or evidence reasonably establishing the purchase of FiveFingers footwear, as the Class Action Settlement Administrator may in its discretion determine to be sufficient proof in accordance with the Settlement Claim Procedures and Claim Calculation Protocol for each pair of FiveFingers footwear for which payment is sought.

C.      Adjustments and Remaining Funds:

6.      If there are any funds remaining in the Settlement Fund after payment of Administrative Costs, necessary taxes and expenses, Attorneys' Fees and Expenses, Service Awards, and all Claims to eligible Class Members (taking into account un-cashed distributions made payable to eligible Class Members) ("Residual Funds"), the Class Action Settlement Administrator shall distribute the Residual Funds to the American Heart Association with specific earmark relating to research regarding health benefits associated with running or exercise or substantially similar research, or such other beneficiary as the Parties and the Court shall agree at the time of the Final Judgment and Final Order.  The Residual Funds will not be returned to Vibram.  Vibram represents and warrants that any payment of Residual Funds to any charities, non-profit organizations, or governmental entit(ies) shall not reduce any of its donations or contributions to any entity, charity, charitable foundation or trust, and / or non-profit organization.

D.      Agreement to Refrain from Certain Conduct

In addition to the relief discussed above, as part of this Agreement, Vibram will agree to take commercially reasonable efforts to discontinue certain aspects of its advertising and marketing campaign, including:  (i) Vibram will not make or assist others in making any claims that the FiveFingers footwear or products similar to the FiveFingers footwear are effective in strengthening muscles or preventing injury unless that representation is true, non-misleading and is supported by competent and reliable scientific evidence; (ii) Vibram will not make or assist others in making any health benefit claim about FiveFingers footwear or products similar to the FiveFingers footwear unless Vibram possesses and relies upon competent and reliable scientific evidence to substantiate that the claim is true and non-misleading; and (iii) Vibram will not

misrepresent or assist others in misrepresenting the existence, contents, validity, results, conclusions, or interpretations of any test, study, or research relating to Vibram's FiveFingers footwear or products similar to the FiveFingers footwear.  For the purposes of this Agreement, third party sales of FiveFingers footwear in connection with advertising or promotional material no longer in active use by Vibram shall not constitute a violation of this Agreement.

## IV.    NOTICE TO THE CLASS

    A.    Duties of the Class Action Settlement Administrator and the Notice Administrator

    1.    The Parties shall jointly recommend and retain Heffler Claims Group LLC to be the Class Action Settlement Administrator and the Notice Administrator to help implement the terms of this Agreement.  Following the Court's preliminary review of this Agreement and the Court's appointment of the proposed Class Action Settlement Administrator and the proposed Notice Administrator, the Notice Administrator shall disseminate notice to the Class as specified in the Order Authorizing Notice and in this Agreement, and in order to comply with all applicable laws, including, but not limited to, the Due Process Clause of the Constitution.

    2.    The Notice Administrator shall be responsible for, without limitation: (a) printing, mailing, emailing, or arranging for dissemination of Class Notice; (b) arranging for the publication of the Summary Settlement Notice; (c) handling returned e-mail and mail not delivered to Class Members; (d) attempting to obtain updated address information; (e) making any additional mailings required under the terms of this Agreement; (f) responding to requests for Class Notice; (g) receiving and maintaining on behalf of the Court any Class Member correspondence regarding requests for exclusion and objections to the Settlement; (h) forwarding written inquiries to Lead Class Counsel or their designee for  a  response,  if warranted; (i) establishing a post office box for the   receipt of any correspondence; (j) responding to requests from Lead Class Counsel and/or Vibram's Counsel; (k) establishing a

web site and toll-free voice response unit to which Class Members may refer for information about the Actions and the Settlement; and (l) otherwise implementing and/or assisting with the dissemination of the notice of the Settlement.  The Class Action Settlement Administrator shall be responsible for, without limitation, implementing the terms of the Claim Process and related administrative activities.

3.     If the Class Action Settlement Administrator and/or the Notice Administrator fail to perform adequately on behalf of Vibram or the Class, the Parties may agree to remove the Class Action Settlement Administrator and/or the Notice Administrator. The other Party shall not unreasonably withhold consent to remove the Class Action Settlement Administrator and/or the Notice Administrator, but this shall occur only after Vibram and Lead Class Counsel have attempted to resolve any disputes regarding the retention or dismissal of the Class Action Settlement Administrator and/or the Notice Administrator in good faith, and, if they are unable to do so, after the matter has been referred to the Court for resolution.

4.     The Class Action Settlement Administrator and/or the Notice Administrator may retain one or more persons to assist in the completion of its responsibilities.

5.     Not later than ten (10) days before the date of the Fairness Hearing, the Notice Administrator shall provide Vibram's Counsel and Lead Class Counsel: (a) a list of those persons who have opted out or excluded themselves from the Settlement; and (b) the details outlining the scope, methods and results of the notice program.

6.     The Notice Administrator shall promptly after receipt provide copies of any requests for exclusion, objections, and/or related correspondence to Lead Class Counsel and Vibram's Counsel.

B.      Class Notice:

    1.      Dissemination of the Mailed Class Notice

        a.      No later than three (3) business days after the entry of the Order Authorizing Notice, Vibram shall provide the Notice Administrator with the name, mailing address, and e-mail address of each reasonably identifiable Class Member, subject to the existence and availability of such information and its current possession, if at all, by Vibram.

        b.      Beginning not later than ten (10) business days after entry of the Order Authorizing Notice and to be substantially completed not later than twenty (20) days after entry of the Order Authorizing Notice, and subject to the requirements of the Order Authorizing Notice and the Settlement Agreement, the Notice Administrator shall send the Class Notice and Claim Form by Electronic Mail ("E-Mail") to: (i) each reasonably identifiable Class Member's last known E-Mail address; and (ii) each appropriate State and Federal official, as specified in 28 U.S.C. § 1715, and shall otherwise comply with Fed. R. Civ. P. 23 and any other applicable statute, law, or rule, including but not limited to, the Due Process Clause of the United States Constitution.

        c.      No later than thirty-five (35) days after entry of the Order Authorizing Notice, the Notice Administrator shall send the Postcard Notice, substantially in the form of Exhibit 8 hereto, by First Class U.S. Mail, proper postage prepaid, to each Class Member whose E-mail address returned a message as undeliverable, subject to the existence of such

information as provided by Vibram pursuant to Section IV.B.1.a of this Agreement, notifying the Class Member of the Settlement and directing them to the Settlement Website and/or the toll-free telephone number to obtain a Class Notice and Claim Form.

d.      No later than fifty (50) days after entry of the Order Authorizing Notice, the Notice Administrator shall: (i) re-mail any Postcard Notice returned by the United States Postal Service with a forwarding address that are received by the Notice Administrator; (ii) by itself or using one or more address research firms, as soon as practicable following receipt of any returned Postcard Notices that do not include a forwarding address, research any such returned mail for better addresses and promptly mail the Postcard Notice to the better addresses so found.

2.      Contents of the Class Notice:  The Claim Form and the Class Notice shall be in a form substantially similar to the document attached to this Agreement as Exhibits 1 and 2, respectively, and shall advise Class Members of the following:

a.      General Terms:  The Class Notice shall contain a plain and concise description of the nature of the Actions, the history of the litigation of the claims, the preliminary certification of the Class, and the proposed Settlement, including information on the identity of Class Members, how the proposed Settlement would provide relief to the Class and Class Members, what claims are released under the proposed Settlement and other relevant terms and conditions.

b.    <u>Opt-Out Rights:</u>  The Class Notice shall inform Class Members that they have the right to opt out of the Settlement.  The Class Notice shall provide the deadlines and procedures for exercising this right.

c.    <u>Objection to Settlement:</u>  The Class Notice shall inform Class Members of their right to object to the proposed Settlement and appear at the Fairness Hearing.  The Class Notice shall provide the deadlines and procedures for exercising these rights.

d.    <u>Fees and Expenses:</u>  The Class Notice shall inform Class Members about the amounts being sought by Plaintiffs' Counsel as Attorneys' Fees and Expenses and individual Service Awards to the Plaintiffs, and shall explain that Vibram will pay the fees and expenses awarded to Plaintiffs' Counsel and individual Service Awards to the Plaintiffs.

e.    <u>Claim Form:</u>  The Class Notice shall include the Claim Form, which shall inform the Class Member that he or she must fully complete and timely return the Claim Form within the Claim Period to be eligible to obtain relief pursuant to this Agreement.

C.    <u>The Summary Settlement Notice</u>:  The Notice Administrator shall have the publication of the Summary Settlement Notice substantially completed no later than seventy-five (75) days after entry of the Order Authorizing in such additional newspapers, magazines, and/or other media outlets as shall be agreed upon by the Parties.  The form of Summary Settlement Notice agreed upon by the Parties is in the form substantially similar to the one attached to the Agreement as Exhibit 6.

D.     <u>Settlement Website:</u>   Prior to the dissemination of the Class Notice pursuant to Section IV.B.1 to Section IV.C, the Notice Administrator shall establish an Internet website, www.fivefingerssettlement.com, that will inform Class Members of the terms of this Agreement, their rights, dates and deadlines and related information (the "Settlement Website").   This Settlement Website shall include, in .pdf format, materials agreed upon by the Parties and/or required by the Court, which shall include, at a minimum, orders Authorizing Notice and Final Approval, the Class Notice, the Claim Form, the Summary Settlement Notice and this Agreement.   Notice to the Class shall be supplemented by banner ads on the Internet that shall direct Class Members to the Settlement Website through an embedded hyperlink posted on the following families of sites, or networks, for a period of time sufficient to deliver approximately 300,000,000 impressions: RunnersWorld.com; The Time Access Network; Facebook;  The Xaxis Network; Gannett.com (including on mobile web versions of those sites); and on the Mobile APP network.   The form of the banner advertisements agreed upon by the Parties is in the form substantially similar to the one attached to this Settlement Agreement as Exhibit 10.

E.     <u>Toll-Free Telephone Number:</u>   Prior to the dissemination of the Class Notice pursuant to Section IV.B.1 to Section IV.C, the Notice Administrator shall establish a toll-free telephone number that will provide Settlement-related information to Class Members.

## V.     **REQUESTS FOR EXCLUSION**

A.     Any Class Member who wishes to be excluded from the Class must mail a written request for exclusion to the Notice Administrator at the address provided in the Class Notice, postmarked no later than ninety-five (95) days after entry of the Order Authorizing Notice, or as the Court otherwise may direct, and specifying that he or she wants to be excluded.   The Notice Administrator shall forward copies of any written requests for exclusion to Lead Class Counsel

and Vibram's Counsel.  A list reflecting all requests for exclusion shall be filed with the Court by Vibram no later than ten (10) days before the Fairness Hearing.

B.      Any potential Class Member who does not file a timely written request for exclusion as provided in the preceding Section V.A shall be bound by all subsequent proceedings, orders, and judgments, including, but not limited to, the Release, in the Action, even if he or she has litigation pending or subsequently initiates litigation against Vibram relating to the claims and transactions released in the Action.  Vibram's Counsel shall provide to the Notice Administrator, within ten (10) business days of the entry of the Order Authorizing Notice, a list of all counsel for anyone who has litigation against Vibram that involves FiveFingers footwear.  The Notice Administrator shall mail copies of the Class Notice to all such legal counsel.  Vibram will promptly direct the Notice Administrator to serve the Class Notice on counsel for any Class Members who subsequently initiate litigation, arbitration or other proceedings against Vibram relating to claims alleging events occurring during the Class Period, FiveFingers footwear, and/or otherwise involving the Release.

VI.     **OBJECTIONS TO SETTLEMENT**

A.      Any Class Member who has not filed a timely written request for exclusion and who wishes to object to the fairness, reasonableness, or adequacy of this Agreement or the proposed Settlement, or to the award of Attorneys' Fees and Expenses, or the individual Service Awards to Plaintiffs, must deliver to the Lead Class Counsel identified in the Class Notice and to Vibram's Counsel, and file with the Court, no later than ninety-five (95) days after entry of the Order Authorizing Notice, or as the Court otherwise may direct, a written statement of the objections containing the objector's dated signature, as well as the specific reason(s), if any, for each objection, including any legal support the Class Member wishes to bring to the Court's attention, any evidence or other information the Class Member wishes to introduce in support of

the objections, a statement of whether the Class Member intends to appear and argue at the Fairness Hearing, and a list of the Class Member's purchase(s) of the FiveFingers footwear. Class Members may do so either on their own or through an attorney retained at their own expense. The objection must include proof of purchase for the FiveFingers footwear. Acceptable proof of purchase includes a cash register receipt, a credit card receipt or a credit card statement or other verifiable information that sufficiently indicates the purchase of the FiveFingers footwear. The objection must also contain the objector's name, address, telephone number and, if represented by counsel, the same information for his/her counsel (in any event, the objector's actual residential address must be included). The Parties shall request that the Court allow any interested party to file a reply to any objection, as described in this Section VI.A, no later than seven (7) days before the Fairness Hearing.

B.      Any Class Member who files and serves a written objection, as described in the preceding Section VI.A, may appear at the Fairness Hearing, either in person or through personal counsel hired at the Class Member's expense, to object to the fairness, reasonableness, or adequacy of this Agreement or the proposed Settlement, or to the award of Attorneys' Fees and Expenses or Service Awards to the individual Plaintiffs. Class Members or their attorneys who intend to make an appearance at the Fairness Hearing must deliver a notice of intention to appear to the Lead Class Counsel identified in the Class Notice and to Vibram's Counsel, and file said notice with the Court, no later than ninety-five (95) days after entry of the Order Authorizing Notice, or as the Court may otherwise direct.

C.      Any Class Member who fails to comply with the provisions of Sections VI.A and VI.B above shall waive and forfeit any and all rights he or she may have to appear separately

and/or to object, and shall be bound by all the terms of this Agreement and by all proceedings, orders and judgments, including, but not limited to, the Release, in the Action.

D.      Any Class Member who objects to the Settlement shall be entitled to all of the benefits of the Settlement if this Agreement and the terms contained therein are approved, as long as the objecting Class Member complies with all requirements of this Agreement applicable to Class Members, including the timely submission of Claim Forms and other requirements discussed herein.

## VII.  <u>RELEASE AND WAIVER</u>

A.      The Parties agree to the following release and waiver, which shall take effect upon entry of the Final Order and Final Judgment.

B.      In consideration for the Settlement benefits described in this Agreement, Plaintiffs and the other members of the Class, on behalf of themselves, their heirs, guardians, assigns, executors, administrators, predecessors, and/or successors, will fully, finally and forever release, relinquish, acquit, and discharge the Released Parties from – and shall not now or hereafter institute, maintain, or assert on their own behalf, on behalf of the Class or on behalf of any other person or entity – any and all manner of claims, actions, causes of action, suits, rights, debts, sums of money, payments, obligations, reckonings, contracts, agreements, executions, promises, damages, liens, judgments and demands of whatever kind, type or nature and whatsoever, both at law and in equity, whether past, present or future, mature or not yet mature, known or unknown, suspected or unsuspected, contingent or noncontingent, whether based on federal, state or local law, statute, ordinance, regulation, code, contract, common law, or any other source, or any claim that Plaintiffs or Class Members ever had, now have, may have, or hereafter can, shall or may ever have against the Released Parties in any other court, tribunal, arbitration panel, commission, agency, or before any governmental and/or administrative body, or any other

adjudicatory body, on the basis of, connected with, arising from, or in any way whatsoever relating to the purchase of FiveFingers footwear during the Class Period and the claims alleged in the complaints (amended and otherwise) in the Actions, and, more particularly, but without in any way limiting the generality of the foregoing, arising from, directly or indirectly, or in any way whatsoever pertaining or relating to the claims alleged in the complaints (amended and otherwise) in the Actions, including, but not limited to, communications, disclosures, nondisclosures, representations, statements, claims, omissions, messaging, design, testing, marketing, advertising, promotion, packaging, displays, brochures, studies, manufacture, distribution, operation, performance, functionality, notification, providing, offering, dissemination, replacement, sale and/or resale by the Released Parties of the FiveFingers footwear; any claims for rescission, restitution or unjust enrichment for all damages of any kind relating to the purchase of FiveFingers footwear during the Class Period and the claims alleged in the complaints (amended and otherwise) in the Actions; violations of any state's deceptive, unlawful and/or unfair business and/or trade practices, false, misleading or fraudulent advertising, consumer fraud and/or consumer protection statutes relating to the purchase of FiveFingers footwear during the Class Period and the claims alleged in the complaints (amended and otherwise) in the Actions; any violation of the Uniform Commercial Code, any breaches of express, implied and/or any other warranties, any similar federal, state or local statutes, codes, damages, costs, expenses, extra-contractual damages, compensatory damages, exemplary damages, special damages, penalties, punitive damages and/or damage multipliers, disgorgement, declaratory relief, expenses, interest, and/or attorneys' fees and costs against the Released Parties pertaining to or relating to the claims alleged in the complaint in the Action relating to the purchase of FiveFingers footwear during the Class Period and the claims alleged

in the complaints (amended and otherwise) in the Actions, notwithstanding that Plaintiffs and the Class acknowledge that they may hereafter discover facts in addition to or different from those that they now know or believe to be true concerning the subject matter of the Action and/or the Release herein.

C.      Notwithstanding the language in this section and/or this Agreement, the Plaintiffs and the other members of the Class are not releasing any claims of or relating to personal injury.

D.      Plaintiffs represent and warrant that they are the sole and exclusive owner of all claims that they personally are releasing under this Agreement.  Plaintiffs further acknowledge that they have not assigned, pledged, or in any manner whatsoever, sold, transferred, assigned or encumbered any right, title, interest or claim arising out of or in any way whatsoever pertaining to the Action, including without limitation, any claim for benefits, proceeds or value under the Action, and that Plaintiffs are not aware of anyone other than themselves claiming any interest, in whole or in part, in the Action or in any benefits, proceeds or values under the Action.  Class Members submitting a Claim Form shall represent and warrant therein that they are the sole and exclusive owner of all claims that they personally are releasing under the Settlement and that they have not assigned, pledged, or in any manner whatsoever, sold, transferred, assigned or encumbered any right, title, interest or claim arising out of or in any way whatsoever pertaining to the Action, including without limitation, any claim for benefits, proceeds or value under the Action, and that such Class Member(s) are not aware of anyone other than themselves claiming any interest, in whole or in part, in the Action or in any benefits, proceeds or values under the Action.

E.      Without in any way limiting its scope, and, except to the extent otherwise specified in the Agreement, this Release covers by example and without limitation, any and all

claims for attorneys' fees, costs, expert fees, or consultant fees, interest, or litigation fees, costs or any other fees, costs, and/or disbursements incurred by Plaintiffs' Counsel, or by Plaintiffs or the Class Members.

F.      Plaintiffs expressly understand and acknowledge, and all Class Members will be deemed by the Final Order and Final Judgment to acknowledge, that certain principles of law, including, but not limited to, Section 1542 of the Civil Code of the State of California, provide that "a general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."  To the extent that anyone might argue that these principles of law are applicable – notwithstanding that the Parties have chosen Massachusetts law to govern this Agreement – Plaintiffs hereby agree that the provisions of all such principles of law or similar federal or state laws, rights, rules, or legal principles, to the extent they are found to be applicable herein, are hereby knowingly and voluntarily waived, relinquished and released by Plaintiffs and all Class Members.

G.      Nothing in this Release shall preclude any action by the Parties hereto to enforce the terms of the Agreement, including participation in any of the processes detailed therein.

H.      Plaintiffs and Defendants hereby agree and acknowledge that the provisions of this Release together constitute an essential and material term of the Agreement and shall be included in any Final Order and Final Judgment entered by the Court.

## VIII.   ATTORNEYS' FEES AND EXPENSES AND INDIVIDUAL PLAINTIFF SERVICE AWARDS

A.      On behalf of Plaintiffs' Counsel, Lead Class Counsel agrees to make and Vibram agrees not to oppose, an application for an award of Attorneys' Fees and Expenses in the Actions no later than fourteen (14) days before the objection deadline set forth in Section VI that will not

exceed 25% of the Settlement Fund, or $937,500.00 in fees, and for an award of out-of-pocket expenses reasonably incurred in the prosecution of the Actions up to $70,000, which shall be the sole aggregate compensation paid by Vibram for all Plaintiffs' Counsel representing the Class. Any such fee and expense amount approved by the Court shall be paid solely and exclusively from the Settlement Fund within ten (10) business days after the occurrence of the Final Settlement Date.

B.      Lead Class Counsel, in its sole discretion, shall allocate and distribute this award of Attorneys' Fees and Expenses among Plaintiffs' Counsel.  Lead Class Counsel shall be responsible for allocating and distributing the Attorneys' Fees and Expenses award to Plaintiffs' Counsel.

C.      Lead Class Counsel may petition the Court for Service Awards of $2,500.00 per Plaintiff.  The purpose of such awards shall be to compensate the Plaintiffs for efforts and risks taken by them on behalf of the Class.  Any Service Awards made by the Court shall be paid out of the Settlement Fund, as instructed by Lead Class Counsel, within ten (10) business days after the occurrence of the Final Settlement Date.  The Service Awards to these Plaintiffs will be in addition to the other consideration to the Class Members as set forth in Section III.B.5. above.

D.      In accordance with the *cy pres* doctrine, any amount remaining in the Settlement Fund after payment of Notice and Claim Administration Expenses, necessary taxes and tax expenses, Attorneys' Fees and Expenses, Service Awards and Eligible Claims (the "Residual Settlement Amount") shall, subject to Court approval, be paid to the American Heart Association for special earmark for research relating to health benefits of exercise or running or substantially similar research, or such other beneficiary as the Parties and the Court shall agree at the time of the Final Judgment and Final Order.

E.      Vibram shall not be liable for or obligated to pay any fees, expenses, costs, or disbursements to, or incur any expense on behalf of, any person or entity, either directly or indirectly, in connection with the Actions or this Settlement Agreement, other than the amount or amounts expressly provided for in this Settlement Agreement.

## IX.     ORDER AUTHORIZING NOTICE, FINAL ORDER, FINAL JUDGMENT AND RELATED ORDERS

A.      The Parties shall seek from the Court, within fifteen (15) business days after the execution of this Agreement, an Order Authorizing Notice in a form substantially similar to Exhibit 5.  The Order Authorizing Notice shall, among other things:

1.      Certify a nationwide settlement-only class, approve Valerie Bezdek as Class Representative, and appoint Lead Class Counsel as counsel for the class pursuant to Fed. R. Civ. P. 23;

2.      Preliminarily review the Settlement;

3.      Require the dissemination of the Notice and the taking of all necessary and appropriate steps to accomplish this task;

4.      Determine that the notice complies with all legal requirements, including, but not limited to, the Due Process Clause of the United States Constitution;

5.      Schedule a date and time for a Fairness Hearing to determine whether the Order Authorizing Notice should be finally approved by the Court;

6.      Require Class Members who wish to exclude themselves to submit an appropriate and timely written request for exclusion as directed in this Agreement and the Class Notice and that a failure to do so shall bind those Class Members who remain in the Class;

7.      Require Class Members who wish to object to this Agreement to submit an appropriate and timely written statement as directed in this Agreement and the Class Notice;

27

8.    Require Class Members who wish to appear to object to this Agreement to submit an appropriate and timely written statement as directed in this Agreement and the Class Notice;

9.    Require attorneys representing individual Class Members, at their own expense, to file a notice of appearance as directed in this Agreement and the Class Notice;

10.    Appoint the Class Action Settlement Administrator and/or the Notice Administrator;

11.    Authorize Vibram to take all necessary and appropriate steps to establish the means necessary to implement the Agreement;

12.    Issue other related orders to effectuate the preliminary review of the Settlement Agreement.

B.    No later than fourteen (14) days from the deadline for filing objections to this Settlement Agreement as set forth in Section VI, Plaintiffs shall file an application for an award of Attorneys' Fees and Expenses in the Actions and a Motion for Final Approval of this Settlement Agreement.  Such application and motion shall be supplemented, if necessary, no later than 14 days before the Fairness Hearing.

C.    After the Fairness Hearing, the Parties shall seek to obtain from the Court a Final Order and Final Judgment in the forms substantially similar to Exhibits 3 and 4, respectively. The Final Order and Final Judgment shall, among other things:

1.    Find that the Court has personal jurisdiction over all Class Members, the Court has subject matter jurisdiction over the claims asserted in the Amended Complaint and/or Actions, and that venue is proper.

2.      Finally approve the Agreement and Settlement, pursuant to Fed. R. Civ. P. 23;

3.      Finally certify the Class for settlement purposes only;

4.      Find that the notice and the notice dissemination methodology complied with all laws, including, but not limited to, the Due Process Clause of the United States Constitution;

5.      Dismiss the Actions with prejudice;

6.      Incorporate the Release set forth in the Agreement and make the Release effective as of the date of the Final Order and Final Judgment;

7.      Issue a permanent injunction;

8.      Authorize the Parties to implement the terms of the Agreement;

9.      Retain jurisdiction relating to the administration, consummation, enforcement, and interpretation of the Agreement, the Final Order and Final Judgment, and for any other necessary purpose; and

10.     Issue related Orders to effectuate the final approval of the Settlement Agreement and its implementation.

D.      Within ten (10) days following the Final Settlement Date, Plaintiffs shall file a stipulation of dismissal with prejudice in the California Case, in the form attached hereto as Exhibit 9.

## X.      MODIFICATION OR TERMINATION OF THIS AGREEMENT

A.      The terms and provisions of this Agreement may be amended, modified, or expanded by written agreement of the Parties and approval of the Court; provided, however that, after entry of the Final Order and Final Judgment, the Parties may by written agreement effect such amendments, modifications, or expansions of this Agreement and its implementing

29

documents (including all exhibits hereto) without further notice to the Class or approval by the Court if such changes are consistent with the Court's Final Order and Final Judgment and do not limit the rights of Class Members under this Agreement.

B.      This Agreement shall terminate at the discretion of either Vibram or the Plaintiffs, through Lead Class Counsel, if:   (1) the Court, or any appellate court(s), rejects, modifies, or denies approval of any portion of this Agreement or the proposed Settlement that the terminating party in its (or their) sole judgment and discretion reasonably determine(s) is material, including, without limitation, the terms of relief, the findings, or conclusions of the Court, the provisions relating to notice, the definition of the Class, and/or the terms of the Release; or (2) the Court, or any appellate court(s), does not enter or completely affirm, or alters or expands, any portion of the Final Order and Final Judgment, or any of the Court's findings of fact or conclusions of law, that the terminating party in its (or their) sole judgment and discretion reasonably determine(s) is material.   The terminating party must exercise the option to withdraw from and terminate this Agreement, as provided in this Section X, by a signed writing served on the other Parties no later than 20 days after receiving notice of the event prompting the termination.   The Parties will be returned to their positions *status quo ante*.

C.      If an option to withdraw from and terminate this Agreement arises under Section X.B above, neither Vibram nor Plaintiffs are required for any reason or under any circumstance to exercise that option and any exercise of that option shall be in good faith.

D.      If this Agreement is terminated pursuant to Section X.B, above, then:

1.      this Agreement shall be null and void and shall have no force or effect, and no Party to this Agreement shall be bound by any of its terms, except for the terms of Sections X.D herein;

2.      the Parties will petition to have any stay orders entered pursuant to this Agreement lifted;

3.      all of its provisions, and all negotiations, statements, and proceedings relating to it shall be without prejudice to the rights of Vibram, Plaintiffs or any Class Member, all of whom shall be restored to their respective positions existing immediately before the execution of this Agreement, except that the Parties shall cooperate in requesting that the Court set a new scheduling order such that neither Party's substantive or procedural rights is prejudiced by the attempted Settlement;

4.      Released Parties, as defined in Section II, above, including, without limitation, Vibram, expressly and affirmatively reserve all defenses, arguments, and motions as to all claims that have been or might later be asserted in the Actions, including, without limitation, the argument that the Actions may not be litigated as a class action;

5.      Plaintiffs and all other Class Members, on behalf of themselves and their heirs, assigns, executors, administrators, predecessors, and successors, expressly and affirmatively reserve and do not waive all motions as to, and arguments in support of, all claims, causes of actions or remedies that have been or might later be asserted in the Actions including, without limitation, any argument concerning class certification, consumer fraud, and treble or other damages;

6.      neither this Agreement, the fact of its having been made, nor the negotiations leading to it, nor any discovery or action taken by a Party or Class Member pursuant to this Agreement shall be admissible or entered into evidence for any purpose whatsoever;

7.      any Settlement-related order(s) or judgment(s) entered in this Action after the date of execution of this Agreement shall be deemed vacated and shall be without any force or effect;

8.      all costs incurred in connection with the Settlement, including, but not limited to, notice, publication, and customer communications, will be paid from the Settlement Funds.  Neither Plaintiffs nor Lead Class nor Plaintiffs' Counsel shall be responsible for any of these costs or other Settlement-related costs;

9.      any attorneys' fees and expenses previously paid to Plaintiffs' Counsel shall be returned to Vibram; and

10.     notwithstanding the terms of this paragraph, if Settlement is not consummated, Plaintiffs' Counsel may include any time spent in Settlement efforts as part of any statutory fee petition filed at the conclusion of the case, and Vibram reserves the right to object to the reasonableness of such requested fees.

## XI.     GENERAL MATTERS AND RESERVATIONS

A.      The obligations of the Parties to conclude the proposed Settlement is and shall be contingent on the following:

1.      entry by the Court of the Final Order and Final Judgment approving the Settlement, from which the time to appeal has expired or which has remained unmodified after any appeal(s); and

2.      Vibram's payments as set forth in Section III.A. and Section VIII.C. of this Settlement Agreement, and Vibram's full and complete performance of any and all obligations, terms and conditions set forth in the Agreement.

B.      The Parties and their counsel agree to keep the contents of this Agreement confidential until the date on which the Motion for Preliminary Review and Authorization of

Class Notice is filed; *provided, however*, that this section shall not prevent Vibram from disclosing such information, prior to the date on which the Motion for Preliminary Review and Authorization of Class Notice is filed, to state and federal agencies, independent accountants, actuaries, advisors, financial analysts, insurers or attorneys, nor shall it prevent the Parties and their counsel from disclosing such information to persons or entities (such as experts, courts, co-counsel, and/or administrators) to whom the Parties agree disclosure must be made in order to effectuate the terms and conditions of this Agreement.

C.     Plaintiffs, their counsel, and Lead Class Counsel agree that the confidential information made available to them solely through the settlement process was made available, as agreed to, on the condition that neither Plaintiffs nor their counsel may disclose it to third parties (other than experts or consultants retained by Plaintiffs in connection with this case); that it not be the subject of public comment; that it not be used by Plaintiffs or Plaintiffs' Counsel in any way in this litigation should the Settlement not be achieved, and that it is to be returned if a Settlement is not concluded; *provided, however*, that nothing contained herein shall prohibit Plaintiffs from seeking such information through formal discovery if not previously requested through formal discovery or from referring to the existence of such information in connection with the Settlement of this litigation.

D.     All information marked as "Attorneys' Eyes Only" or "Confidential" provided by Vibram to Plaintiffs, Plaintiffs' Counsel, or any individual Class Member, counsel for any individual Class Member and/or administrators, pursuant to the implementation of this Agreement or by Court Order, constitutes trade secrets and highly confidential and proprietary business information and shall be deemed "Attorneys' Eyes Only" or "Confidential" pursuant to the protective orders that have been or will be entered in the Actions, and shall be subject to all

of the provisions thereof. Any materials inadvertently produced shall, upon Vibram's request, be promptly returned to Vibram's Counsel, and there shall be no implied or express waiver of any privileges, rights, and defenses.

E.     Within ninety (90) days after the Final Settlement Date (unless the time is extended by agreement of the Parties), Plaintiffs' Counsel, and any expert or other consultant employed by them in such capacity or any other individual with access to documents provided by Vibram to Plaintiffs' Counsel shall either:  (i) return to Vibram's Counsel, all such documents and materials (and all copies of such documents in whatever form made or maintained) produced by Vibram in the Actions and any and all handwritten notes summarizing, describing or referring to such documents; or (ii) certify to Vibram's Counsel that all such documents and materials (and all copies of such documents in whatever form made or maintained) produced by Vibram in the Actions and any and all handwritten notes summarizing, describing or referring to such documents have been destroyed; *provided, however*, that this section shall not apply to any documents made part of the record in connection with a Claim, nor to any documents made part of a Court filing, nor to Plaintiffs' Counsel's work product.  Vibram's Counsel agrees to hold all documents returned by Plaintiffs' Counsel, and any expert or other consultant or any other individual employed by Plaintiffs' Counsel in such capacity with access to documents provided by Vibram, until six months after the distribution of the Settlement Funds to Class Members who submitted acceptable Claim Forms.  Six months after the distribution of the Settlement Funds to Class Members who submitted acceptable Claim Forms, the Class Action Settlement Administrator shall return all document and materials to Vibram and/or Lead Class Counsel that produced the documents and materials, except that it shall destroy any and all Claim Forms, including any and all information and/or documentation submitted by Class Members.

F.     Vibram's execution of this Agreement shall not be construed to release - and Vibram expressly does not intend to release - any claim Vibram may have or make against any insurer for any cost or expense incurred in connection with this Settlement, including, without limitation, for attorneys' fees and costs.

G.     Lead Class Counsel represent that:  (1) they are authorized by the Plaintiffs to enter into this Agreement on behalf of Plaintiffs, their respective present or past law firms and any other attorneys who have represented or who now represent Plaintiffs in these Actions with respect to the claims in these Actions; and (2) they are seeking to protect the interests of the Class.

H.     Plaintiffs represent and certify that, as applicable to each Plaintiff:  (1) they have agreed to serve as representatives of the Class proposed to be certified herein; (2) they are willing, able, and ready to perform all of the duties and obligations of representatives of the Class, including, but not limited to, being involved in discovery and fact finding; (3) they have read the substantive pleadings in the Actions, including the complaint and/or the Amended Complaints, or have had the contents of such pleadings described to them; (4) they are familiar with the results of the fact- finding undertaken by Lead Class and Plaintiffs' Counsel; (5) they have been kept apprised of settlement negotiations among the Parties, and have either read this Agreement, including the exhibits annexed hereto, or have received a detailed description of it from Lead Class Counsel or Plaintiffs' Counsel and they have agreed to its terms; (6) they have consulted with Lead Class Counsel or Plaintiffs' Counsel about the Actions and this Agreement and the obligations imposed on representatives of the Class; (7) they have authorized Lead Class Counsel to execute this Agreement on their behalf; and (8) they shall remain and serve as representatives of the Class until the terms of this Agreement are effectuated, this Agreement is

terminated in accordance with its terms, or the Court at any time determines that said Plaintiff(s) cannot represent the Class.

I.      Vibram represents and warrants that the individual(s) executing this Agreement is authorized to enter into this Agreement on behalf of Vibram.

J.      This Agreement, complete with its exhibits, sets forth the sole and entire agreement among the Parties with respect to its subject matter, and it may not be altered, amended, or modified except by written instrument executed by Lead Class Counsel and Vibram's Counsel on behalf of Vibram.   The Parties expressly acknowledge that no other agreements, arrangements, or understandings not expressed in this Agreement exist among or between them and that in deciding to enter into this Agreement, they rely solely upon their judgment and knowledge.  This Agreement supersedes any prior agreements, understandings, or undertakings (written or oral) by and between the Parties regarding the subject matter of this Agreement.

K.      This Agreement and any amendments thereto shall be governed by and interpreted according to the law of the Commonwealth of Massachusetts, notwithstanding its conflict of laws provisions.

L.      Any disagreement and/or action to enforce this Agreement shall be commenced and maintained only in the Court in which these Actions are pending.

M.      Whenever this Agreement requires or contemplates that one of the Parties shall or may give notice to the other, notice shall be provided by e-mail and/or next-day (excluding Saturdays, Sundays, and Federal Holidays) express delivery service as follows:

1.      If to Vibram, then to:

Christopher M. Morrison
Dana Baiocco
Jones Day
100 High Street, 21st Floor
Boston, Massachusetts 02108
Tel.: 617.960.3939
Fax: 617.449-6969
E-Mail: cmorrison@jonesday.com
        dbaiocco@jonesday.com


2.      If to Plaintiffs, then to:

Janine Pollack
Wolf Haldenstein Adler Freeman & Herz LLP
270 Madison Avenue
New York, New York 10016
Tel.:  212.545.4600
Fax:  212.545.4762
E-Mail:  pollack@whafh.com

N.      All time periods set forth herein shall be computed in calendar days unless otherwise expressly provided.  In computing any period of time prescribed or allowed by this Agreement or by order of the Court, the day of the act, event, or default from which the designated period of time begins to run shall not be included.  The last day of the period so computed shall be included, unless it is a Saturday, a Sunday or a Federal Holiday, or, when the act to be done is the filing of a paper in court, a day on which weather or other conditions have made the office of the clerk of the court inaccessible, in which event the period shall run until the end of the next day that is not one of the aforementioned days.  As used in this section "Federal Holiday" includes New Year's Day, Birthday of  Martin Luther King, Jr.,  Presidents' Day, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans Day, Patriot's Day, Thanksgiving Day, Christmas Day, and any other day appointed as a holiday by the President or the Congress of the United States.

O.     The Parties reserve the right, subject to the Court's approval, to agree to any reasonable extensions of time that might be necessary to carry out any of the provisions of this Agreement.

P.     The Class, Plaintiffs, Plaintiffs' Counsel, Lead Class Counsel, Vibram and/or Vibram's Counsel shall not be deemed to be the drafter of this Agreement or of any particular provision, nor shall they argue that any particular provision should be construed against its drafter or otherwise resort to the *contra proferentem* canon of construction.  All Parties agree that this Agreement was drafted by counsel for the Parties during extensive arm's length negotiations. No parol or other evidence may be offered to explain, construe, contradict, or clarify its terms, the intent of the Parties or their counsel, or the circumstances under which this Agreement was made or executed.

Q.     The Parties expressly acknowledge and agree that this Agreement and its exhibits, along with all related drafts, motions, pleadings, conversations, negotiations, and correspondence, constitute an offer of compromise and a compromise within the meaning of Federal Rule of Evidence 408 and any equivalent rule of evidence in any state.  In no event shall this Agreement, any of its provisions or any negotiations, statements or court proceedings relating to its provisions in any way be construed as, offered as, received as, used as, or deemed to be evidence of any kind in the Actions, any other action, or in any judicial, administrative, regulatory or other proceeding, except in a proceeding to enforce this Agreement or the rights of the Parties or their counsel.  Without limiting the foregoing, neither this Agreement nor any related negotiations, statements, or court proceedings shall be construed as, offered as, received as,  used  as  or  deemed to be evidence or an admission or concession of any liability or wrongdoing whatsoever on the part of any person or entity, including, but not limited to, the

Released Parties, Plaintiffs, or the Class or as a waiver by the Released Parties, Plaintiffs or the Class of any applicable privileges, claims or defenses.

R.     Plaintiffs expressly affirm that the allegations contained in the various complaints were made in good faith and have a basis in fact, but consider it desirable for the Actions to be settled and dismissed because of the substantial benefits that the proposed Settlement will provide to Class Members.

S.     The Parties, their successors and assigns, and their counsel undertake to implement the terms of this Agreement in good faith, and to use good faith in resolving any disputes that may arise in the implementation of the terms of this Agreement.

T.     The waiver by one Party of any breach of this Agreement by another Party shall not be deemed a waiver of any prior or subsequent breach of this Agreement.

U.     If one Party to this Agreement considers another Party to be in breach of its obligations under this Agreement, that Party must provide the breaching Party with written notice of the alleged breach and provide a reasonable opportunity to cure the breach before taking any action to enforce any rights under this Agreement.

V.     The Parties, their successors and assigns, and their counsel agree to cooperate fully with one another in seeking Court approval of this Settlement Agreement and to use their best efforts to effect the prompt consummation of this Agreement and the proposed Settlement.

W.     This Agreement may be signed with a facsimile signature or .pdf and in counterparts, each of which shall constitute a duplicate original.

Agreed to on the date indicated below.

APPROVED AND AGREED TO BY
LEAD CLASS COUNSEL


By:   /s/ Janine Pollack               DATE:   April 30, 2014
      Janine Pollack
      Wolf Haldenstein Adler Freeman & Herz LLP
      Telephone: 212-545-4600
      Facsimile: 212-686-0114
      Pollack@whafh.com
      270 Madison Avenue
      New York, New York 10016

      **BERMAN DEVALERIO**
      GLEN DEVALERIO (BBO #122010)
      NATHANIEL L. ORENSTEIN (BBO
          #664513)
      One Liberty Square
      Boston, MA 02109
      Telephone: 617-542-8300
      Facsimile: 617-542-1194
      gdevalerio@bermandevalerio.com
      norenstein@bermandevalerio.com

      **BLOOD HURST & O'REARDON, LLP**
      TIMOTHY G. BLOOD
      THOMAS J. O'REARDON II
      701 B Street, Suite 1700
      San Diego, CA 92101
      Telephone: 619-338-1100
      Facsimile: 619-338-1101
      tblood@bholaw.com
      toreardon@bholaw.com

      **SHEPHERD, FINKELMAN, MILLER &
          SHAH, LLP**
      JAMES C. SHAH
      35 East State Street
      Media, Pennsylvania 19063
      Telephone: 610-891-9880
      Facsimile: 610-891-9883
      jshaw@sfmslaw.com

**GARY ROBERTS & ASSOCIATES, P.A.**
MICHAEL K. BECK
324 Datura Street
Suite 223
West Palm Beach, FL 33401
Telephone: 561-686-1800
Facsimile: 561-686-1533
Michael@palmbeachtrialattorney.net

**POMERANTZ LLP**
JAYNE A. GOLDSTEIN
1792 Bell Tower Lane, Suite 203
Weston, FL 33326
Telephone: 954-313-3454
Facsimile: 954-313-3455
jagoldstein@pomlaw.com

**MILBERG LLP**
JOSHUA E. KELLER
One Pennsylvania Plaza
49th Floor
New York, NY 10119
Telephone: 212-594-5300
Facsimile: 212-868-1229
jkeller@milberg.com

**THE BREEDEN LAW FIRM**
TONY W. BREEDEN
578 Washington Boulevard, Suite 552
Marina Del Rey, CA  90292
Telephone:  310-984-6861
Facsimile: 310-984-6849
tony@breedenlawfirm.com

**SWEETNAM LLC**
WILLIAM M. SWEETNAM
582 Oakwood Avenue, 200
Lake Forest, IL 60045
Telephone: 847-559-9040
Facsimile: 847-235-6618
wms@sweetnamllc.com
mmr@sweetnamllc.com

WHATLEY KALLAS, LLC
PATRICK J. SHEEHAN

60 State Street, 7th Floor
Boston, MA 02109
Telephone: 617-573-5118
Facsimile: 617-573-5090
psheehan@whatleykallas.com

***Plaintiffs' Counsel***

APPROVED AND AGREED TO BY
AND ON BEHALF OF VIBRAM USA INC. and
VIBRAM FIVEFINGERS LLC


By:  /s/ Christopher M. Morrison          DATE:   April 30, 2014
     Christopher M. Morrison (BBO #651335)
     Dana Baiocco
     JONES DAY
     100 High Street
     Boston, MA 02110
     Telephone: 617-960-6999
     Facsimile: 617-449-6999
     cmorrison@jonesday.com
     dbaiocco@jonesday.com


## CERTIFICATE OF SERVICE

I, Christopher M. Morrison, hereby certify that a true copy of the foregoing document

filed through the ECF system will be electronically sent to the registered participants as

identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as

non-registered participants on April 30, 2014.


/s/ Christopher M. Morrison