# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
VALERIE BEZDEK, Individually and on )
Behalf of All Others Similarly Situated, )     Case No. 12-10513-DPW
                                    )
                 Plaintiff, )
                                      )     **Leave to File Granted on**
        v. )     **May 1, 2014**
                                      )
VIBRAM USA INC. and VIBRAM )
FIVEFINGERS LLC, )
                                      )
               Defendants. )
                                      )
_____)
BRIAN DE FALCO, Individually and on )
Behalf of All Others Similarly Situated, )     Case No. 13-10764-DPW
                                    )
                 Plaintiff, )
                                      )     **Leave to File Granted on**
        v. )     **May 1, 2014**
                                      )
VIBRAM USA INC. and VIBRAM )
FIVEFINGERS LLC, )
                                      )
               Defendants. )
                                      )
_____)

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY REVIEW OF CLASS ACTION SETTLEMENT, AUTHORIZATION OF CLASS NOTICE AND SETTING OF FINAL APPROVAL HEARING

# TABLE OF CONTENTS

Table of Authorities ................................................................................................. ii

I.      INTRODUCTION ......................................................................................... 1

II.     HISTORY OF THE LITIGATION ................................................................ 4

   A.   Pre-Filing Investigations .................................................................... 4

   B.   The Complaints, Defendants' Motions to Dismiss and Remove ............................ 5

   C.   Discovery ......................................................................................... 8

      1.   Named Party Discovery ..................................................................... 8

      2.   Third Party Discovery ...................................................................... 8

      3.   Negotiation of Confidentiality Order ................................................... 9

      4.   Negotiation of Protocol for, and Production and Review of, Electronically Stored Information .................................................... 9

   D.   Plaintiffs' Motion for Class Certification ............................................... 9

   E.   Settlement Negotiations ..................................................................... 10

III.    SETTLEMENT TERMS ............................................................................. 11

   A.   The Settlement Class.......................................................................... 11

   B.   Relief to Class Members..................................................................... 12

      1.   Monetary Relief ............................................................................. 12

      2.   Injunctive Relief............................................................................. 14

      3.   Notice and Administration Costs, Attorneys' Fees and Expenses, and Plaintiffs' Service Awards ............................................ 14

   C.   The Class Notice Plan......................................................................... 15

IV.    THE PROPOSED SETTLEMENT MEETS THE CRITERIA FOR PRELIMINARY REVIEW.................................................................... 20

   A.   The Settlement Negotiations Occurred at Arm's Length ..................................... 20

B.    Extensive and Sufficient Discovery was Performed..............................................21

C.    The Proponents of the Settlement are Highly Experienced in Similar Litigation  22

D.    Additional Considerations ....................................................................................23

V.    THE PROPOSED CLASS NOTICE PROGRAM SHOULD BE APPROVED .. 23

VI.   THE PROPOSED CLASS SHOULD BE CONDITIONALLY CERTIFIED ..... 26

A.    The Class Satisfies Federal Rule of Civil Procedure 23(a)...................................26

1.    Numerosity.......................................................................................................27

2.    Commonality....................................................................................................27

3.    Typicality .........................................................................................................28

4.    Adequacy of Representation ............................................................................29

B.    The Class Should Be Conditionally Certified Under Federal Rule of Civil
      Procedure 23(b)(3) ...............................................................................................30

1.    Common Questions Predominate ....................................................................31

2.    A Class Action is the Superior Method to Resolve this Controversy...............32

VII.  PLAINTIFF BEZDEK SHOULD BE APPOINTED CLASS
      REPRESENTATIVE AND WOLF HALDENSTEIN SHOULD BE APPOINTED
      AS LEAD CLASS COUNSEL...............................................................................33

VIII. THE PROPOSED SCHEDULE OF EVENTS ....................................................34

IX.   CONCLUSION......................................................................................................35

# TABLE OF AUTHORITIES

**CASES**
**Page(s)**

*Amchem Products, Inc. v. Windsor,*
  521 U.S. 591 (1997).............................................................................................26, 31, 33

*In re Austrian & German Bank Holocaust Litigation,*
  80 F. Supp. 2d 164 (S.D.N.Y. 2000)........................................................................21

*In re Bank of Boston Corp. Securities Litigation,*
  762 F. Supp. 1525 (D. Mass. 1991) .........................................................................29

*In re Compact Disc Minimum Advertised Price Antitrust Litigation,*
  216 F.R.D. 197 (D. Me. 2003)..................................................................................25

*Eisen v. Carlisle & Jacquelin,*
  417 U.S. 156 (1974)..................................................................................................23

*In re Gilat Satellite Networks, Ltd.,*
  No. CV-02-1510 (CPS), 2007 U.S. Dist. LEXIS 29062 (E.D.N.Y. Apr. 19, 2007)....................4

*Guckenberger v. Boston University,*
  957 F. Supp. 306 (D. Mass. 1997) ...........................................................................27

*Hochstadt v. Boston Scientific Corp.,*
  708 F. Supp. 2d 95 107 (D. Mass. 2010) ...................................................................3

*In re Lupron Marketing & Sales Practices Litigation,*
  677 F.3d 21 (1st Cir. 2012).......................................................................................13

*In re Lupron(R) Marketing & Sales Practices Litigation,*
  228 F.R.D. 75 (D. Mass. 2005).............................................................................27, 31

*In re M3 Power Razor System Marketing & Sales Practice Litigation,*
  270 F.R.D. 45 (D. Mass. 2010)........................................................................ *passim*

*Mullane v. Central Hanover Bank & Trust Co.,*
  339 U.S. 306 (1950)..................................................................................................23

*Natchitoches Parish Hospital Service District v. Tyco International, Ltd.,*
  No. 05-CV-12024, 2008 U.S. Dist. LEXIS 6140 (D. Mass. Jan. 29, 2008) ..............................27

*Nilsen v. York County,*
  382 F. Supp. 2d 206 (D. Me. 2005) ..........................................................................24

*In re Pharmaceutical Industry Average Wholesale Price Litigation,*
   588 F.3d 24 (1st Cir. 2009) .................................................................................................13, 33

*In re Prudential Insurance Co. of America Sales Practices Litigation,*
   177 F.R.D. 216 (D.N.J. 1997) .........................................................................................................24

*Rolland v. Cellucci,*
   191 F.R.D. 3 (D. Mass. 2000) .........................................................................................................21

*In re Skechers Toning Shoe Products Liability Litigation,*
   No. 11-md-2308, 2012 U.S. Dist. LEXIS 113641 (W.D. Ky. Aug. 13, 2012) ..........................25

*In re Sumitomo Copper Litigation,*
   189 F.R.D. 274 (S.D.N.Y. 1999) ....................................................................................................21

*Swack v. Credit Suisse First Boston,*
   230 F.R.D. 250 (D. Mass. 2005) ....................................................................................................28

*In re Volkswagen & Audi Warranty Extension Litigation,*
   273 F.R.D. 349 (D. Mass. 2011) ....................................................................................................24

*Wal-Mart Stores, Inc. v. Dukes,*
   131 S. Ct. 2541 (2011) .....................................................................................................................27

## STATUTES & RULES

California Consumer Legal remedies Act, Civil Code § 1750, *et seq.* ............................................6

California Unfair Competition Law, Business and Professions Code § 17200, *et seq.* ..................6

Federal Rules of Civil Procedure
   Rule 23 .............................................................................................................................................25, 26
   Rule 23(a) ....................................................................................................................................26, 27, 30
   Rule 23(a)(1) .......................................................................................................................................27
   Rule 23(a)(4) .......................................................................................................................................29
   Rule 23(b) ...........................................................................................................................................30
   Rule 23(b)(3) ........................................................................................................................... *passim*
   Rule 23(b)(3)(D) ................................................................................................................................26
   Rule 23(g)(1) .......................................................................................................................................33
   Rule 30(b)(6) ........................................................................................................................................8

Illinois Consumer Fraud and Deceptive Businesses Practices Act ("ICFDBP")
   815 ILCS § 505/1, *et seq.* ................................................................................................................2

Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"),
Florida Statutes § 501.201, *et seq.* ................................................................................2, 5

Massachusetts General Laws ("MGL")
  Ch. 266 § 91 ................................................................................................................2, 5
  Ch. 93A § 2 ..................................................................................................................2, 5

## **OTHER AUTHORITIES**

David F. Herr, *Annotated Manual for
Complex Litigation ("M.C.L.")* §§ 21.632, 30.41 (4th ed. 2002)....................................................3

4 Herbert B. Newberg & Alba Conte,
*Newberg on Class Actions*, §§ 11.25, 11.45 (4th ed. 2002)........................................................3, 23

7A Wright & Miller, *Federal Practice & Procedure* § 1778 (2d ed. 1986)..................................31

Plaintiffs Valerie Bezdek (the "Proposed Class Representative"), Brian De Falco

and Ali Safavi (collectively, including the Proposed Class Representative, "Plaintiffs")[1]

respectfully submit this Memorandum in Support of their Motion for Preliminary Review

of Class Action Settlement, Authorization of Proposed Class Notice, and Setting of Final

Approval Hearing. The settlement agreement ("Settlement Agreement") to which the

Parties have agreed is filed concurrently herewith.[2]

## I.    INTRODUCTION

Plaintiffs seek preliminary review of the proposed nationwide settlement of this

class action against Defendants Vibram USA Inc. and Vibram FiveFingers LLC

(collectively "Vibram" or "Defendants"), and authorization to distribute Notice to

members of the Settlement class in the manner described herein. The Settlement meets

Plaintiffs' goals in this litigation: it provides (i) monetary relief in the amount of $3.75

million, and (ii) injunctive relief requiring Vibram to make certain changes to its current

and prospective marketing practices, as outlined in the Settlement Agreement. The

Settlement is thus an excellent result for the Class.

---

[1] As detailed further herein, subsequent to the filing of Plaintiff Bezdek's action on March 21, 2012 ("*Bezdek*"), Lead Class Counsel also filed, on July 9, 2012, a putative class action lawsuit captioned *Safavi v. Vibram USA Inc., et al.*, Case Number CV 12-5900-BRO-JCG (C.D. Cal.) ("*Safavi*") in the United States District Court for the Central District of California that is substantially similar to the *Bezdek* Action. Thereafter, on August 8, 2012, Plaintiff De Falco, through different counsel, filed a substantially similar proposed class action ("*De Falco*") in the Superior Court for Will County, Illinois, No. 2012L601, asserting claims against Vibram USA Inc. and Vibram FiveFingers, LLC for violation of the Illinois Fraud and Deceptive Business Practices Act, breach of express warranty, and unjust enrichment. The *De Falco* action was removed to the Northern District of Illinois and, subsequently, transferred to this Court (ECF No. 41, C.A. No. 2013-CV-10764-DPW) (*Safavi*, together with *Bezdek* and *De Falco*, are herein referenced as the "Actions"). On December 20, 2013, the Parties petitioned the Court for a stay, in light of a settlement agreement in principle having been reached. On January 2, 2014, the Court granted that motion, further ordering "the filing of a joint status report the first business day of each month beginning 2/3/14 until status of settlement is resolved." (ECF No. 59.) Plaintiffs seek the appointment of Ms. Bezdek as Class Representative of the proposed settlement class.
[2] All capitalized terms have the same meaning as set forth in the Settlement Agreement.

Plaintiffs' central allegations in the Actions are that Vibram's advertising for its so-called "barefoot" or "minimalist" FiveFingers footwear was false, deceptive, and likely to mislead consumers because FiveFingers footwear does not provide the health benefits that Defendants claimed it provided. Plaintiffs alleged that on the basis of these misrepresentations, Vibram was able to charge a price premium for FiveFingers footwear over other running shoes. Plaintiffs alleged causes of action for violations of Massachusetts' General Laws ("MGL") Ch. 266 § 91 and Ch. 93A § 2, the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Florida Statutes § 501.201 *et seq.*, the Illinois Consumer Fraud and Deceptive Businesses Practices Act ("ICFDBP"), breach of express warranty and unjust enrichment.

As a result of this Settlement, eligible Class Members will be able to receive monetary compensation as follows: For each pair of FiveFingers footwear purchased by an eligible Class Member, that eligible Class Member shall be paid on a *pro rata* basis from the balance of the Settlement Fund (after payment of Administrative Costs, necessary taxes and expenses, Attorneys' Fees and Expenses, and Plaintiff Service Awards), up to a maximum of $94.00 per pair, the average retail price of FiveFingers footwear. Based on the distributions of similar settlements in similar class actions, it is reasonable to expect that Class Members will receive payment in the range of $20.00 to $50.00 per pair. Class Members may recover payment for up to two pairs of FiveFingers footwear without submitting proof of purchase by timely submitting a valid Claim Form, and may recover payment for more than two pairs of FiveFingers footwear by timely submitting a valid Claim Form and providing Proof of Purchase or other documentation

or evidence reasonably establishing the purchase of each pair of FiveFingers footwear beyond two pairs.

The proposed Class which the Parties jointly request that the Court conditionally certify for settlement purposes only is:

> All persons who, during the Class Period, purchased certain FiveFingers footwear from Vibram and/or its authorized retailers including, without limitation, vibramfivefingers.com.

Excluded from the Class are: (a) Vibram's Board members, executive-level officers, or employees, including its attorneys; (b) persons or entities who purchased the FiveFingers footwear primarily for the purpose of resale; (c) all claims for personal injury relating to the use of the FiveFingers footwear; (d) distributors or re-sellers of the FiveFingers footwear; (e) the judge and magistrate judge presiding over the Actions and their immediate families; (f) governmental entities; and (g) persons or entities who timely and properly exclude themselves from the Class as provided in the Settlement Agreement. *See* Settlement Agreement, at § II.A.11.

At this stage, the Court need only "make a preliminary determination of the fairness, reasonableness and adequacy of the settlement" so that notice of the Settlement may be given to the Class and a fairness hearing may be scheduled to make a final determination regarding the fairness of the Settlement. *See* 4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, § 11.25 (4th ed. 2002); David F. Herr, *Annotated Manual for Complex Litigation* ("*M.C.L.*") § 21.632 (4th ed. 2008). In so doing, the Court reviews the Settlement to determine "'[i]f the parties negotiated at arm's length and conducted sufficient discovery.'" *Hochstadt v. Boston Scientific Corp.,* 708 F. Supp. 2d 95, 107 (D. Mass. 2010) (quoting *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 32-33 (1st Cir. 2009)). Thus, preliminary review of a proposed settlement

should seek to determine whether the settlement "is the result of serious, informed, and non-collusive negotiations, [whether] there are no grounds to doubt its fairness and no other obvious deficiencies . . . and [whether] the settlement appears to fall within the range of possible approval." *In re Gilat Satellite Networks, Ltd.,* No. CV-02-1510 (CPS), 2007 U.S. Dist. LEXIS 29062, at *31 (E.D.N.Y. Apr. 19, 2007) (citing *M.C.L.* § 30.41).

Here, as set forth in further detail below, the proposed Settlement meets the standard for preliminary review. Therefore, Plaintiffs respectfully request that the Court enter the contemporaneously filed [Proposed] Order Authorizing Notice, attached as Exhibit 5 to the Settlement Agreement, that, among other things: (1) conditionally certifies the Class for settlement purposes; (2) conditionally designates Plaintiff Valerie Bezdek as Class Representative; (3) appoints Wolf Haldenstein Adler Freeman & Herz LLP as Lead Class Counsel for the Class; (4) approves the proposed Class Notice Plan; and (5) schedules a Fairness Hearing for the Settlement.

## II.     HISTORY OF THE LITIGATION

### A.      Pre-Filing Investigations

In late 2011, Lead Class Counsel began investigating the veracity of the advertising claims Vibram made about the health benefits of FiveFingers footwear. *See* Declaration of Janine L. Pollack in Support of Motion for Preliminary Review of Class Action Settlement, Authorization of Class Notice and Setting of Final Approval Hearing ("Pollack Decl.") submitted as Exhibit 1 to this Memorandum, at ¶ 4. This investigation included gathering and analyzing publicly available studies concerning the health benefits, or lack thereof, of wearing the FiveFingers footwear. *Id.* The investigation also included communication with podiatrists concerning the FiveFingers footwear. *Id.* The

investigation further included an extensive search and review of Vibram's advertising and marketing materials for the FiveFingers footwear at issue. *Id.* Counsel also researched and analyzed, to the extent available, financial and sales information about Vibram generally and financial and sales information specifically related to the relevant FiveFingers footwear. *Id.* Based upon this information, Lead Class Counsel was able to draft, on behalf of Plaintiffs, a Complaint and an Amended Complaint.

**B.      The Complaints, Defendants' Motions to Dismiss and Remove**

1.      *Bezdek* Action

On March 21, 2012, Plaintiff Bezdek filed the first above-captioned action in this Court, *Bezdek v. Vibram USA Inc., et al.*, Case Number 1:12-cv-10513-DPW (D. Mass.), alleging violations of Mass. Gen. Laws ch. 26, § 91, Florida Statutes § 501.201 *et seq.*, and unjust enrichment. (ECF No. 1). On June 4, 2012, Vibram moved to dismiss the Complaint (ECF No. 10). Following that motion, Plaintiff Bezdek conducted additional research in connection with the preparation of an amended complaint, and ultimately drafted and filed the Amended Complaint on June 25, 2012, which added a claim of violation of Mass. Gen. Laws ch. 93A, § 2. (ECF No. 12). In that Amended Complaint, Ms. Bezdek sought to represent a class of "all others similarly situated consisting of all persons in the United States who purchased FiveFingers running shoes during the period from March 21, 2009 until notice is disseminated to the Class." *Id.* at ¶ 57

On July 18, 2012, Vibram moved to dismiss the Amended Complaint. Plaintiff Bezdek opposed that motion. On February 20, 2013, this Court entered an Order denying in part and granting in part Vibram's motion. (ECF No. 38). Vibram filed its Answer to the Amended Complaint on March 14, 2013. (ECF No. 44).

Thereafter, the *Bezdek* Action proceeded into discovery, which is described more fully below. Thus, at the time that Parties reached a potential settlement agreement and sought a stay, Plaintiffs had prepared and were ready to file their motion for certification of a plaintiff class, and had worked with an expert and were prepared to identify their expert on class issues. The litigation was thus well advanced and much work had been done that put Lead Class Counsel in a position to evaluate the merits of settlement proposals and to engage in arm's length settlement negotiations.

  2. *Safavi* Action

  On July 9, 2012, a putative class action captioned *Safavi v. Vibram USA Inc., et al.*, Case Number CV 12-5900-BRO-JCG (C.D. Cal.) was filed in the United States District Court for the Central District of California. Plaintiff Safavi is represented by the same counsel as Plaintiff Bezdek, and his complaint is substantially similar to hers. Safavi's Complaint includes claims for violations of California's Unfair Competition Law, Business and Professions Code § 17200 *et seq.*, California's Consumers Legal Remedies Act, Civil Code § 1750 *et seq.*, and breach of express warranty. Mr. Safavi proposed to represent "all others similarly situated consisting of all persons in California who purchased FiveFingers running shoes from the time they were first sold in California until notice is disseminated to the Class." (*Safavi* Dkt., ECF No. 1, at ¶ 57.) On August 30, 2012, Defendants filed a motion to dismiss the Safavi complaint. (*Safavi* Dkt., ECF No. 19.) On September 24, 2012, the Court entered an order approving the Parties' stipulation providing that the *Safavi* Action would be stayed until the issuance of a ruling on class certification in the *Bezdek* Action, or until further order of the *Safavi* Court. (*Safavi* Dkt., ECF No. 24.)

3. *De Falco* Action

On August 8, 2012, Plaintiff De Falco, through different counsel, filed an action in the Superior Court for Will County, Illinois, No. 2012L601. In his Complaint, Mr. De Falco asserted claims for violation of the Illinois Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq.*, breach of express warranty, and unjust enrichment. Mr. De Falco sought to represent a class of "all Illinois residents who purchased Vibram FiveFingers running shoes from an authorized retailer located in Illinois or online for shipping to an Illinois address." The substance of the *De Falco* Complaint is virtually identical to the *Bezdek* and *Safavi* Complaints.

On September 11, 2012, the *De Falco* action was removed to the Northern District of Illinois, docketed as *De Falco v. Vibram USA LLC et al.*, 1:12-CV-07238 before Hon. Virginia M. Kendall. On October 3, 2012, De Falco moved to remand the case to state court. (*De Falco* Dkt., ECF No. 12.) On October 11, 2012, Vibram moved to dismiss, stay, or transfer the case to the District of Massachusetts. (*De Falco* Dkt., ECF No. 16.) On March 18, 2013, Judge Kendall denied De Falco's motion to remand, granted in part and denied in part Vibram's Motion to Dismiss De Falco's Complaint, and granted Vibram's motion to transfer. (*De Falco* Dkt., ECF No. 36.) The case was then transferred to the District of Massachusetts by Order dated April 3, 2013, and docketed as *De Falco v. Vibram USA Inc., et al.*, Case Number 1:13-cv-10764-DPW (D. Mass.). (*De Falco* Dkt., ECF No. 38.) Vibram filed its Answer to the *De Falco* Complaint on June 3, 2013. (*De Falco* Dkt., ECF No. 53.)

On December 20, 2013, Plaintiff De Falco moved jointly with Plaintiff Bezdek for a stay in light of settlement negotiations. (*Bezdek* Dkt., ECF No. 58.)

## C.    Discovery

As detailed below, by the time the Parties reached an agreement in principle to settle the case, the litigation had advanced significantly into the late stages of discovery.

### 1.    Named Party Discovery

Through negotiation, the Parties also reached an agreement as to a schedule for discovery. On July 10, 2013, Plaintiffs served on Vibram fifty-eight (58) requests for production, fourteen (14) interrogatories and eighteen (18) requests for admission. Pollack Decl. at ¶ 10. This resulted in the production by Vibram of over 52,000 pages, primarily in electronic form, but including some in hard copy, which were thoroughly reviewed by Plaintiffs' Counsel. *Id.*, ¶ 14. Lead Class Counsel established a dedicated document database for this litigation to review and categorize documents received by Defendants and third-parties. *Id.* Lead Class Counsel also noticed the deposition, pursuant to Federal Rule of Civil Procedure 30(b)(6) of representative(s) of Vibram able to testify concerning Vibram's advertising guidelines and programs and retail policies concerning FiveFingers footwear.

Vibram also served a set of requests for production on Plaintiffs. *Id.,* ¶ 11. Plaintiffs served a written response and produced documents.

### 2.    Third Party Discovery

Lead Class Counsel also served document subpoenas on third parties AMP Agency (Advertising/Marketing), Nail Communications (Advertising/Marketing), Tomlinson LLC (Advertising/Marketing) and Dr. Daniel E. Lieberman of Harvard University (consultant to Defendants with respect to "barefoot running"). These

subpoenas collectively resulted in the production of tens of thousands of pages of documents which were reviewed by Lead Class Counsel. *Id.,* ¶ 15.

### 3. Negotiation of Confidentiality Order

The Parties also, over a period of months, negotiated the terms of the confidentiality stipulation. *Id.* at ¶ 14.

### 4. Negotiation of Protocol for, and Production and Review of, Electronically Stored Information

Lead Class Counsel and Vibram's counsel also engaged in substantial and extensive negotiations relating to the production of ESI by Defendants, including significant debate concerning the scope of the production and determination of the search terms to be used. *Id.* As noted above, as a result a result of these extensive meet and confer efforts, as well as similar meet and confer sessions regarding the Defendants' responses to Plaintiffs' document requests, Vibram produced approximately 52,000 pages of documents, primarily in ESI, with a smaller production in hard copy. *Id.* Lead Class Counsel created a dedicated document database for the electronic discovery obtained, and organized a team of Plaintiffs' Counsel who then analyzed and coded the ESI productions over the course of months. *Id.* Plaintiffs' Counsel also reviewed a substantial volume of Vibram's advertisements. *Id.* These documents were used throughout the litigation, including in connection the preparation of the briefing and related documents for class certification and settlement analysis.

### D. Plaintiffs' Motion for Class Certification

On July 7, 2013, the Court entered an Order (*De Falco* Dkt., ECF No. 57) requiring that Plaintiffs' experts be identified by December 27, 2013, and the motion for class certification be filed by January 10, 2014. Lead Class Counsel worked to meet this

schedule, while also attempting to determine whether resolution of the matter through negotiation would be possible.  Pollack Decl. at ¶ 17.  Thus, by the time that, as described below, the Parties reached a tentative settlement agreement and sought to stay proceedings, Plaintiffs had: (1) reviewed almost all of the documents produced to date by Vibram and third parties; (2) worked with and were prepared to identify their expert; and, (3) in significant part, had drafted and were prepared to file their motion for class certification.

### E.  Settlement Negotiations

Even while carrying out the litigation activities discussed above, the Parties were engaged in numerous, arm's-length settlement negotiation sessions over the course of approximately one year.  *Id.,* ¶ 18.  First, in or about late 2012, the Parties agreed to attend a two-day mediation session with Professor Eric Green of Resolution, LLC, in Boston, Massachusetts.  The mediation was scheduled to extend over January 9 and 10, 2013.  However, differences in the Parties' positions remained so significant after the first day that the Parties agreed that it would not be productive to return for the second day.  *Id.*, ¶ 19.  As such, the Parties continued with litigation.  The initial collapse of settlement negotiations confirms the zealousness with which counsel represented their respective clients and the lack of collusion between the Parties.

Beginning in late November 2013, settlement negotiations resumed directly between Lead Class Counsel and Vibram's Counsel.  Discussions continued over the following weeks, during which the Parties communicated numerous times by phone and email over the terms of a potential settlement.  *Id.,* ¶ 20.  The Parties reached an agreement in principle on December 12, 2013.  Then, over the following months, the

Parties worked on drafting the Settlement Agreement and other preliminary review documents which are submitted herewith. *Id.*

Every aspect of this Settlement was heavily negotiated by Lead Class Counsel and Vibram's Counsel, including the overall dollar amount of the Settlement, each aspect of the Settlement Agreement and exhibits, the amounts available to individual Class Members making Claims, and details surrounding the claims process. *Id.* at, ¶ 21. Plaintiffs' Counsel have determined that a settlement of the Action on the terms reflected in this Settlement Agreement is fair, reasonable, adequate, and in the best interests of Plaintiffs and the Class.

## III.    SETTLEMENT TERMS

The Settlement Agreement, filed concurrently with this motion, contains the complete terms of the settlement, which are summarized below.

### A.    The Settlement Class

The Settlement Agreement defines a national Settlement Class under Rule 23(b)(3) composed of all persons who purchased certain FiveFingers footwear from Vibram and/or its authorized retailers from March 21, 2009, to the date of the first dissemination of the Summary Settlement Notice or Class Notice, whichever is earlier. *See* Settlement Agreement, at § II.A.15.[3]

---

[3] The eligible FiveFingers footwear are: Alitza, Bikila, Bikila EVO, Bikila EVO WP, Bikila LS, Classic, Classic Smartwool, EL-X, Estrada, Flow, Fresca, Jaya, Komodo Sport, Komodo Sport LS, KMD Sport, KMD Sport LS, KSO, KSO EVO, KSO Trek, Lontra, SeeYa, SeeYa LS, SeeYa LS Night, Signa, Speed, Speed XC, Sprint, Spyridon, Spyridon LS, Spyridon MR, Trek LS, TrekSport, TrekSport Sandal, V-On, and Vybrid Sneak. Settlement Agreement at §II.A.22

### B. Relief to Class Members

#### 1. Monetary Relief

Vibram will create a Settlement Fund of $3.75 million USD to provide monetary relief to Class Members for their purchases of the FiveFingers footwear and pay the costs, counsel fees and Service Awards associated with the Settlement. To obtain a cash payment for up to two pairs of FiveFingers footwear, Class Members need only fill out and return a simple Claim Form and no additional proof of purchase is required. The Claim Form can be viewed and submitted online through the Settlement Website, or it can be mailed in. Class Members who submit proof of purchase may receive cash payment for each of their purchases even in excess of two pairs of FiveFingers footwear. Class Members will receive pro rata portions of the settlement, up to a maximum of $94 (the average retail price of FiveFingers footwear), based on the particular FiveFingers footwear purchased, the number of FiveFingers footwear purchased and the number of Class Members who submit Eligible Claims. *See* Settlement Agreement, at § III.B.5. Based upon prior experience in similar class actions, it is anticipated that Class Members will receive between $20 and $50 per pair of FiveFingers footwear.

If the total amount of eligible and approved claims submitted by Class Members is less than the available relief, each Class Member's award will be increased on a *pro rata* basis, up to $94, as reflected above. This maximum amount represents the approximate average retail price Class Members are estimated to have paid for the FiveFingers footwear.

The parties expect the Settlement Fund to be fully consumed, but if that does not happen, none of the $3.75 million Settlement Fund will revert to Vibram. If any amounts

remain in the $3.75 million Settlement Fund (after payment of all Notice and Claim Administration Expenses, Service Awards, necessary taxes and tax expenses, Attorneys' Fees and Expenses and Eligible Claims, including after the upward adjustments of Eligible Claims), the amount remaining in the Settlement Fund will be distributed pursuant to the *cy pres* doctrine to the American Heart Association with specific directions that such funds be used for relating to research regarding health benefits associated with running or exercise or substantially similar research, or such other charitable organization as the Court directs. *See* Settlement Agreement, at § VIII.D. The American Heart Association is a worthy non-profit entity that is the nation's oldest, largest voluntary organization devoted to fighting cardiovascular diseases and stroke. Its programs include, *inter alia*, education of the public about healthy lifestyle choices. *See* http://www.heart.org/HEARTORG/General/About-Us---American-Heart-Association_ UCM_305422_SubHomePage.jsp

*Cy pres* distributions are appropriate where, *inter alia*, "it is economically infeasible to distribute money to class members" and "money remained from the defendant's payout after money for damages had been distributed to class members." *In re Pharm. Indus.*, 588 F.3d at 34 (upholding *cy pres* award to cancer research or patient care organizations where claims dealt with inflated prescription drug prices); *see also In re Lupron Mktg. & Sales Practices Litig.*, 677 F.3d 21 (1st Cir. 2012) (upholding *cy pres* award to cancer foundation in case alleging overcharge of anti-cancer medication). The *cy pres* award is not limited by geography and the purpose of the *cy pres* award is directly connected to concerns of the Plaintiff Class.

### 2.    Injunctive Relief

As part of the Settlement, Vibram has agreed to take commercially reasonable efforts to discontinue certain aspects of its advertising and marketing campaign, including agreeing that:

(i)    Vibram will not make or assist others in making any claims that the FiveFingers footwear or products similar to the FiveFingers footwear are effective in strengthening muscles or preventing injury unless that representation is true, non-misleading and is supported by competent and reliable scientific evidence;

(ii)    Vibram will not make or assist others in making any health benefit claim about FiveFingers footwear or products similar to the FiveFingers footwear unless Vibram possesses and relies upon competent and reliable scientific evidence to substantiate that the claim is true and non-misleading; and

(iii)    Vibram will not misrepresent or assist others in misrepresenting the existence, contents, validity, results, conclusions, or interpretations of any test, study, or research relating to Vibram's FiveFingers footwear or products similar to the FiveFingers footwear.  *See* Settlement Agreement, at § III.D.

### 3.    Notice and Administration Costs, Attorneys' Fees and Expenses, and Plaintiffs' Service Awards

All Notice and Claims Administration Expenses, Attorneys' Fees and Expenses, and plaintiff Service Awards will also be paid from the Settlement Fund.  *See* Settlement Agreement, at §§ III.A.2, VIII.A..  Vibram agrees to not oppose Plaintiffs' Counsel's

application for reasonable Attorneys' Fees not to exceed 25% of the Settlement Fund plus reimbursement of out-of-pocket expenses not to exceed $70,000. Vibram also agrees not to oppose any request for Court-awarded service awards of $2,500 each to Plaintiffs Bezdek, De Falco and Safavi. *See* Settlement Agreement, at § VIII.C. If any portion of the agreed-upon Plaintiffs' Counsel's Attorneys' Fees and Expenses is not awarded by the Court, then such amount will remain in the Settlement Fund, and will not revert to Vibram. *Id.* at § VIII.D.

## C.    The Class Notice Plan

As described below, the Parties have developed a Notice Plan with the help of Heffler Claims Group, LLC, a firm that specializes in developing class action notice plans.

The vast majority of FiveFingers footwear was sold at retail stores, and, thus, Vibram does not have mailing addresses for these Class Members. The Parties have developed a Class Notice Program that has been designed to provide broad notice, through magazine, internet and mobile advertising, targeted to reach as many Settlement Class Members as possible and to satisfy due process requirements.

At the center of the Class Notice Plan is the website specifically set up for this Settlement ("Settlement Website"). The address of the Settlement Website is www.fivefingerssettlement.com. It is designed to be easily viewed across computers, laptops and mobile devices. The internet address, or URL, will appear on all of the notices, and will be hyper-linked where a banner notice appears on the Internet. Potential Class Members will be linked to the short and simple online Claim Form, which can be

completed and submitted on the Settlement Website. The Settlement Website will also provide information about the Settlement, including the detailed Class Notice.

Vibram has email addresses for certain consumers who ordered FiveFingers footwear online or otherwise contacted Vibram online. Beginning not later than ten (10) business days after entry of the Order Authorizing Notice and to be substantially completed not later than twenty (20) days after entry of the Order Authorizing Notice, a Class Notice and Claim Form will be sent to each such email address. In the event that an email is returned as undeliverable, no later than thirty-five (35) days after the entry of the Order Authorizing Notice, the Notice Administrator shall issue a Postcard Notice (substantially in the form of Exhibit 8 to the Settlement Agreement) by First Class U.S. Mail, proper postage prepaid, to each physical address associated with such email address, subject to the existence of such information as provided by Vibram pursuant to Section IV.B.1 a of the Settlement Agreement.

In the event that a Postcard Notice gets returned as undeliverable, no later than fifty (50) days after entry of the Order Authorizing Notice, the Notice Administrator shall: (i) re-mail any Postcard Notices returned by the United States Postal Service with a forwarding address that are received by the Notice Administrator; (ii) by itself or using one or more address research firms, as soon as practicable following receipt of any returned Postcard Notices that do not include a forwarding address, research any such returned mail for better addresses and promptly mail new copies of the Postcard Notice to the better addresses so found.

Given that Vibram only has email addresses for a limited number of Class Members, the Class Notice Plan focuses primarily on publicizing the Settlement through

the Summary Settlement Notice in targeted periodicals and hyper-linked "banner advertisements" across numerous internet sites. The Summary Settlement Notice and banner advertisements will be published through various sources chosen based on marketing research on the demographics of consumers who purchase FiveFingers footwear, as well as sources where Vibram itself advertised.

The Summary Settlement Notice is designed to provide potential Class Members with information regarding the Settlement and inform them about their rights. The Summary Settlement Notice contains a general description of the Action, the Settlement relief, including how a claim can be filed, and a general description of Class Members' legal rights. The Summary Settlement Notice also directs Class Members to the Settlement Website and a toll free number. Class Members may use these information hubs to obtain a copy of the detailed Class Notice, Claim Form, and other information.

One of the key components in the Class Notice Program includes publication of the Notice in Runner's World, a highly targeted running magazine enormously popular with runners. Runner's World has played a role in Vibram's marketing efforts. Runner's World provides all runners, from beginner to professional athlete, with advice and information on clothing, techniques, training and products. Runner's World has a total circulation of more than 673,000, and more than 2,860,000 readers.

Banner ads (discussed below) will also appear on the Runner's World Internet website. Further, the Settlement will be publicized through the use of Internet "banner ads." Banner ads are short, Internet-based advertisements designed to attract attention. When presented with such an ad, an interested Internet user need only click on the banner ad and immediately will be taken to the Settlement Website. Internet banner ads will be

posted on the following families of sites, or networks, for a period of time sufficient to deliver approximately 300,000,000 impressions: Runner's World (mentioned above); The Time Access Network;[4] Facebook;[5] The Xaxis Network;[6] and Gannett.com, a website that includes over 100 newspaper and television websites throughout the United States. Banner ads on the Internet will not only provide broad general reach, the program will specifically target those with special interest in Vibram, Vibram FiveFingers, running and health and fitness. This is particularly helpful because the vast majority of the targeted audience is online and most of them are medium to heavy users of the Internet. The banner ads for this Settlement will appear in substantially the following forms:









---

[4] The Time Access Network includes sites such as People.com, Health.com, InStyle.com, SportsIllustrated.com and CNN Money.com.

[5] Emphasis will be placed on Facebook users who are interested in Vibram, Vibram FiveFingers, and barefoot running.

[6] Emphasis will be placed on targeting shoppers for running shoes on the Xaxis Network, which includes properties, among others, such as Fitness HealthZone, Active.com. iVillage and others.

Accompanying the Summary Settlement Notice and Internet banner advertisements is a customized press release in the form of the Summary Settlement Notice that will be distributed over PR Newswire's National U.S.1 newsline, as well as social networking posts to sites including Twitter, LinkedIn and Facebook, and fitness, running and health bloggers.

Given that a significant percent of this target population owns smart phones, the Class Notice Program will also incorporate banner advertising on Mobile web sites and a Mobile APP network. Mobile sites are adapted internet sites, easily navigated on a mobile device. A mobile app[7] is a software application developed specifically for use on small wireless computing devices, such as smart phones and tablets, rather than desktop or laptop computers. Apps are specifically designed for ease of navigating specific types of information such as sports videos or checking the weather on mobile device platforms.

By clicking on mobile banners, users will be directed to the official settlement website where they may obtain important court documents and details related to the proposed Settlement. Mobile apps will supplement the mobile notice effort and target adults who run, walk or participate in other fitness activities. The proposed app network includes a number of properties such as New York Times Health and Fitness, Everyday Health, the Los Angeles Times, CBS News, and ESPN news, among others.

---

[7] As an example, airlines have mobile apps that allow customers to check in and to monitor their flight status. Banks have mobile apps that let people track their bank balances and pay bills. ESPN's app lets sports fans check scores. Banners will be served to users when they are looking at the app.

Complementing the Summary Settlement Notice is the full Class Notice. The Class Notice contains detailed information about the Action, the Settlement benefits, the release and how to opt-out, object and exercise other rights under the Settlement.

The full Class Notice is attached to the Settlement Agreement as Exhibit 2. The Class Notice will be available through the Settlement Website established for this case and will be mailed or emailed to callers at their request.

## IV.    THE PROPOSED SETTLEMENT MEETS THE CRITERIA FOR PRELIMINARY REVIEW

Plaintiffs do not seek traditional "preliminary approval" of the Settlement from the Court in light of the Court's stated belief that "[a]pproval must await 'definitive review at the time of the fairness hearing, following notice and an opportunity for any objections" *In re M3 Power Razor Sys. Mktg. & Sales Practice Litig.*, 270 F.R.D. 45, 50 n.1 (D. Mass. 2010) (Woodlock, J.) (citation omitted).  However, Plaintiffs can and must demonstrate that the Settlement is "in the range of fair, reasonable, and adequate." *Id.* at 62.  This Court performs this analysis by reviewing whether: "'(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'"  *Id.* at 63 (quoting *In re Lupron(R) Mktg. & Sales Practices Litig.*, 345 F. Supp. 2d 135, 137 (D. Mass. 2004)).

### A.    The Settlement Negotiations Occurred at Arm's Length

As noted previously, the Settlement resulted from prolonged and vigorous negotiation between the Parties at various times during the course of a year, involving a mediation before a respected mediator in Boston, Eric Green, and numerous telephone calls and emails over a month to reach an agreement in principle in December 2013.

Pollack Decl., ¶¶ 18-20. After the broad terms of the Settlement were agreed upon, many issues remained and were negotiated in fine detail for an additional three to four months. *Id.* at ¶ 21. The Settlement is the result of arm's length negotiations between capable and experienced counsel, and is therefore entitled to a presumption of fairness, reasonableness, and adequacy. *See Rolland v. Cellucci*, 191 F.R.D. 3, 6 (D. Mass. 2000) (giving a "strong initial presumption that the parties' compromise is fair and reasonable" because the issues were contested and the "settlement was reached after arms-length negotiations"); *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 280-81 (S.D.N.Y. 1999) ("'a presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery'") (quoting *M.C.L.*, Third P30.42 (1995)).

### B. Extensive and Sufficient Discovery was Performed

At this stage, the Court is required to determine "whether sufficient evidence has been obtained through discovery to determine the adequacy of the settlement." *Rolland*, 191 F.R.D at 10 (citation omitted). The Court is not required to find that the parties have engaged in "extensive discovery" to approve the settlement. Instead, "it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to 'intelligently make . . . an appraisal' of the Settlement.'" *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) (quoting *Plummer v. Chemical Bank*, 668 F. 2d 654 (2d Cir. 1982)). The Court need not possess evidence to decide the merits of the issues, because the purpose of the Settlement is to avoid litigation on the merits. Instead, the Court must only possess sufficient information to raise its

decision above mere conjecture. *See* Herbert Newberg & Alba Conte, *Newberg on Class Actions*, § 11.45 (4th ed. 2002).

As detailed above in Sections II(A) and (C), and in the Pollack Declaration at ¶¶ 3, 4, 10, 12, 15, 16. Plaintiffs' Counsel performed extensive pre-litigation investigation and took extensive discovery in the case including, *inter alia*, (1) the propounding of interrogatories, document requests and requests for admission on Vibram; (2) the issuance of four third-party subpoenas; and (3) the review of tens of thousands of pages of documents produced by Defendants and third parties, including Vibram's financial records relating to the FiveFingers footwear. In connection with the *Bezdek* Action, Lead Class Counsel also retained an expert in biomechanics to review Vibram's advertising claims. This is "sufficient" for the purposes of determining fairness and adequacy of the Settlement at this stage. *See*, *e.g.*, *In re M3 Power Razor*, 270 F.R.D. at 63 (this Court found discovery sufficient where, *inter alia*, defendant produced over 100,000 pages of documents and pertinent financial information).

**C.    The Proponents of the Settlement are Highly Experienced in Similar Litigation**

Plaintiffs' Counsel have significant experience and have achieved success in litigating false advertising and consumer protection class actions in this Court and courts around the country, as well as other types of class action litigation. *See* Pollack Decl. at Exhibit A (Firm Resume of Wolf Haldenstein Adler Freeman & Herz LLP). Vibram's counsel is also a highly regarded team of highly skilled and sophisticated lawyers with extensive class action experience. Accordingly, this requirement is easily met.

**D.      Additional Considerations**

The Settlement's provision of $3.75 million (excluding the value of the injunctive relief) constitutes a fair and reasonable result that will permit all Class Members who submit valid claims to receive substantial reimbursements, potentially up to the average retail amount of their purchases from Defendants.  This monetary relief, combined with Defendants' agreement to refrain from the advertising practices at issue in this litigation, achieves a settlement that is "in the range of fair, reasonable, and adequate," *In re M3 Power Razor*, 270 F.R.D. at 62, particularly when weighed against the strengths and weaknesses of the Parties' positions, and the inherent risks, costs, and delay of continued litigation.[8]

**V.      THE PROPOSED CLASS NOTICE PROGRAM SHOULD BE APPROVED**

The threshold requirement concerning class notice is whether the means employed to distribute the notice was reasonably calculated to apprise the class of the pendency of the action, the proposed settlement and the class members' rights to opt out or object.  *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950).  The mechanics of the notice process are left to the discretion of the court, subject only to the broad "reasonableness" standards imposed by due process.

"Notice meets Rule 23(e) and due process requirements if it is reasonably calculated to reach the class members and inform them of the existence of and the

---

[8] It also bears noting that Plaintiffs' Counsel is not aware of any objections -- which would not be expected at this stage of the litigation before Class Notice is disseminated.  In any event, as this Court has stated, "the only practical way to ascertain the overall level of objection to the proposed settlement is for notice to go forward, and to see how many potential class members choose to opt out of the settlement class or object to its terms at the Final Fairness Hearing."  *In re M3 Power Razor*, 270 F.R.D. at 63.

opportunity to object to the settlement." *Nilsen v. York County*, 382 F. Supp. 2d 206, 210 (D. Me. 2005) (citation omitted); *see also In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 177 F.R.D. 216, 231 (D.N.J. 1997) ("The notice of the Proposed Settlement, to satisfy both Rule 23(e) requirements and constitutional due process protections, need only be reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections.") (citations omitted). "Rule 23 does not require the parties to exhaust every conceivable method of identifying the individual class members," and "[f]or those whose names and addresses cannot be determined by reasonable efforts, notice by publication will suffice under Rule 23(c)(2) and under the due process clause." *Id.* at 232; *see also id.* at 231 ("[D]ue process does not require actual notice, but rather a good faith effort to provide actual notice."); *In re Volkswagen & Audi Warranty Extension Litig.*, 273 F.R.D. 349, 355 (D. Mass. 2011) (approving notice that was "best notice practicable under the circumstances").

The proposed forms of notice more than satisfy these requirements. The Parties have negotiated and drafted a Class Notice and Summary Settlement Notice which are written in simple terminology and include: (1) basic information about the lawsuit; (2) a description of the benefits provided by the Settlement; (3) an explanation of how Class Members can obtain Settlement benefits; (4) an explanation of how Class Members can exercise their right to opt-out or object to the Settlement; (5) an explanation that any claims against Vibram that could have been litigated in this action will be released if the Class Member does not opt out from the Settlement; (6) the names of counsel for the Class and information regarding attorneys' fees, expenses, and Service Awards; (7) the

Fairness Hearing date; (8) an explanation of eligibility for appearing at the Fairness Hearing; and (9) the Settlement Website address and a toll free number where additional information can be obtained. *See* Settlement Agreement, Exhibits 2 (Class Notice) and 6 (Summary Settlement Notice).

The contents of the proposed Class Notice are more than adequate, and comply with the Federal Judicial Center's model class action notices. *See* www.fjc.gov; *In re Skechers Toning Shoe Prods. Liab. Litig.*, No. 11-2308, 2012 U.S. Dist. LEXIS 113641, at *46-47 (W.D. Ky. Aug. 13, 2012) (approving class notices that "comply with the Federal Judicial Center's illustrative class action notices"). The Notice provides Class Members with sufficient information to make an informed and intelligent decision whether to object to the Settlement. As such, it satisfies the content requirements of Rule 23. *See In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 203 (D. Me. 2003) ("notice must describe fairly, accurately and neutrally the claims and parties in the litigation . . . entitled to participate, including the right to exclude themselves from the class.").

Additionally, the proposed dissemination of the Class Notice satisfies all due process requirements. The Settlement provides that Vibram will provide notice to the Class after authorization by the Court. First, the Notice Administrator will send the Class Notice and Claim Form by email to all known email addresses received from Vibram. For any email addresses that do not work, the Notice Administrator will mail, to any street addresses associated therewith, the Postcard Notice. Nonetheless, these are predominantly small dollar retail purchases, and there is no way to reasonably identify the vast majority of individual Class Members. Therefore, the Notice Program consists

of publishing the Summary Settlement Notice in sources specifically targeting Class Members, including sources utilized by Vibram for advertising the FiveFingers footwear. Additionally, Class Notice will be available through the Settlement Website specifically established for this Action.

In sum, the contents and dissemination of the proposed forms of notice constitute the best notice practicable under the circumstances and fully complied with the requirements of Rule 23.

## VI.    THE PROPOSED CLASS SHOULD BE CONDITIONALLY CERTIFIED

When presented with a proposed settlement, a court must determine whether the proposed settlement class satisfies the requirements for class certification under Federal Rule of Civil Procedure 23.  However, where a court is evaluating the certification question in the context of a proposed settlement class, questions regarding the manageability of the case for trial purposes are not considered.  *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial.").  Here, the conditional certification of the Class is appropriate for purposes of settlement because all of the other requirements of Rule 23 have been met, and the Proposed Class Representative, Valerie Bezdek, meets all the requirements as discussed below.

### A.    The Class Satisfies Federal Rule of Civil Procedure 23(a)

Rule 23(a) enumerates four prerequisites for class certification, referred to as: (1) numerosity;  (2) commonality;  (3) typicality;  and (4) adequacy.   In  light  of  the

settlement, the Parties agree that each of these requirements is met.

### 1. Numerosity

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a). The threshold to establish numerosity is low. *See Natchitoches Parish Hosp. Serv. Dist. v. Tyco Int'l, Ltd.*, No. 05-CV-12024, 2008 U.S. Dist. LEXIS 6140, at *31 (D. Mass. Jan. 29, 2008). Here, Vibram has sold millions of pairs of FiveFingers footwear during the Class Period. Moreover, it is difficult or inconvenient to join all members of the proposed Class. *See In re M3 Power Razor*, 270 F.R.D. at 54 (holding numerosity requirement "easily satisfied" where defendant sold over ten million razors and where "[n]o purchaser records were maintained, so there is no possibility of locating, much less joining individually as plaintiffs, all of the potential class members."). Accordingly, the numerosity requirement is satisfied.

### 2. Commonality

"Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury . . . Their claims must depend upon a common contention . . . That common contention, moreover, must be of such a nature that it is capable of class-wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (internal citation omitted).

Commonality "requires only that resolution of the common questions affect all or a substantial number of the class members." *In re Lupron(R) Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 88 (D. Mass. 2005) (citation and quotation omitted); *see also Guckenberger v. Boston Univ.*, 957 F. Supp. 306, 325 (D. Mass. 1997) (noting that Rule

23 does not require that all class members share identical claims, but rather that claims be common, and not in conflict). "The threshold of 'commonality,' is not high." *In re Lupron(R)*, 228 F.R.D. at 88 (citation omitted).

Here, the "common questions" for each Class Member include:

(a) Whether Defendants had adequate support for their representations prior to making them;

(b) Whether the representations discussed above are true, or are misleading, or reasonably likely to deceive;

(c) Whether the alleged conduct constitutes violations of the laws asserted herein;

(d) Whether Defendants engaged in unfair and/or deceptive advertising with respect to FiveFingers footwear;

(e) Whether members of the Class have been injured by Defendants' conduct; and

(f) Whether members of the Class are entitled to relief, and the amount and nature of such relief.

Accordingly, the commonality requirement is satisfied here.

### 3. Typicality

"To establish typicality, the plaintiffs need only demonstrate that 'the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory.'" *In re M3 Power Razor*, 270 F.R.D. at 54-55 (citation omitted); *see also Swack v. Credit Suisse First Boston*, 230 F.R.D. 250, 260 (D. Mass. 2005) ("As with the commonality requirement, the typicality requirement does not mandate that the claims of the class representative be identical to those of the absent class members."). Factual distinctions between the plaintiffs and class members'

claims will not destroy typicality as long as they have the same essential characteristics. *Id.*; *see also In re Bank of Boston Corp. Sec. Litig.*, 762 F. Supp. 1525, 1532 (D. Mass. 1991).

Typicality is met here for settlement purposes as the Proposed Class Representative, Plaintiff Bedzek, and the proposed Class assert the same claims, arising from the same course of conduct – Vibram's allegedly uniform, deceptive marketing campaign. Specifically, Plaintiff Bezdek alleges that all of the labeling and advertising misrepresented the purported health benefits of FiveFingers footwear. It is Bezdek's position that every Class Member was injured when he or she paid money to purchase FiveFingers footwear. Under the claims alleged, the Proposed Class Representative and the Class Members also seek the same relief for the same alleged wrongful conduct, *i.e.*, the misrepresentation regarding the health benefits of FiveFingers footwear. The Proposed Class Representative's claims are the same as those of other Class Members. Therefore, the typicality requirement is met in connection with the proposed Settlement.

### 4. Adequacy of Representation

Rule 23(a)(4) requires that the "proposed class representatives 'fairly and adequately protect the interests of the class.'" *In re M3 Power Razor*, 270 F.R.D. at 55 (quoting Rule 23(a)(4)). This is satisfied by a showing that "'the interests of the representative party will not conflict with the interests of any of the class members, and second, that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation.'" *Id.* (quoting *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985)).

Adequacy has been met in this case. First, the interests of Valerie Bezdek, the Proposed Class Representative, and the Class Members are fully aligned and conflict free: Plaintiff Bedzek and the other Class Members are "seeking redress from what is essentially the same injury," *In re M3 Power Razor*, 270 F.R.D. at 55, and there are no disabling conflicts of interest. Second, the proposed Lead Class Counsel is qualified and experienced in class action litigation. *See* Pollack Decl., Ex. A (Wolf Haldenstein Adler Freeman & Herz LLP Firm Resume). Lead Class Counsel and the other Plaintiffs' Counsel have performed extensive work to date in identifying and investigating potential claims in the Actions, evaluating scientific research and acquiring data through discovery from Vibram and numerous third parties, to develop a detailed understanding of the scientific testing of FiveFingers footwear and barefoot running footwear generally, and its incorporated technology, as well as the scientific research methodologies and bases for claims relating to their purported health benefits. *See* Pollack Decl., ¶¶ 3, 4, 10, 12, 15, 16. The net result of such research and effort was represented in detailed class action complaints, responses to Vibram's motion to dismiss, and in successfully negotiating the proposed Settlement Agreement.

**B.     The Class Should Be Conditionally Certified Under Federal Rule of Civil Procedure 23(b)(3)**

"In addition to satisfying the four elements of Rule 23(a), plaintiffs must demonstrate that at least one subsection of Rule 23(b) applies." *In re M3 Power Razor*, 270 F.R.D. at 55. The Proposed Class Representative seeks certification of a Settlement Class under Rule 23(b)(3). Certification under Rule 23(b)(3) is appropriate where "questions of law or fact common to class members predominate over any questions affecting only individual members, and [where] a class action is superior to other

available methods for fairly and efficiently adjudicating the controversy." *Id.* (quoting Fed. R. Civ. P. 23(b)(3)). "In adding 'predominance' and 'superiority' to the qualification-for-certification list, the Advisory Committee sought to cover cases 'in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *In re Lupron(R)*, 228 F.R.D. at 92 (quoting *Amchem*, 521 U.S. at 615). "The superiority analysis dovetails with the predominance analysis." *Id.*

### 1. Common Questions Predominate

The Rule 23(b)(3) predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623; *see also In re Lupron(R)*, 228 F.R.D. at 91. "Predominance is a test readily met in certain cases alleging consumer . . . fraud . . . ." *Amchem*, 521 U.S. at 625. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." 7A Wright & Miller, *Federal Practice & Procedure* § 1778 (2d ed. 1986).

The predominance requirement is satisfied in connection with the proposed Settlement. As discussed above, the Proposed Class Representative alleges that the Class Members are entitled to the same legal remedies premised on the same alleged wrongdoing. The central issues for every claimant are substantially the same. Plaintiff Bezdek alleges that Vibram's advertising and marketing campaigns, including the packaging and related materials, convey the same advertising message – that the

FiveFingers provide certain health benefits beyond regular running shoes. These issues predominate and are together the core of the litigation because they would be decided in every trial brought by individual Class Members and may be proven or disproven with the same Class-wide evidence. Under these circumstances, predominance under Rule 23(b)(3) is satisfied. *See In re M3 Power Razor*, 270 F.R.D. at 56 (finding predominance in consumer fraud case where "dominant common questions" included whether defendant's "advertising was false or misleading," whether defendant's conducted "violated the statutory and/or common law causes of action delineated in the . . . Complaint," and whether the class members suffered damages as a result of the conduct).

### 2. A Class Action is the Superior Method to Resolve this Controversy

Rule 23(b)(3) sets forth the relevant factors for determining whether a class action is superior to other available methods for the fair and efficient adjudication of the controversy. These factors include: (i) the class members' interest in individually controlling separate actions; (ii) the extent and nature of any litigation concerning the controversy already begun by or against class members; (iii) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (iv) the likely difficulties in managing a class action. *See* Fed. R. Civ. P. 23(b)(3). In a case such as this, where there are numerous class members who each have relatively small claims, "a class action is the only feasible mechanism for resolving the dispute efficiently." *In re M3 Power Razor*, 270 F.R.D. at 56. "[I]n the absence of class certification, there would be nothing for an individual class member to control because a separate action would not be prosecuted." *Id.*

Application of the Rule 23(b)(3) "superiority" factors shows that a class action is the preferred procedure for this Settlement. The damages at issue for each Class Member are not large. It is neither economically feasible, nor judicially efficient, for Class Members to pursue their claims against Vibram on an individual basis. *See Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights") (quotation and citation omitted). Additionally, the fact of settlement eliminates any potential difficulties in managing the trial of this Action as a class action. *Id.* at 620 (when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial"). Under the circumstances presented here, a class action is superior to any other mechanism for adjudicating the case. The requirements of Rule 23(b)(3) are satisfied in connection with the proposed Settlement.

## VII. PLAINTIFF BEZDEK SHOULD BE APPOINTED CLASS REPRESENTATIVE AND WOLF HALDENSTEIN SHOULD BE APPOINTED AS LEAD CLASS COUNSEL

The Parties also request that the Court designate Plaintiff Valerie Bezdek as Class Representative for the Class. For the reasons stated herein, Plaintiff Bezdek will fairly and adequately protect the interests of the Class.

Additionally, Rule 23(g)(1) requires the Court to appoint class counsel to represent the interests of the Class. *See In re Pharm. Indus.*, 588 F.3d at 38 n.1. The Parties respectfully request that Wolf Haldenstein be appointed Lead Class Counsel for the Class. As set forth above, Wolf Haldenstein is experienced and well equipped to vigorously, competently and efficiently represent the proposed Class. *See* Pollack Decl.,

Ex. A (Firm Resume). Accordingly, the Court should appoint Wolf Haldenstein as Lead

Class Counsel for the Class.

## VIII. THE PROPOSED SCHEDULE OF EVENTS

The key Settlement-related dates, such as the time to complete publication of the

Summary Settlement Notice or to opt-out or object, are based on when preliminary

approval of the Settlement is granted and the Fairness Hearing date. The Settlement-

related dates calculated in accordance with the provisions of the Settlement are:

| Time | Action |
|---|---|
| Within 15 business days of execution of Settlement Agreement | Parties' deadline to seek Order Authorizing Notice ("OAN"). |
| No later than 3 business days after entry of the OAN | Vibram provides Notice Administrator with the name, mailing address, and e-mail address of each reasonably identifiable Class Member. |
| No later than 10 business days after entry of the OAN | Vibram's Counsel provides Notice Administrator with list of all counsel for anyone who has litigation against Vibram that involves FiveFingers footwear. Notice Administrator launches Settlement Website. |
| No later than 10 business days after entry of the OAN | Vibram shall deposit the $3,750,000.00 Settlement Fund in escrow to be held by the Escrow Agent |
| Starting no later than 10 business days after entry of the OAN and substantially completed no later than 20 days | Notice Administrator sends Notice and Claim Form by E-Mail to all known E-Mail addresses received from Vibram. |
| No later than 35 days after entry of the OAN | Notice Administrator sends Postcard Notice by 1st Class Mail to each Class Member whose E-mail address returned a message as undeliverable. |
| No later than 50 days after entry of the OAN | Notice Administrator re-mails returned Postcard Notices and for returned mail without forwarding addresses will research better addresses. |
| No later than 75 days after entry of the OAN | Notice Administrator substantially completes publication of Summary Settlement Notice. |
| No later than 14 days before the deadline for filing objections | Parties to file briefs in support of final approval and/or an award of attorneys' fees and expenses and in response to objections. |
| No later than 95 days after entry of the OAN | Deadline for written opt-out requests, objections and notices of appearance at Fairness Hearing. |
| 120 days after date of first | End of Claim Period. |

| | |
|---|---|
| dissemination of the Summary Settlement Notice or Class Notice, whichever is earlier | |
| 10 days after Final Settlement Date ("FSD") | Plaintiffs shall file a stipulation of dismissal with prejudice in the California Case. |
| 10 days after end of claim period or FSD, whichever is later | Settlement Administrator will commence paying claims. |
| 10 days before Fairness Hearing | Notice Administrator provides Parties list of opt-outs. |
| 14 days before Fairness Hearing | Parties to file supplemental briefs in support of final approval and/or an award of attorneys' fees and expenses and in response to objections. |
| At least 155 days and no later than 175 days after entry of the OAN | Fairness Hearing. |
| Within 90 days of FSD | Plaintiffs' deadline to return or certify destruction of all Defendants' production. |
| 120 days after later of FSD or end of claim period | Settlement Administrator concludes paying claims. |

Accordingly, the Parties request that the Court schedule the Fairness Hearing at least 155 days after and no later than 175 days after entry of its Order Authorizing Notice, or as soon thereafter as the Court's schedule permits.

## IX.     CONCLUSION

For the reasons set forth above, the Parties respectfully request the Court:  (1) conditionally certify the Class; (2) appoint Plaintiff Bezdek as Class Representative for the Class; (3) appoint Wolf Haldenstein as Lead Class Counsel for the Class; (4) authorize distribution of the proposed Class Notice Plan; and (5) schedule a final approval hearing for the Settlement

Dated: May 1, 2014

**BERMAN DEVALERIO**

By: ___/s/ Glen DeValerio_____
    GLEN DEVALERIO (BBO #122010)
    NATHANIEL L. ORENSTEIN (BBO
    #664513)
One Liberty Square
Boston, MA 02109
Telephone: 617-542-8300
Facsimile: 617-542-1194
gdevalerio@bermandevalerio.com
norenstein@bermandevalerio.com

*Local Counsel for Plaintiffs*

**WOLF HALDENSTEIN ADLER
FREEMAN  & HERZ LLP**
JANINE L. POLLACK
270 Madison Avenue, 10th Floor
New York, New York 10016
Telephone: 212-545-4600
Facsimile: 212-686-0114
pollack@whafh.com

*Lead Class Counsel*

**BLOOD HURST & O'REARDON, LLP**
TIMOTHY G. BLOOD
THOMAS J. O'REARDON II
701 B Street, Suite 1700
San Diego, CA 92101
Telephone: 619-338-1100
Facsimile: 619-338-1101
tblood@bholaw.com
toreardon@bholaw.com

**SHEPHERD, FINKELMAN, MILLER &
  SHAH, LLP**
JAMES C. SHAH
35 East State Street
Media, Pennsylvania 19063
Telephone: 610-891-9880
Facsimile: 610-891-9883

jshaw@sfmslaw.com

**GARY ROBERTS & ASSOCIATES, P.A.**
MICHAEL K. BECK
324 Datura Street
Suite 223
West Palm Beach, FL 33401
Telephone: 561-686-1800
Facsimile: 561-686-1533
michael@palmbeachtrialattorney.net

**POMERANTZ LLP**
JAYNE A. GOLDSTEIN
1792 Bell Tower Lane, Suite 203
Weston, FL 33326
Telephone: 954-313-3454
Facsimile: 954-313-3455
jagoldstein@pomlaw.com

**MILBERG LLP**
JOSHUA E. KELLER
One Pennsylvania Plaza
49th Floor
New York, NY 10119
Telephone: 212-594-5300
Facsimile: 212-868-1229
jkeller@milberg.com

**THE BREEDEN LAW FIRM**
TONY W. BREEDEN
578 Washington Boulevard, Suite 552
Marina Del Rey, CA  90292
Telephone:  310-984-6861
Facsimile: 310-984-6849
tony@breedenlawfirm.com

**SWEETNAM LLC**
WILLIAM M. SWEETNAM
582 Oakwood Avenue, 200
Lake Forest, IL 60045
Telephone: 847-559-9040
Facsimile: 847-235-6618
wms@sweetnamllc.com
mmr@sweetnamllc.com

**WHATLEY KALLAS, LLC**
PATRICK J. SHEEHAN (BBO # 639320)
60 State Street, Seventh Floor
Boston, Massachusetts 02109
Telephone: 617-573-5118
Fascimile: 617-573-5090
psheehan@whatleykallas.com

*Plaintiffs' Counsel*

<u>**CERTIFICATE OF SERVICE**</u>

I, Glen DeValerio, hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 1, 2014.

/s/ *Glen DeValerio*

Glen DeValerio

744003