## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

VALERIE BEZDEK, Individually and on
Behalf of All Others Similarly Situated,    )
)
Plaintiff,    )
)
v.    )          Case No. 12-10513-DPW
)
VIBRAM USA INC. and VIBRAM    )
FIVEFINGERS LLC,    )
)
Defendants.    )

**NOW COMES** Madeline Monti Cain ("Cain")[1], by and through the undersigned counsel, pursuant to (1) the Notice of Proposed Settlement of Class Action, (2) Rule 23(d) of the Federal Rules of Civil Procedure, and (3) equity, and respectfully submits her Notice of Objection, Intention to Appear and Request to Be Heard at the October 29, 2014 Fairness Hearing.

## I.   PRELIMINARY STATEMENT

> *"[T]here is a recognition that objectors make the system work better overall, and perhaps even make it more difficult for class counsel to overreach in a way that harms defendants. Judges are more cognizant of their responsibilities under Rule 23(e), and they increasingly realize that counsel for objectors can help them carry out their responsibilities."[2]*

Madeline Cain is a Tennessee resident who purchased the relevant Five Fingers footwear, as defined by the proposed Settlement. Accordingly, Miss Cain is a member of the proposed Settlement Class defined in this action.

----

[1]Cain purchased one or more pairs of relevant Five Fingers footwear between the dates of March 21, 2008 and May 27, 2014 in the United States. Cain resides at 7608 Queensbury Drive, Knoxville, Tennessee 37919. Miss Cain's telephone information has been withheld for privacy purposes, but is available upon request by contacting undersigned counsel.

[2]Morrison, Alan B., *Improving the Class Action Settlement Process: Little Things Mean a Lot,* 79 Geo. Wash. L. Rev. 428 (Feb. 2011).

Miss Cain respectfully submits that the proposed Settlement is unfair and unreasonable and should be denied final approval.

First, the proposed Settlement is generally unfair, unreasonable, and inadequate, including, most notably, the inadequacy of the relief. It is a nationwide settlement, involving "thousands" of class members, and purports to place an aggregate value on those settled claims of $3,750,000. The amount is exceptionally problematic, and by itself, poses what Miss Cain submits are unbreakable barriers to the final approval of the settlement, for a variety of reasons.

At the outset, there is simply no way to measure or assess how the settling parties arrived at a settlement price of $3.75 million. More significantly, nor does there appear to be any way for a Settlement Class Member to reasonably calculate what his or her own claim(s) may be worth. [*See* Notice of Class Action, Part III, Section 9, at p. 5] ("it is reasonable to expect that Class members may receive payment in the range of $20.00 to $50.00 per pair, which could increase . . . or decrease depending on various factors . . . ."). Surely, it is unfair to expect Settlement Class Members to weigh-in on the merits of the proposed Settlement without the benefit of basic information.

What's more, aside from the paltry settlement amount for a nationwide class of "thousands," after deducting attorneys' fees, expenses, and incentive awards, the amount available to Settlement Class Members is reduced to $2,735,000. Worse still, the Settlement Fund will be even further reduced when notice and administration costs are deducted pursuant to the terms of the Settlement Agreement. The notice program was extensive and included email notice to 217,661 addresses, postcard notice to 77,411 addresses, CAFA notice to state and federal officials across the country, publication notice in *Runner's World* magazine,

advertising on Internet sites, mobile advertising on mobile and tablet sites, Facebook advertising, an website, and a toll-free telephone line. Needless to say, the costs of such widely disseminated notice was substantial, as will be the costs for administering the settlement, processing claims, distributing proceeds, and related matters, still further reducing the amount of the settlement for Settlement Class Members' benefit.

Second, Class Counsel seek $937,500, or 25% of the gross settlement fund, despite the fact the case never progressed beyond the pleading stage, specifically, the motion to dismiss stage. From the electronic docket, it appears that the case was actively litigated by the parties (as adversaries) for only a year. There were no discovery motions, no other dispositive motions, no class certification briefing, no summary judgment briefing, and no interlocutory appeals. And although Class Counsel reference discovery in their settlement approval papers, the electronic docket is devoid of any record of such discovery and it appears that no depositions were taken in the case, even of the parties. Consequently, considering the surprising brevity of the litigation and the (small) scope and (lack of) breadth of the work completed, 25% of the Settlement Fun is simply an exorbitant fee.

In addition, the Settlement Agreement also has a "clear sailing" provision, which "is one where the party paying the fee agrees not to contest the amount to be awarded by the fee-setting court so long as the award falls beneath a negotiated ceiling." *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 520 n.1 (1st Cir. 1991). When confronted with a "clear-sailing" provision, courts have a heightened duty to peer into the provision and scrutinize closely the relationship between attorneys' fees and benefit to the Class, being careful to avoid awarding "unreasonably high" fees simply because they are uncontested. *Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir. 2003). By their nature, such provisions deprive

the court of the advantages of the adversary process in resolving fee determinations, and are therefore disfavored. *Weinberger*, 925 F.2d at 525.

Third, the injunctive relief to be afforded by the proposed Settlement – *i.e.*, Defendants vow "to take commercially reasonable efforts to discontinue certain aspects of its advertising and marketing campaign" [Doc. 77, at Page 18, Settlement Agreement, Section III. D.] – is illusory. Nothing before the Court even hints at suggesting how this so-called injunctive relief might actually be meaningful to Settlement Class Members.

Fourth, the objection process is also unduly burdensome to Settlement Class Members. To object, Settlement Class Members must possess and supply "verification" or proof of purchase, yet no such requirement is imposed on Settlement Class Members who file a claim for a single purchase. This disparity in the treatment of Settlement Class Members evidences an effort by Class Counsel to make it more difficult for Settlement Class Members to object to the proposed Settlement than to submit a claim. It is, after all, likely that many purchasers of relevant Five Finger products would not have retained receipts of any type for purchases made six or even two years ago.

The notice of the proposed Settlement was evidently drawn to intimidate and overburden Settlement Class members from objecting to the proposed Settlement or from submitting multiple claims. The notice causes potential objectors to leap unnecessarily-erected hurdles to tell the Court what they think about the proposed Settlement. And while fewer, if any other, Settlement Class member(s) will voice their opinion(s) of the proposed Settlement, this result would appear contrary to the spirit of Rule 23's requirement for reasonable notice and presents due process concerns erecting obstacles for Settlement Class members to be heard.

<u>Fifth</u>, the named Plaintiffs did not substantially participate in the litigation and they are thus not entitled to incentive awards of $2500 each.

In a nutshell, several important aspects of the proposed Settlement appear to be premised upon a fictive world. However, "[c]ases are better decided on reality than on fiction." *United States v. Priester*, 646 F.3d 950, 953 (6th Cir. 2011). Unfortunately, the stark reality of this particular settlement is that it benefits Class Counsel vastly more than it does the consumers who comprise the Settlement Class. The conclusion is therefore unavoidable: this settlement gives preferential treatment to Class Counsel while only perfunctory relief, if any, is given to unnamed Settlement Class Members.

For all of this, the settlement in this case is not fair within the meaning of Rule 23, should be rejected, and the application of attorneys' fees should be denied.

## II.   STANDARD OF REVIEW

### A.   Standard for Approving Class Action Settlements in General

> *"Because class actions are rife with potential conflicts of interests between class counsel and class members, district judges are expected to give careful scrutiny to the terms of the proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole."*[3]

A district court may approve a settlement only if it is "fair, reasonable, and adequate." Fed. R. Civ. p. 23(e)(1)(c); *City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996), "or (in shorthand) 'reasonable,'" *Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Benefits Fund*, 582 F.3d 30, 44

---

[3] *Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 785 (7th Cir. 2004) (citations omitted) (collecting cases).

(1st Cir. 2009). If the parties negotiated at arm's length and conducted sufficient discovery, the district court must presume the settlement is reasonable. *City P'ship*, 100 F.3d at 1043.

Absent class members have little at stake and thus insufficient incentive to closely monitor class counsel and his strategic choices. *See, Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust Co.*, 834 F.2d 677, 681 (7th Cir. 1987). Accordingly, the role of the District Courts in evaluating proposed settlements is akin "to the high duty of care that the law requires of fiduciaries." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 280 (7th Cir. 2002). District Courts must "exercise the highest degree of vigilance in scrutinizing proposed settlements of class actions." *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (quoting *Reynolds*, at 279).

### B.    The Settlement in This Case Demands Stricter Scrutiny

When, as here, judicial approval of a proposed settlement is sought prior to class certification, the Court must determine whether a class can be certified pursuant to Fed. R. Civ. P. 23(a) and 23(b). "A class settlement cannot technically be approved unless, by definition, a class is upheld." 4 *Newberg on Class Actions* § 11.27 (4th ed. 2006). The Court must conduct a "rigorous analysis" and "be persuaded that the prerequisites of Rule 23(a) have been met." *Gen. Tel. Co. v. Falcon*, 457 U.S. 147 (1982).[4]

When, as in this case, the Court is asked to certify a class and approve its settlement in a single proceeding, the requirements of Rule 23(a), which are intended to protect the rights of absent class members, "demand undiluted, even heightened, attention." *Literary Works in Elec. Databases Copyright Litig. v.*

---

[4]The class action requirements embodied in Rule 23(a) are numerosity, commonality, typicality, and adequacy of representation.

*Thomson Corp.*, 654 F.3d 242, 259 (2d Cir. 2011) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). Most importantly, the Court's consideration of a proposed settlement is binary: it must either approve or reject the settlement as proposed. If the Court concludes that there a proposed settlement is deficient, it must reject the entire settlement outright, and may not "delete, modify, or substitute certain provisions." *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 176 (W.D. N.Y. 2011).

Significantly, courts have also demonstrated an appropriately higher level of scrutiny of certain class action settlements. In particular, Courts should be leery of settlements using lower compensation to certain class members, *see In Re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig.*, 55 F. 3d 768, 808 (3d Cir. 1995) ("One sign that a settlement may not be fair is that some segments of the class are treated differently from others"). Here, for example, as Miss Cain demonstrates, some Settlement Class Members who purchased one or more pairs of relevant Five Fingers footwear – but who did not retain receipts for the purchases – may wind up not receiving any relief at all.

## C.   The Importance of Objectors in Class Action Settlements

Class actions are "unique creatures with enormous potential for good and evil." *Johnson v. General Motors Corp.*, 598 F.2d 432, 439 (5th Cir. 1979) (Fay, J., specially concurring). In virtually every class action seeking money damages, the person with the most at stake financially is the attorney representing the class. Commentator's recognize that the attorney's interest in securing the highest fee and the class members' interest in attaining the greatest recovery often diverge. John C. Coffee, Jr., *Understanding the Plaintiff's Attorney: The Implications of Economic Theory for Private Enforcement of Law Through Class and Derivative Actions*, 86 Colum. L. Rev. 669, 686-91 (1986). The class members, with so little

at stake in the first place, have insufficient incentive to closely monitor class counsel and her strategic choices. *See, Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust Co.*, 834 F.2d 677, 681 (7th Cir. 1987).

Even if the class has a very strong claim on the merits and class counsel ordinarily would prefer to go to trial rather than settle at a discount, the attorney must acknowledge that she cannot control the pace at which the court will entertain her action. The existence of other simultaneous suits on behalf of the same class before different courts makes the race to judgment very risky. Thus, class counsel most likely will decide that it is in his or her own best interest to settle the action and guarantee compensation for his or her work.

Likewise, the defendant is aware that class counsel is under substantial pressure to settle. Indeed, legal scholars have noted that the pressure on class counsel to collude with the defendant in this manner may be extreme. *See, e.g.,* Tim Oliver Brandi, *The Strike Suit: A Common Problem of the Derivative Suit and the Shareholder Class Action,* 98 Dick. L. Rev. 355, 391 (1994). Even if class counsel is able to resist this pressure, the defendant may simply go knocking on the door of another lawyer representing the class to see if she will succumb.

Here, the parties predictably present the proposed Settlement to both the Settlement Class and the Court in the most favorable light, downplaying any possible weaknesses or problems with the deal. It is also generally the duty of the court as well as counsel for the parties present in the action to allow objectors to testify and state their objections on the record. *Waters v. City of Chicago,* 420 N.E.2d 599 (Ill. App. 1981). After all, it has been said that objectors are the *only* parties with an incentive to uncover flaws in the proposed settlement. Wasserman, R., *Dueling Class Actions,* 80 B. U. L. Rev. 461, 483 (April 2000).

In the absence of an adversarial proceeding, however, this Court is poorly situated to uncover any potential conflicts between Class Counsel and the Class, or among various Class members, or to otherwise assess the fairness of the proposed Settlement. Hence, the significance of hearing the contentions of objectors.[5] But when the terms of the Settlement impose unreasonable requirements on and erect unnecessary barriers to Settlement Class Members who would like to weigh in on the reasonableness of the proposed settlement, the Court is denied the benefit of contrary views, especially of those views constructively offered to improve the settlement.

## III.   STATEMENT OF OBJECTIONS

### A.   The Settlement Is Unfair, Unreasonable, and Inadequate

The proposed Settlement provides inadequate relief. Significantly, by reading the notice, Settlement Class Members cannot reasonably calculate what their claims may be worth. Expecting Settlement Class Members to reasonably assess and weigh-in on the merits of the proposed Settlement absent the benefit of such bare and basic pieces of information is impractical, to say the least. Here, the proposed Settlement fails to reasonably apprize Settlement Class Members of the monetary amount of their claims. Settlement Class Members may receive $20 a pair, $94 a pair, or something in between. Accordingly, the notice failed to provide sufficient information to Settlement Class Members in order for them to make a

---

[5]There are three main kinds of objectors to class settlements – (1) those who genuinely want to improve or scuttle an inadequate settlement, (2) those attorneys in competing class actions who simply want a piece of the fee pie, without any really significant improvements in the settlement for class members, and (3) those competing class counsel who have filed class actions elsewhere but who have been 'low-balled' out of their own cases by defendant picking the group of class counsel who will settle on terms most favorable to defendants. . . ."   19 Class Action Rep. 207 (1996).

reasonable determination about whether to make a claim, to exclude themselves, or to object to the proposed Settlement.

As pointed out in *Murray v. GMAC Mortgage Corp.*, 434 F. 3d 948, 952 (7th Cir. 2006), when a class case settles for such an inconsequential amount as this – and after all the deductions for fees, expenses, incentive awards, notice costs, and administration costs, the amount certainly inconsequential – it is either a frivolous case or Class Counsel settled the case far too cheaply.  There is nothing to suggest that this case was "frivolous."  Moreover, it is a nationwide settlement involving "thousands" of consumers.  Thus, it appears the case was settled too cheaply.

Aside from the paltry settlement amount of $3,750,000 for a national settlement, deducting $937,500 for attorneys' fees, $70,000 in expenses, and $7,500 in incentive awards reduces the actual amount $2,735,000.

And deduct from this the substantial (but apparently unknown) costs of notice and administration, and the amount available to Settlement Class Members is exceedingly low. Nowhere are Settlement Class Members apprized of the costs of notice and administration, an amount which, along with claims, incentive awards, and attorneys' fees and expenses, under Section III.A.2. of the Settlement Agreement, "shall be paid exclusively from the Settlement Fund." [Doc. 77, at Page 15].  Considering the scope and manner of notice, which is well-described by Class Counsel in their exhibits supporting final approval of the proposed settlement and in the Settlement Agreement itself [Doc. 77, at Pages 21-24], these costs should be substantial.

## B.    Class Counsel Seek Exorbitant Fees

> *"In the vast majority of cases class counsel appears before the court to request a big percentage of the settlement fund, cooperative settling defendants offer no opposition, and class members rarely oppose the request.   The court is abandoned by the adversary system and left to the plaintiff's unilateral application and the judge's own good conscience.   [citation omitted]    The situation is a fundamental conflict of interest and is inherently collusive . . . . The lack of opposition to a proposed fee award give a court the sometimes false impression of reasonableness, and the court might simply approve a request for fees without adequate inquiry or comment."*[6]

Class Counsel seek exorbitant attorneys' fees – 25% of the gross Settlement Fund, plus interest and expenses, and another $7,500 is earmarked for incentive awards to representative plaintiffs. The parties' agreement on a fee award is not the end of the inquiry, for "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable." *In re Bluetooth Headset Product Liability Lit.*, 654 F.3d 935, 941 (9th Cir. 2011). After all, the district court's discretion is not unlimited, and "[a] conclusory statement that a fee is reasonable in light of the success obtained is generally insufficient." *Norman v. Housing Authority of Montgomery*, 836 F.2d 1292, 1304 (11th Cir. 1988).

A lawyer who recovers a common fund for a class she represents is entitled to reasonable attorneys' fees and reimbursement of expenses prior to the distribution of the balance to the class. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Courts have wide discretion when awarding attorneys' fees. *In re Thirteen Appeals Arising Out of San Juan*, 56 F.3d 295, 307 (1st Cir. 1995). In addition to ensuring that Class Counsel is fairly compensated for their efforts, the district court is obligated to function as "a quasi-fiduciary to safeguard the corpus

---

[6] *In Re Quantum Health Resources, Inc. Securities Litigation*, 962 F. Supp. 1254, 1255 (C.D. Cal. 1997); *see also Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 515 (6th Cir. 1993).

of the fund for the benefit of the plaintiff class." *In re Fidelity/Micron Sec. Litig. v. Fidelity Magellan Fund*, 167 F.3d 735, 736 (1st Cir. 1990).

Courts in this circuit generally award attorneys' fees in the range of 20-30%, with 25% as "the benchmark," *Conley v. Sears, Roebuck & Co.*, 222 B.R. 181, 187 (D. Mass 1998) (citing *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)); *see also New Eng. Carpenters Health Benefits Fund v. 1st Databank, Inc.*, 2009 U.S. Dist. LEXIS 68419, at *9 (D. Mass. Aug. 3, 2009) (20%); *In re Am. Dental Partners, Inc. Sec. Litig.*, 2010 U.S. Dist. LEXIS 35074, at *2 (D. Mass. Apr. 9, 2010) (22.5%); *In re Fleet/Norstar Sec. Litig.*, 935 F. Supp. 99, 110 (D.R.I. 1996) (20%); *In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 2011 U.S. Dist. LEXIS 113980, at *48 (D. P.R. Sept. 13, 2011) (23%); Theodore Eisenberg & Geoffrey P. Miller, *Attorneys' Fees & Expenses in Class Action Settlements: 1993-2008*, J. of Empirical Legal Stud. 248 (2010)(Table 4)(finding that the median and mean attorneys' fees awarded in the First Circuit are 20%).

In addition to attorneys' fees, lawyers who recover a common fund for a class are entitled to reimbursement of out-of-pocket expenses incurred during litigation. *In re Fidelity/Micron Sec. Litig.*, 167 F.3d at 737. Again, reasonableness is the goal, and it is within the court's discretion to reject or scale back any expenses deemed superfluous or unreasonable. *Id.* When a court uses the percentage of fund method to calculate attorneys' fees, it may set the percentage award at a level which not only accounts for fees but covers reimbursable expenses as well. *Id.*

Class Counsel seeks 25% of the common fund. The Court is to determine the appropriate percentage based on a standard of reasonableness under the circumstances. *In re Quantum Health Resources, Inc.*, 962 F. Supp. at 1257 (citing

*Central Railroad & Banking Co. v. Pettus*, 113 U.S. 116, 28 L. Ed. 915, 5 S. Ct. 387 (1885)).[7]

Here, Class Counsel appear to think that the Rule 23(h) hearing is simply for show, disregarding the fact that in "common fund cases the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002). While Class Counsel is on the same side as class members when it comes to establishing the size of the settlement fund, making discovery on those issues redundant, Class Counsel's position becomes adverse to the Settlement Class Members when it comes to the issue of how much of the $3.75 million will be awarded as fees.

---

[7]However, awarding attorney's fees out of the common fund logically raises concerns that class members no longer have someone representing their interests. The Sixth Circuit has accurately characterized these fears:

> In assessing the reasonableness of requests for fees in class actions resulting in the creation of a common fund, a court must consider factors that are not present in statutory fee shifting cases. The interest of class counsel in obtaining fees is adverse to the interest of the class in obtaining recovery because the fees come out of the common fund set up for the benefit of the class. In addition, there is often no one to argue for the interests of the class (that their recovery should not be unfairly reduced), since it is to be expected that class members with small individual stakes in the outcome will not file objections, and the defendant who contributed to the fund will usually have scant interest in how the fund is divided between the plaintiffs and class counsel.

*Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993).As a result, the Court approving the settlement must take on the fiduciary mantle discarded by class counsel and act as a fiduciary for all parties, but particularly for absent Class Members. *Court Awarded Attorney Fees, Report of the Third Circuit Task Force*, 108 F.R.D.237, 255 (1985).

Significantly, this litigation did not get much past the pleading stage. Predictably, the most litigated event was Defendants' motion to dismiss. The case was filed on March 21, 2012 [Doc. 1] and a review of the electronic docket shows that adversarial litigation essentially ended about a year later, on March 29, 2013 [Doc. 46].[8] And while Class Counsel state in the Settlement Agreement that they reviewed "over 52,000 pages of documents" turned over by the Defendants (purportedly prior to agreeing to the settlement), there is nothing in the record which demonstrates that any formal discovery occurred in this case. The Plaintiffs were not deposed. The Defendants were not deposed. Even if the Defendants did turn over these documents, and even if Class Counsel read them, the record in this case is, to say the least, very lean. No discovery motion practice occurred. And while Class Counsel state that they also noticed the deposition of the Defendants' corporate representative and subpoenaed third parties, there is no indication that any such depositions were actually taken. [Doc. 72, at Page 14]. Nor did Plaintiffs move to certify a class prior to reaching a settlement (they say they were "ready to file" the motion. [Doc. 83, at Page 38]. Needless to say, there was no summary judgment stage to these proceedings.

Class Counsel is only entitled to an award of attorneys' fees that is reasonable in relation to the result obtained. Therefore, considering the foregoing circumstances of the litigation, the proposed 25% fee is exorbitant in view of the

---

[8]One docket entry indicates that discovery would commence on June 24, 2013. [Doc. 54]. Otherwise, the scheduling order submitted to the Court on June 14, 2013 indicates that the next deadline was December 27, 2013, when the Plaintiffs were supposed to have identified their class certification experts. [Doc. 54]. However, on December 20, 2013, the parties sought a stay for the purpose of settlement. [Doc. 58]. Other than a status conference on July 2, 2013 [Doc. 57], no further action was taken until a motion to approve the settlement was filed on April 30, 2014. [Doc. 68].

limited result achieved by Class Counsel for the Settlement Class and should be denied and reduced well below this Circuit's 25% benchmark.

Given the lack of adversarial discovery, the lack of class certification proceedings, the limited number of hearings and substantive motions briefed, the fact no summary judgment motions were filed by any party, and that no trial occurred, Miss Cain would respectfully suggest that $937,500 is unreasonable and quite excessive.

Here, Class Counsel's fee for limited work evokes the observation of the California Court of Appeals nearly forty (40) years ago:

> [t]hat the use of the device of a class action is subject to abuse in a number of ways is a well known fact. . . .[I]t is the responsibility of the court to guard the integrity of the class action device as well as its own integrity. . . . The present arrangement leaves the unfortunate impression that defendants are buying themselves out of a lawsuit by direct compensation of plaintiffs' counsel."

*Anthony v. Superior Court*, 59 Cal. App.3d 760, 130 Cal. Rptr. 758, 766 (Cal. App. 1976).

"Courts have consistently held that the most important factor within this analysis is what results were obtained for the class." *Lane v. Page,* 862 F. Supp. 2d 1182, 1254 (D. N.M. 2012). To be sure, this is not a case that went "south" for Class Counsel. Indeed, they defeated the only substantive motion brought by Defendants in this case. Why Class Counsel failed to aggressively pursue party discovery and depose Defendants' representatives or pursue class certification before beginning to discuss the prospect of settlement is both inexplicable and problematic, raising serious concerns about the propriety of the negotiations that occurred in this case.

In light of the limited result achieved by Class Counsel for the Settlement Class, the attorneys' fee request should be denied, and reduced well below this Circuit's 25% benchmark, as Class Counsel is only entitled to an award of attorneys' fees that is reasonable in relation to the result obtained. *Hensley v. Eckerhart*, 461 U.S. 424,436,440 (1983) ["Thus, where the plaintiff has achieved 'only limited success,' counting all hours expended on the litigation – even those reasonably spent – may produce an * excessive amount,' and the Supreme Court has instructed district courts to instead 'award only that amount of fees that is reasonable in relation to the results obtained.'"].

Finally, the Settlement Agreement contains a "clear sailing" provision [Doc. 77, VIII. A., at Page 30], "where the party paying the fee agrees not to contest the amount to be awarded by the fee-setting court so long as the award falls beneath a negotiated ceiling." *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 520 n.1 (1st Cir. 1991). The clauses "are sometimes included in class action settlements so that defendants have a more definite idea of their total exposure." *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1293 n.3 (11th Cir. 1999), *cert. denied*, 530 U.S. 1223, 120 S. Ct. 2237, 147 L. Ed. 2d 265 (2000).

To be sure, "the very existence of a clear sailing provision increases the likelihood that class counsel will have bargained away something of value to the class." *Weinberger*, 925 F.2d at 525. Therefore, when confronted with such a provision, the Court has a heightened duty to peer into the provision and scrutinize closely the relationship between attorneys' fees and benefit to the Class, being careful to avoid awarding "unreasonably high" fees simply because they are uncontested. *Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir. 2003).

Although clear sailing provisions are not prohibited, they "by [their] nature deprive[ ] the court of the advantages of the adversary process" in resolving fee determinations and are therefore disfavored. *Weinberger*, 925 F.2d at 525.

For the foregoing reasons, the proposed Settlement should be rejected and the application for attorneys' fees should be denied.

### C.    The Injunctive Relief to Be Afforded by the Proposed Settlement Is Meaningless and Illusory.

The injunctive relief contained in the Settlement Agreement was no relief at all. Rather, the injunctive relief provided under the Settlement is illusory because the advertising Defendants agree to refrain from taking action that has already been debunked, and is therefore of no real value to Settlement Class Members.

### D.    The Requirements for Objecting to the Settlement Are Unduly Burdensome

The Settlement Agreement requires any Settlement Class Member who wants to object to submit proofs of purchase with the objection. This requirement is unexplainedly not imposed on Settlement Class Members who merely seek to submit claims for up to two product-purchases. As a result, this heightened requirement unfairly burdens any Settlement Class Member who finds fault in the terms of the Settlement.

The class period extends from March 21, 2008 to May 27, 2014.  Not only is it likely that some Settlement Class Members no longer possess relevant Five Fingers footwear, but it is also very likely that Settlement Class Members who purchased relevant Five Fingers products in 2008 or even 2013 would not have retained receipts or even credit card statements for such purchases.

Moreover, unlike other class action settlements where a proof of purchase was required, there is no provision in the proposed Settlement which might permit Settlement Class Members to submit a claim absent a proof of purchase and

-17-

receive a smaller amount than if proof of purchase had been supplied.[9] *See e.g.,* *Larsen v. Trader Joe's Co.,* 2014 U.S. Dist. LEXIS 95538, at *2 (N.D. Cal. July 11, 2014) (approving settlement of  $3,375,000 which provided that each class member with proof of purchase would receive a full reimbursement for each product purchased during the class period and each class member without a proof of purchase would be reimbursed for the value of up to 10 products); *Keller v. Gaspari Nutrition, Inc.,* Civ. No. 11-6158 (C.D. Cal. Mar. 20, 2012) (providing class members who demonstrate proof of purchase $20, and those without proof of purchase $10, or a free bottle of Viridex XT); *Kelly v. Phiten USA, Inc.,* 277 F.R.D. 564, 567-68 (S.D. Iowa 2011) (approving settlement that awarded up to 300% of purchase price to class members with proof of purchase and 100% of retail price to those without).

### E.    The Incentive Awards for Named Plaintiffs Should Be Denied

Class Counsel seek an award of $2500 a piece for three named Plaintiffs. However, there is nothing in the record to suggest that the three named Plaintiffs participated in this litigation to an extent more than allowing their names to be placed on the complaints. They did not participate in responding to written discovery. They were not, as far as the record indicates, deposed. They did not submit affidavits or declarations in support of class certification. In short, they did nothing for which they should be justly entitled to an incentive award of $2500 each.

---

[9]For instance, Settlement Class Members who lack proof of purchase could submit proof of ownership, *i.e.,* a photograph, and a verified claim form.

## IV.   NOTICE OF APPEARANCE, INTENTION TO APPEAR, AND REQUEST TO BE HEARD

**NOTICE** is hereby given that the undersigned counsel is appearing on behalf of Miss Cain in the above-styled action.  Counsel for Miss Cain requests that he be allowed to be heard via telephone at the Fairness Hearing currently scheduled for October 29, 2014. If the Court will not permit participation by telephone, Counsel will make every effort to appear in-person.

## V.   ADOPTION OF OTHER OBJECTIONS

Miss Cain hereby adopts and incorporates by reference herein all other proper and timely objections submitted by other objectors in this matter.

## VI.   CONCLUSION

Miss Cain respectfully requests that this Court:

1.   Reject the proposed settlement; and

2.   Award such other and further relief as is just and necessary in this matter.

Respectfully submitted, this 15th day of August, 2014.


/s/ Christopher T. Cain
Christopher T. Cain, BPR #19997
Scott & Cain
550 Main Street, Suite 601
Bank of America Center
Knoxville, TN 37902
Tel: (865) 525-2150

*Counsel for Objector, Madeline Cain*

DATE: August 10, 2014.

_Madelin M Cai_

Madeline Monti Cain
7608 Queensbury Drive
Knoxville, TN 37919
Telephone: (865) 208-9147

**CERTIFICATE OF SERVICE**

I do hereby certify that on August 15, 2014, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

I further certify that on August 15, 2014, pursuant to the terms of the Court's Notice of Class Action, Proposed Settlement, and Fairness Hearing, I sent a copy of the foregoing document via email, to Janine Pollack, Wolf Haldenstein Adler Freeman & Herz LLP at pollack@whafh.com, and Christopher Morrison, Jones Day, at cmorrison@jonesday.com.

This 15th day of August, 2014.

/s/ Christopher T. Cain
Christopher T. Cain