## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| VALERIE BEZDEK, Individually and on Behalf of All Others Similarly Situated, ) ) | Case No. 12-10513-DPW |
| Plaintiff, ) ) | |
| v. ) ) | |
| VIBRAM USA INC. and VIBRAM FIVEFINGERS LLC, ) ) ) | |
| Defendants. ) ) | |
| BRIAN DE FALCO, Individually and on Behalf of All Others Similarly Situated, ) ) | Case No. 13-10764-DPW |
| Plaintiff, ) ) | |
| v. ) ) | |
| VIBRAM USA INC. and VIBRAM FIVEFINGERS LLC, ) ) ) | |
| Defendants. ) ) | |

## PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................. ii

I.  INTRODUCTION ............................................................................................. 1

II.  THE OBJECTIONS SHOULD BE STRICKEN FOR FAILURE
     TO ABIDE BY THE COURT'S ORDER AUTHORIZING NOTICE ............................. 3

III.  NARKIN AND ATTORNEY CAIN ARE SERIAL OBJECTORS
      AND FERENCE'S MYSTERY ATTORNEY PROBABLY IS ....................................... 4

     A.  Narkin ............................................................................................. 5

     B.  Attorney Cain ...................................................................................... 7

     C.  Ference's Mystery Attorney ...................................................................... 7

IV.  THE OBJECTIONS SHOULD BE OVERRULED .......................................................... 7

     A.  The Requirements for Objectors are Reasonable ...................................... 8

     B.  The Settlement Provides Sufficient Benefits to the Class ....................... 9

     C.  The *Cy Pres* Provision of the Settlement is Appropriate ...................... 11

     D.  The Settlement's Non-Cash Relief is not "Ineffective" ......................... 14

     E.  The Class Notice Was Adequate .............................................................. 16

     F.  The Settlement Release is Not Overbroad .............................................. 18

     G.  The Proposed Service Awards for the Class Representatives
         Are Appropriate .................................................................................. 18

     H.  The Settlement Was Reached Following Arm's-Length
         Negotiations Without Collusion ............................................................ 19

     I.  The Requested Award of Attorneys' Fees and Expenses
         is Reasonable, Well-Supported and Should Be Approved ....................... 21

V.  CONCLUSION ...................................................................................................... 24

i

**CASES**            **Page(s)**

*Arnold v. FitFlop USA, LLC,*
   No. 11-CV-0973 W (KSC), 2014 U.S. Dist. LEXIS 58800 (S.D. Cal. Apr. 28, 2014) ................ 6

*Arnold v. FitFlop USA*, LLC,
   No. 11-CV-0973 W (KSC), 2014 U.S. Dist. LEXIS 91161 (S.D. Cal. July 3, 2014) ................. 6

*Ayvazian v. Moore Law Group,*
   No. 12-01506, 2012 U.S. Dist. LEXIS 92429 (C.D. Cal. July 3, 2012) ..................................... 1

*Barnes v. FleetBoston Financial Corp.*,
   No. 01-10395-NG, 2006 U.S. Dist. LEXIS 71072 (D. Mass. Aug. 22, 2006) ............................ 5

*Bezdek v. Vibram USA Inc.*,
   No. 12-10513-DPW, 2013 U.S. Dist. LEXIS 22939 (D. Mass. Feb. 19, 2013) ........................ 11

*In re Blech Securities Litigation*,
   Nos. 94 CIV. 7696 (RWS), 95 CIV. 6422 (RWS),
   2000 U.S. Dist. LEXIS 6920 (S.D.N.Y. May 19, 2000) .......................................................... 22

*Bower v. MetLife, Inc.*,
   No. 1:09-cv-351, 2012 U.S. Dist. LEXIS 149117 (S.D. Ohio Oct. 17, 2012) ......................... 12

*Duhaime v. John Hancock Mutual Life Insurance Co.*,
   183 F.3d 1 (1st Cir. 1999) ................................................................................................. 5, 8

*Ellis v. Maine*,
   448 F.2d 1325 (1st Cir. 1971) ............................................................................................... 1

*In re Initial Public Offering Securities Litigation*,
   No. 21 MC 92, 2011 U.S. Dist. LEXIS 103698 (S.D.N.Y. Aug. 25, 2011) .............................. 8

*Larsen v. Trader Joe's Co.*,
   No. 11-cv-05188-WHO, 2014 U.S. Dist. LEXIS 95538 (N.D. Cal. July 11, 2014) .............. 5, 23

*Latorraca v. Centennial Technologies, Inc.*,
   834 F. Supp. 2d 25 (D. Mass. 2011) .................................................................................... 21

*In re Lupron® Marketing & Sales Practices Litigation*,
   228 F.R.D. 75 (D. Mass. 2005) ...................................................................................... 16, 18

*In re Lupron Marketing & Sales Practices Litigation*,
  677 F.3d 21 (1st Cir. 2012) ...........................................................................11, 13, 14

*In Re: Netflix Privacy Litigation*,
  No.: 5:11-CV-00379 EJD, 2013 U.S. Dist. LEXIS 37286 (N.D. Cal. Mar. 18, 2013).......2, 7, 10

*In re Pharmaceutical Industry Average Wholesale Price Litigation*,
  588 F.3d 24 (1st Cir. 2009) ........................................................................................14

*In re Initial Public Offering Securities Litigation*,
  671 F. Supp. 2d 467 (S.D.N.Y. 2009)........................................................................22

*In re Relafen Antitrust Litigation*,
  231 F.R.D. 52 (D. Mass. 2005) ...............................................................................9, 18

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) .....................................................................................23

*In re Tomaselli*,
  No. 13-15744-JNF, 2014 Bankr. LEXIS 3794 (Bankr. D. Mass. Jan. 13, 2014) ......................20

*Trombley v. Bank of America Corp.*,
  No. 08-cv-456, 2011 U.S. Dist. LEXIS 95140 (D.R.I. Aug. 24, 2011) ...................................8

*In re UnitedHealth Group Inc. PSLRA Litigation*,
  643 F. Supp. 2d 1107 (D. Minn. 2009) .......................................................................1

*Weinberger v. Great Northern Nekoosa Corp.*,
  925 F.2d 518 (1st Cir. 1991) ...............................................................................22, 23

*Wexler v. United Air Lines, Inc.*,
  496 F. Supp. 2d 150 (D.D.C. 2007) ...........................................................................15

*Zeisel v. Diamond Foods, Inc.*,
  No. C 10-01192 JSW, 2012 U.S. Dist. LEXIS 148893 (N.D. Cal. Oct. 16, 2012) ...................13

## STATUTES AND RULES

Federal Rules of Civil Procedure
  23(c)(2) ...................................................................................................................16
  23(c)(2)(B) ...............................................................................................................16

**OTHER SOURCES**

Alba Conte & Herbert B. Newberg, *Newberg on Class Action* (4th ed. 2002) ...................5, 14, 22

Barbara J. Rothstein & Thomas E. Willging, Federal Judicial Center, *Managing Class Action Litigation: A Pocket Guide for Judges* (2005)..............................................................................5

J. C. Alexander, Rethinking Damages in Securities Class Actions (1996)
  48 Stan. L. Rev. 1487, 1534........................................................................................................22

Manual for Complex Litigation (Fourth),
  § 21.643....................................................................................................................................2

Plaintiffs Valerie Bezdek (the "Class Representative"), Brian De Falco and Ali Safavi (collectively, including the Class Representative, "Plaintiffs"), respectfully submit this supplemental memorandum in support of their Motion for Final Approval of Class Action Settlement ("Final Approval Motion," ECF No. 80).[1]

## I.    INTRODUCTION

As set forth in Plaintiffs' Final Approval Motion, the Settlement readily meets the "fair, reasonable and adequate" standard and has been well received by the Class. Since Plaintiffs filed their Final Approval Motion, they received correspondence from three purported Class Members identifying possible objections (the "Objectors").

These objections, however, do not appear to be filed by well-intentioned members of the Class, but rather by self-interested "professional," "repeat" or "serial" objectors.[2] Such objectors – characterized as "remoras" by one federal judge[3] – pose a significant obstacle to the approval

---

[1] All capitalized terms have the same meaning as set forth in the Second Amended Settlement Agreement (the "Settlement Agreement" or "Settlement"), ECF No. 77.

[2] Plaintiffs' Counsel contacted Objector Justin Ference's ("Ference") attorney, David Aisenberg, who stated that he was simply fronting for another attorney who was really in charge regarding the objection. Aisenberg would not reveal the name of the attorney for whom he is fronting. *See* Declaration of Janine L. Pollack in Support of Plaintiffs' Supplemental Memorandum in Support of Motion for Final Approval of Class Action Settlement ("Supp. Pollack Decl.," attached as Exhibit 1), ¶ 2. There is no appropriate reason for "fronting" other than if the secret objector's counsel has been criticized by courts as a serial or sham objector in other class actions. Moreover, "ghost writers" for objections like Ference's have been strongly criticized by courts. *See, e.g., Ayvazian v. Moore Law Group*, No. 12-01506, 2012 U.S. Dist. LEXIS 92429, at *2 n.2 (C.D. Cal. July 3, 2012) (ghostwriting violates the rules of professional conduct); *see also Ellis v. Maine*, 448 F.2d 1325, 1328 (1st Cir. 1971) ("If a brief is prepared in any substantial part by a member of the bar, it must be signed by him."). Considering the allegations asserted by Ference as to a purported lack of transparency by Plaintiffs' Counsel, his objections are not well taken.

[3] In *In re UnitedHealth Group Inc. PSLRA Litig.*, 643 F. Supp. 2d 1107 (D. Minn. 2009), Judge Rosenbaum characterized professional objectors as "remoras" ("[t]he remoras are loose again"), emphatically denied a group of professional objectors' motion for attorneys' fees in a class action (continued…)

and implementation of class action settlements.  As the Manual for Complex Litigation (Fourth), § 21.643, at 326, explains:

> Some objections . . . are made for improper purposes and benefit only the objectors and their attorneys (e.g. by seeking additional compensation to withdraw even ill-founded objections).  An objection, even of little merit, can be costly and significantly delay implementation of a class settlement….  Objections may be motivated by self-interest rather than a desire to win significant improvements in the class settlement.  A challenge for the judge is to distinguish between the meritorious objections and those advanced for improper purposes.

These are precisely the type of objections made by Objectors Michael Narkin ("Narkin") and Christopher T. Cain ("Christopher Cain," through his representation of his daughter, Madeline Monti Cain ("Cain")).  Narkin is a former attorney who was forced from the profession and who has made numerous baseless boilerplate objections to other class action settlements to try to extort large payments from class counsel.  Christopher Cain has also previously objected to a class settlement on substantially the same grounds as here were rejected by that Court.  *See In Re: Netflix Privacy Litigation*, No. 5:11-CV-00379 EJD, 2013 U.S. Dist. LEXIS 37286 (N.D. Cal. Mar. 18, 2013) ("*Netflix*").  Ference's objection also has the telltales of a serial objection.  The objection is controlled and was "ghost written" by an attorney whose identity Ference's other attorney will not disclose.  Ference's known attorney admits the other attorney is in charge and he has no authority to so much as discuss the objection.

---

(…continued)

settlement, criticized their "laughable" suggestions, and characterized "their goal [as being] … to hijack as many dollars for themselves as they can wrest from a negotiated settlement."  *Id.* at 1108-09.

These Objectors' game plan follows a pattern common to other serial objectors. As they have done in prior cases, Objectors Narkin and Christopher Cain fully intend to lose their objections at the trial court level. Instead of providing any improvement to the Settlement, they seek to create leverage for their unfounded positions by filing notices of appeal, hoping that the resulting delay will enable them to extract payments in return for abandoning the appeals. These baseless and unsupported objections will not provide any added benefit to the Class but instead will only serve to delay the relief to Class Members, while Narkin and Christopher Cain attempt to extort payment for themselves. The Ference objection fares no better. Despite the number of attorneys involved, it merely recites the typical boilerplate of other serial objections. Not a single case is cited and it reflects a lack of understanding of the Settlement and related documents.

None of the proffered objections has any merit. Accordingly, Class Counsel respectfully request that the Court overrule the objections – only three from tens of thousands of Class Members who consented to this excellent and widely supported Settlement by submitting a claim – and grant Plaintiffs' Final Approval Motion in full.

## II. THE OBJECTIONS SHOULD BE STRICKEN FOR FAILURE TO ABIDE BY THE COURT'S ORDER AUTHORIZING NOTICE

As an initial matter, each of the three objections should be stricken for failure to adhere to this Court's Order Authorizing Notice, which clearly mandates that objectors must provide "a list of the Class Member's purchase(s) of the FiveFingers footwear" as well as "proof of purchase for the FiveFingers footwear" consisting of either "a cash register receipt, a credit card receipt or a credit card statement or other verifiable information that sufficiently indicates the purchase of the FiveFingers footwear." *Id.* at ¶ 19. Despite this clear requirement, none of the three

Objectors has identified the FiveFingers Footwear he or she purchased, or even provided any evidence that he or she actually purchased a pair. Only one objector, Ference, even states the quantity of FiveFingers he purportedly purchased (one).[4] *See* Ference Objection at 2. Moreover, Narkin filed his objection on August 18, 2014, three days after the deadline set forth in the Order Authorizing Notice.[5]

## III. NARKIN AND ATTORNEY CAIN ARE SERIAL OBJECTORS AND FERENCE'S MYSTERY ATTORNEY PROBABLY IS

Legitimate objectors exercising their right to object to a settlement play a valuable role in ensuring that the settlement is fair and adequate. However, a growing number of unscrupulous attorneys are making a living exploiting the right to object to class action settlements by filing unsubstantiated objections and subsequent appeals for the sole purpose of extorting a payoff. This ultimately hurts the Class Members and comes at their expense.

The Federal Judicial Center and countless state and federal courts around the country have written about serial objectors, and warn courts to "[w]atch out . . . 'for canned objections filed by professional objectors who seek out class actions to simply extract a fee for lodging generic,

---

[4] Cain declines for some reason to identify the number of FiveFingers she purchased, instead cryptically offering that she "purchased one or more pairs." Cain Objection at 1 n.1. Narkin, on the other hand, does not even bother to claim in his objection that he purchased any FiveFingers at all. Neither has submitted a proof of claim form in the Settlement. *See* Declaration of James R. Prutsman, MBA, in Further Support of Joint Motion for Final Approval of Class Action Settlement ("Supp. Prutsman Decl."), ¶ 9, filed contemporaneously with this Memorandum.

[5] The address provided by Cain, 7608 Queensbury Drive, Knoxville, TN 37919, is a house owned by her father, Christopher Cain. *See* Supp. Pollack Decl. at ¶¶ 3-4. Thus, the objection should be stricken because it does not comply with the Court's order, which expressly states that "the objector's actual residential address must be included." Order Authorizing Notice (ECF No. 76), ¶ 19. For the same reason, it does not comply with the Settlement Agreement (*see id.* at 22) or the requirements listed in the Notice (the Notice provided to Class Members is available on the Settlement Website, https://www.fivefingerssettlement.com).

unhelpful protests.'"  Barbara J. Rothstein & Thomas E. Willging, Federal Judicial Center, *Managing Class Action Litigation: A Pocket Guide for Judges*, at 11 (2005).  Courts have further cautioned to be "wary of self-interested professional objectors who often present rote objections to class counsel's fee requests and add little or nothing to the fee proceedings." *Id.* at 24.

Meritless objections hurt the class because they delay relief provided under the settlement. "[M]eritless objections tend to delay providing benefits to bona fide and deserving class members inasmuch as settlements commonly do not provide for payments of any benefits until the judgment entered approving a settlement is final and not subject to further appeal."  Alba Conte & Herbert B. Newberg, *Newberg on Class Action* ("*Newberg*") § 15:37 (4th ed. 2002); *see also Duhaime v. John Hancock Mut. Life Ins. Co.*, 183 F.3d 1, 6-7 (1st Cir. 1999) ("[W]e recognize that a class member and his or her attorney conceivably could object to a proposed settlement solely to set up an appeal designed to obtain a nuisance value recovery and/or advantageous fee arrangement."); *Barnes v. FleetBoston Fin. Corp.*, No. 01-10395-NG, 2006 U.S. Dist. LEXIS 71072, at *3-4 (D. Mass. Aug. 22, 2006) ("[P]rofessional objectors can levy what is effectively a tax on class action settlements, a tax that has no benefit to anyone other than to the objectors. Literally nothing is gained from the cost:  Settlements are not restructured and the class, on whose behalf the appeal is purportedly raised, gains nothing.").

A.     **Narkin**

Narkin is a quintessential serial objector who has misused the legal system in other unsavory ways as well.  Narkin's history was summarized by the court in *Larsen v. Trader Joe's Co.*, No. 11-cv-05188-WHO, 2014 U.S. Dist. LEXIS 95538 (N.D. Cal. July 11, 2014), one of many courts where Narkin's objections were rejected:

> Michael Narkin is a former attorney who resigned from the
> California Bar facing 16 counts of misconduct. According to the
> San Jose Mercury News, after resigning from the Bar, Mr. Narkin
> set up the Saratoga University School of Law, "an Internet
> correspondence program where he served as dean and, from all
> appearances, faculty and administration." The newspaper article
> details complaints made by students that "Narkin took tuition up
> front and then did little in return." The law school was eventually
> stripped of its license by the State of California. Mr. Narkin has
> objected to other class action settlements in the past.

*Id.* at *24-25 n.5 (internal citations omitted).[6]

Narkin objected to a settlement in another case being prosecuted by certain of Plaintiffs'

Counsel. In *Arnold v. FitFlop USA, LLC,* No. 11-CV-0973 W (KSC), 2014 U.S. Dist. LEXIS

58800 (S.D. Cal. Apr. 28, 2014), Narkin raised essentially the same objections as here which were

denied by the court as meritless. *Id.* at *21-23. Narkin appealed and then demanded $100,000

from plaintiffs' counsel to drop his appeal. In denying Narkin's application to proceed *in forma*

*pauperis* on appeal, the court noted that Narkin never denied demanding $100,000, but instead

claimed that the demand was for a charity that he volunteers for, called Luvin Animal Rescue.

*See Arnold v. FitFlop USA*, LLC, No. 11-CV-0973 W (KSC), 2014 U.S. Dist. LEXIS 91161, at

*9 n.2 (S.D. Cal. July 3, 2014) (internal citation omitted). The court further noted, however, that

"the charity appears to belong to Applicant and his family, who are identified as its officers." *Id.*

Narkin should not be permitted to continue his pattern of extortion in this case.

---

[6] In addition to the current settlement, Narkin has objected to five other class settlement of which
Plaintiffs are aware: (1) *Saccoccio v. JP Morgan Chase Bank, N.A.*, Case No. 13-21107 (S.D. Fla.); (2)
*Arnold v. FitFlop USA, LLC*, 3:11-cv- 00973-W-KSC (S.D. Cal.); (3) *Herrick et al v. JPMorgan Chase
Bank, N.A. et al*, 1:13- cv-21107-FAM (S.D. Fla.); (4) *Larsen v. Trader Joe's*, No. 11-cv-05188-WHO
(N.D. Cal.); and (5) *Rose v. Bank of America*, No. 11-cv-02390-EJD (N.D. Cal.). Each of the objections
mirrors the form objection that Narkin has made in this litigation, and none has been successful.

**B.     Attorney Cain**

Attorney Cain has also previously filed an objection in at least one case of which Plaintiffs' Counsel is aware, *Netflix*.   There Mr. Cain, purporting to represent two objectors, submitted a number of the same objections that were submitted here.   *See id.*, No. 5:11-CV-00379 EJD, ECF. No. 212.   His and all other objections to the settlement were rejected by the court.   *See id.*, 2013 U.S. Dist. LEXIS 37286.   Moreover, Mr. Cain was denied *pro hac vice* admission in light of the fact that, *inter alia*, he never informed his clients that he was filing an objection on their behalf or that, when he appealed the denial of their objections, his clients were ordered to post an appeal bond.   *See Netflix*, No. 5:11-CV-00379 EJD, ECF No. 337.   Mr. Cain's clients' subsequent failure to post the bond subjected them to a motion for contempt.   This behavior led the *Netflix* court to "question Attorney Cain's ability to observe the duties and responsibilities required by an attorney admitted in this district" and therefore deny his *pro hac vice* application. *Id.* at ECF No. 341 at 1.

**C.     Ference's Mystery Attorney**

Ference's objection has all of the telltales of a serial objection.   It blindly asserts a laundry list of objections but fails to cite a single case and gets much of the Settlement wrong.   Plaintiffs' Counsel twice contacted the attorney listed on the objection to discuss the objection.   But that attorney, Mr. Aisenberg, refused to discuss anything about the objection other than to say that there was another attorney involved who would not authorize him to discuss the objection or even permit the identity of the other attorney to be disclosed.

**IV.     THE OBJECTIONS SHOULD BE OVERRULED**

Each of the objections to the Settlement is without merit and should be overruled.

## A.    The Requirements for Objectors are Reasonable

Objector Cain contends that the Settlement imposes unlawful requirements on objectors because it requires them to submit proof of purchase in order to object, but not to submit a claim for up to two pairs of FiveFingers.  *See* Cain Objection at 4.  Requiring an objector to submit proof of membership in a class is standard procedure in class settlements.  *See, e.g.*, *Trombley v. Bank of Am. Corp.*, No. 08-cv-456, 2011 U.S. Dist. LEXIS 95140, at \*16 (D.R.I. Aug. 24, 2011); *In re Initial Pub. Offering Sec. Litig.*, No. 21 MC 92, 2011 U.S. Dist. LEXIS 103698, at \*6 (S.D.N.Y. Aug. 25, 2011).  This is because, as a general rule, only class members have standing to object to a proposed class settlement.  *See, e.g., Duhaime*, 183 F.3d at 3.

Moreover, the Settlement requires all claimants to sign the Claim Form under penalty of perjury and to acknowledge that all claims "may be subject to audit, verification and Court review."  *See* Claim Form at 2. [7]  For claims for more than two pairs of FiveFingers, proof of purchase is required, *see id*, failing which the claim will be disqualified.  *See* Settlement Agreement, ¶ III.B.2.  Accordingly, just as objectors are required to prove membership in the Class to have standing to object, Class Member claimants may be required to provide proof of purchase to obtain relief.  Requiring objectors to demonstrate that they are actually members of the Class before holding up millions of dollars in payments to tens of thousands of Class Members is hardly a basis for objection.  Instead, it is a wise requirement to guard the settlement fund against improper and baseless objections.

---

[7] The Claim Form provided to Class Members is available on the Settlement Website, https://www.fivefingerssettlement.com.

Cain further objects to the Settlement because "there is no provision . . . which might permit Settlement Class Members to submit a claim absent a proof of purchase and receive a smaller amount than if proof of purchase had been supplied." Cain Objection at 17-18. Cain cites no authority that such a provision is *required* in this type of case because there is none – any settlement's terms are the result of complex negotiations between the parties and consequently the fairness of any settlement must be judged on the unique facts of the case. Here, the Settlement provides that Class Members could receive settlement compensation for up to two pairs with no proof of purchase at all. *See* Settlement Agreement at ¶ III.B.5.

**B.      The Settlement Provides Sufficient Benefits to the Class**

As discussed in detail in the Final Approval Motion, despite significant obstacles in litigating this case, Plaintiffs were able to secure the creation of a non-reversionary cash Settlement Fund of $3.75 million that will provide cash payments to Class Members as well as provide for attorneys' fees, expenses, notice and settlement administration costs, and any Service Awards granted Plaintiffs by the Court. *See id.* at 14. The Settlement also provides additional benefits. Vibram has agreed, *inter alia*, to discontinue the marketing campaign that gave rise to this litigation. *See* Settlement Agreement, § IV.B.2. This Settlement is a very good result given the various risks of continued litigation. *See In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 74 (D. Mass. 2005) ("'The present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the . . . proposed settlement. . . . [which] represents a necessary compromise between inherent risks of doing so and a guaranteed cash recovery.'") (quotations omitted).

Despite these facts, each Objector argues that the Settlement benefits to the Class are inadequate. *See* Cain Objection at 9-10; Ference Objection at 3; Narkin Objection at 1. As an

initial matter, Cain and Ference both fail to take into account the value to the Class of the changes to Vibram's advertising of FiveFingers, discussed further *infra*.

Without meaningful argument, Cain asserts that the case was settled "too cheaply," Cain Objection at 10, an objection essentially mirrored by Ference and Narkin. Cain makes no attempt to rebut Plaintiffs' assessments of the potential risks in going forward in litigation versus the potential rewards of hypothetically succeeding in securing a judgment following trial. *See* Final Approval Motion at 24; *Netflix*, 2013 U.S. Dist. LEXIS 37286, at *33 ("Objectors bear the burden of proving any assertions they raise challenging the reasonableness of a class action settlement.") (citations omitted). Christopher Cain made this same objection in *Netflix*, *id.* at ECF No. 212 (through different objectors), which was rejected there for the same reason it should be rejected here:

> the Court has found that the amount of the cash settlement to be fair and adequate considering the strength of Plaintiffs' case, potential defenses, experience and opinion of counsel, the settlement amount of similar class action litigations, and other factors. *Again, the Court has been instructed not to substitute its own judgment for that of the parties who were the ones actually engaging in the negotiations.*

2013 U.S. Dist. LEXIS 37286, at *37-38 (emphasis added) (citations omitted).

If Plaintiffs were able to successfully litigate this case to judgment (and likely a subsequent appeal), after incurring far more attorneys' fees and expenses that the Class would be responsible for, the likely measure of damages would be limited to the "price premium" of the "difference between the value of FiveFingers either having or not having the represented health benefits." *Bezdek v. Vibram USA Inc.*, No. 12-10513-DPW, 2013 U.S. Dist. LEXIS 22939, at *16 (D. Mass. Feb. 19, 2013). As Defendants argued that FiveFingers are still functional running shoes that were advertised as having six different benefits, the maximum damages that

10

Class Members could obtain through a judgment may only amount to a fraction of the retail cost of the shoes, which is what Class Members are being provided in this Settlement *today*.

Ference complains that the Notice does not "provide whether or not there is a minimum payout." Ference Objection at 3. There is no minimum payment, and the Notice states unambiguously that each Settlement Class Member would be "paid on a *pro rata* basis from the balance of the Settlement Fund after payment of [costs, fees, expenses] and Service Awards, up to a maximum of $94.00 per pair." *Id*. at 5. The Notice and the Claim Form also clearly state that a *pro rata* reduction is possible depending on the number of claims filed. *See id.* at 5; Claim Form at 2. Ference cites no case requiring that a notice of settlement must state that there is no minimum payment (or any cases at all), and this fact is also clearly available to anyone who actually reads the Notice. Moreover, the Notice clearly provides, on each page, a toll-free number for any questions regarding the Settlement, while also extending an invitation to contact Lead Class Counsel directly for further information if necessary. *See id*. at 13.

**C.      The *Cy Pres* Provision of the Settlement is Appropriate**

The Settlement provides that a *cy pres* distribution will be made to the American Heart Association ("AHA") "with specific earmark relating to research regarding health benefits associated with running or exercise or substantially similar research," but only if there are Residual Funds remaining in the Settlement Fund "after payment of Administrative Costs, necessary taxes and expenses, Attorneys' Fees and Expenses, Service Awards, and all Claims to eligible Class Members (taking into account un-cashed distributions made payable to eligible Class Members)." Settlement Agreement at ¶ III.C.6. The First Circuit has established that *cy pres* awards are appropriate "for the distribution of residual unclaimed funds." *In re Lupron Mktg. & Sales Practices Litig.*, 677 F.3d 21, 30 (1st Cir. 2012) (citations omitted).

Before addressing the substance of the objections to the *cy pres* distribution, Plaintiffs note that any *cy pres* award is likely to be *de minimus* because, in light of what appears to be a high level of claims, the only Residual Funds will stem from unclaimed settlement checks. *See* Settlement Agreement at ¶ III.C.6; Supp. Pollack Decl. at ¶ 5. Nonetheless, Objectors Ference and Narkin contend, for differing reasons, that the Settlement's proposed *cy pres* distribution is "inappropriate." Ference Objection at 4.

Ference argues that either (1) any Residual Funds should be used to increase the payments to claimant Class Members, or (2) additional notice should be provided to the Class with an extended Claim Period. *See* Ference Objection at 4-5. Both of these would require additional actions after the completion of the distribution of all Settlement Funds, and have been rejected by other courts as impractical and inefficient. *See, e.g., Bower v. MetLife, Inc.*, No. 1:09-cv-351, 2012 U.S. Dist. LEXIS 149117, at *13 (S.D. Ohio Oct. 17, 2012) (rejecting same argument and stating that the "cost to re-issue a second settlement payment to approximately 900,000 Class Members will in all likelihood vastly exceed the value remaining in the Settlement Fund . . . and is simply not practicable.").[8]

Furthermore, a distribution to the AHA "with specific earmark relating to research regarding health benefits associated with running or exercise or substantially similar research" is an appropriate *cy pres* award in this case. The First Circuit has held that a *cy pres* recipient must

---

[8] Ference also contends that all remaining settlement funds should be provided to claimant Class Members as *pro rata* distributions and not to third parties because the "settlement benefits are being distributed through direct deposit," which allegedly makes such distribution "logistically feasible and economically viable." Ference Objection at 4. This argument fails for the reasons provided above but, apart from this, Class Members merely have the option to elect direct deposit on their claim forms as opposed to receiving a check.

satisfy the "reasonable approximation test." *Lupron*, 677 F.3d at 33. The test looks to a number of non-exclusive factors including:

> the purposes of the underlying statutes claimed to have been violated, the nature of the injury to the class members, the characteristics and interests of the class members, the geographical scope of the class, the reasons why the settlement funds have gone unclaimed, and the closeness of the fit between the class and the *cy pres* recipient.

*Id.* As the nation's oldest, largest voluntary organization devoted to fighting cardiovascular diseases and stroke,[9] the AHA's interest in health mirrors that of the Class Members - individuals who have purchased FiveFingers footwear that was marketed as having certain salutary health benefits. With the funds being distributed to the AHA for the purpose of studying the health benefits associated with "running or exercise or substantially similar research," the nexus between the *cy pres* recipient and the Class (people who bought running shoes) becomes even sharper. The AHA's reach as a nationwide organization also matches the geographical scope of the nationwide Class. *See Zeisel v. Diamond Foods, Inc.*, No. C 10-01192 JSW, 2012 U.S. Dist. LEXIS 148893, at *8 (N.D. Cal. Oct. 16, 2012) (approving AHA as *cy pres* recipient in false advertising case).[10]

Ference further argues that if the Court permits a *cy pres* distribution, "the Class Counsel or the Court, not defendants, should select the recipient." Ference Objection at 5. In fact, Class

---

[9] *See* http://www.heart.org/HEARTORG/General/About-Us---American-Heart-Association_UCM_305422_SubHomePage.jsp (last visited October 8, 2014).

[10] The *Lupron* court notably overruled an objection that because *Lupron* was a consumer fraud case the *cy pres* award must go to an organization fighting consumer fraud, holding that "the state consumer fraud statutes at issue in this case were meant to protect vulnerable consumers like the victims in this case. The *cy pres* distribution in this case honors that objective by distributing funds to benefit the absent class members who have not yet been compensated." 677 F.3d at 35 n.9.

Counsel, in negotiations with defendants, did select AHA as part of the Settlement Agreement. *See id.* at ¶ VIII.D. This is how the First Circuit requires the recipient to be chosen. *See Lupron*, 677 F.3d at 38. This Court will ultimately decide whether to approve this choice.

Ference finally argues that if a *cy pres* distribution is made, the attorneys' fees granted to Plaintiffs' Counsel should be reduced proportionately because "[c]lass counsel prosecuted the case for the benefit of the class, not charitable organizations." Ference Objection at 5. Ference provides no precedent or citations for such a proposal, and in any event is incorrect because *cy pres* awards such as the one proposed by the Settlement *are* for the benefit of the class. *See, e.g., In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 34 (1st Cir. 2009) ("[T]he *cy pres* ... distributions serve the objectives of compensation for the class (albeit in an indirect manner), access to judicial relief for small claims, and deterrence of illegal behavior.") (quoting *Newberg*, § 10:15, at 513).[11]

### D. The Settlement's Non-Cash Relief is not "Ineffective"

Plaintiffs were able to secure significant additional benefits through the Settlement Agreement's requirement that, *inter alia*,

> Vibram will agree to take commercially reasonable efforts to discontinue certain aspects of its advertising and marketing campaign, including: (i) Vibram will not make or assist others in making any claims that the FiveFingers footwear or products similar to the FiveFingers footwear are effective in strengthening muscles or preventing injury [or make] any health benefit claim

---

[11] Narkin, also without any citation to legal authority, objects that the proposed *cy pres* award is improper because the AHA "has not been injured" and because the award "may violate the Rule Against Perpetuities." Narkin Objection at 3. The former objection clearly misunderstands the purpose of a *cy pres* award, which is not granted to an injured party but instead to a recipient that would benefit absent class members. Narkin's Rule Against Perpetuities assertion is unexplained and baseless.

> about FiveFingers footwear or products similar to the FiveFingers
> footwear unless Vibram possesses and relies upon competent and
> reliable scientific evidence to substantiate that the claim is true and
> non-misleading . . .

*Id.* at § III.D.  Despite this provision, Cain objects on the ground that the "injunctive relief" is "[m]eaningless and illusory" because "the advertising Defendants agree to refrain from taking action that has already been debunked, and is therefore of no real value to Settlement Class Members." Cain Objection at 17.  Cain's objection ignores the fact that the veracity of Vibram's advertising was the most hotly contested issue in this litigation, and that no court, as of yet, has ruled that the advertising was untrue.  Vibram has also consistently maintained that the advertisements were accurate and truthful, and despite agreeing to change its advertising as part of the Settlement, "continues to deny any and all wrongdoing alleged in the Actions, and neither admits nor concedes any actual or potential fault, wrongdoing or liability in connection with any of the facts or claims that have been or could have been alleged against it in these actions." Settlement Agreement at ¶ I.E.  Courts have recognized that this type of injunctive relief is valuable.  *See, e.g., Wexler v. United Air Lines, Inc.*, 496 F. Supp. 2d 150, 153 (D.D.C. 2007) ("The value of injunctive relief for determining the amount in controversy can be calculated as the cost to the defendant.") (citations omitted).

Ference assails the non-cash relief as "worthless" because "defendants should always make true representations and never misrepresent tests, studies or research." Ference Objection at 4.  Obviously no citation is provided for this point as it provides no basis on which to object to valid injunctive relief.  Ference further argues that the non-cash relief is inadequate because it does not apply to third party sales of FiveFingers.  *Id.*  Defendants control their advertising.  If someone else were to falsely advertise the products, he or she would be liable for false

advertising. The unlikely possibility of this occurring in limited instances provides no reason for the Court not to approve the Settlement.

### E. The Class Notice Was Adequate

Ference and Cain object that the Notice was insufficient. Ference first objects on the ground that the Notice purportedly does not: (1) detail the information Plaintiffs gathered regarding their claims or the "information . . . defendants provide[d] in response;" (2) explain whether the Parties hired experts (and what the experts said); or (3) identify the total number of Class Members. Ference Objection at 2. None of this detail is required and would not assist Class members in making decisions about the Settlement.[12] Notice should only include (1) the nature of the action; (2) the definition of the class certified; (3) the class claims, issues or defenses; (4) that a class member may enter an appearance through an attorney; (5) that the court will exclude any members who request exclusion; (6) the time and manner of requesting exclusion; and (7) the binding effect of a class judgment. *See* Fed. R. Civ. P. 23(c)(2)(B). Nothing more is required. *See, e.g., In re Lupron® Mktg. & Sales Prac. Litig.*, 228 F.R.D. 75, 96 (D. Mass. 2005) (meeting requirements of Rule 23(c)(2) for notice satisfies due process). The Notice, as previously reviewed and authorized by this Court, provided this information and more.

Ference also argues that despite notice being provided in various media, "no reason is given as to why notice is not being distributed by Vibram's authorized retailers." Ference Objection at 3. Notice is not required to be provided in every conceivable manner, and in this

---

[12] Ference seems confused about the purpose of a class notice as he argues that the number of Class Members should be listed in the Notice because "claims are subject to a *pro rata* reduction" and "*the Court* will need to be able to compare class size to the number of claims made . . ." Ference Objection at 3 (emphasis added). The Notice is not for the benefit of the Court, it is *authorized by* the Court.

case the Parties developed a wide-ranging Notice Plan with the help of Heffler Claims Group, LLC ("Heffler"), a firm that specializes in developing class action notice plans. *See* Motion for Preliminary Review of Class Action Settlement, Authorization of Class Notice and Setting of Final Approval Hearing ("Preliminary Review Motion"), at 15-20. As stated in the Declaration of James R. Prutsman in Support of the Motion for Final Approval of the Settlement, (ECF Nos. 83-2-8), Notice was extensive and potentially reached millions of Class Members. *See also* Supp. Prutsman Decl., ¶ 11.

Cain also objects to the Notice as failing to "reasonably apprize [sic] Settlement Class Members of the monetary amount of their claims." *See* Cain Objection at 9. To the contrary, the Notice provided all information then available regarding the likely range of payment that a Class Member might receive in light of the fact that each class action settlement has a different, and unpredictable, "take rate" of class members who ultimately file claims:

> the relief to be provided to eligible Class Members for each pair of FiveFingers footwear purchased by an eligible Class Member shall be paid on a *pro rata* basis from the balance of the Settlement Fund after payment of Administrative Costs, necessary taxes and expenses, Attorneys' Fees and Expenses, and Service Awards, up to a maximum of $94.00 per pair, the average manufacturer's suggested retail price of FiveFingers footwear. Based on experience from other similar settlements of class actions, it is reasonable to expect that Class Members may receive a payment in the range of $20.00 to $50.00 per pair, which could increase (up to the average retail price of $94.00) or decrease depending on various factors, including the number of valid claims.

Notice at 5. The Court should reject this objection.[13]

---

[13] Cain further argues that the Notice is faulty because it does not detail the Administrative Costs. *See* Cain Objection at 10. Cain cites no authority requiring that such expenses be detailed in the class notice (continued…)

**F.  The Settlement Release is Not Overbroad**

Ference objects to the Settlement's standard Release on the ground that it "includes unnamed third parties" while the Settlement's injunctive relief does not cover third parties. Ference Objection at 5.  The one has nothing to do with the other.  The injunctive relief places prohibitions on Defendants' future actions, but the Release does not, nor could it, release any claims for improper actions committed by Defendants or any third party in the future.

Ference also objects to the Release on the ground that it is "oppressively long" and is "not easily readable for an average individual."  Ference Objection at 5.  This objection is meritless.  It is a provision with legal effect that need not be understandable to laypeople. Moreover, the Notice generally explains the claims being released that were or could have been asserted in the complaints.

**G.  The Proposed Service Awards for the Class Representatives Are Appropriate**

Service awards are routinely permitted to recognize certain class members for stepping forward and incurring risk for the benefit of the class as a whole.  *See, e.g., Relafen*, 231 F.R.D. at 82 (awarding service awards up to $14,000); *see also Lupron*, 228 F.R.D. at 98 ("Incentive awards are recognized as serving an important function in promoting class action settlements, particularly where, as here, the named plaintiffs participated actively in the litigation.") (citations omitted).  Here, the amounts requested by Plaintiffs, $2,500 for Bezdek and De Falco and $1,500 for Safavi, are modest and well-earned in light of their effort put into the case.

---

(…continued)

or any assistance such information would provide Class members in determining their participation in the Settlement.  Moreover, such detail obviously could not have been provided *ex ante*.

Cain objects to the Service Awards on the ground that "there is nothing in the record to suggest that the three named Plaintiffs participated in this litigation to an extent more than allowing their names to be placed on the complaint." Cain Objection at 18. Once again, Cain's failure to review documents made available on the Settlement Website prior to her filing the objection has led to time wasted by Plaintiffs and the Court. Each Plaintiff submitted a declaration in support of the Final Approval Motion which details his or her extensive participation in the litigation including, among other things, review of the complaints in the Actions and other documents, responding to discovery requests, and consulting with Plaintiffs' Counsel at key points in the case. *See* ECF No. 83-12.[14] Accordingly, the Court should grant Plaintiffs' appropriate requests for Service Awards in this case.

### H. The Settlement Was Reached Following Arm's-Length Negotiations Without Collusion

Narkin objects, using the same form language he has used in other actions, that the Parties' "improper use of a confidentiality agreement" is somehow indicative of collusion and that he, as a purported absentee Class Member, is entitled to "scrutinize the case file." Narkin Objection at 1. Narkin does not provide a single citation for the position that absent class members are entitled to seek documents produced by parties subject to a Court issued protective order. He also does not explain what documents he believes were produced or how they would

---

[14] Ference objects on the same basis and should be denied for the same reason. *See* Ference Objection at 4. Ference also asks rhetorically whether Plaintiffs "under[went] running tests" or "were . . . examined by doctors." *Id.* at 4. This is indicative of Ference's seeming failure to bother to review the claims in the litigation, which are false advertising and not personal injury claims.

assist him in better understanding the Settlement.[15]  Ultimately, Narkin alleges that "under the cloak of a confidentiality agreement, Class Counsel may have seen no need to engage in real discovery to determine what the case was worth.  Instead, they were free to discuss attorney fees without the bother of having to be adversaries on behalf of the Class."  *Id.* at 2.  As detailed in the Declaration of Janine L. Pollack in Support of Motion for Preliminary Review of Class Action Settlement, Authorization of Class Notice and Setting of Final Approval Hearing ("Pollack Preliminary Review Decl."), ECF No. 72-1, which was available to Narkin when preparing his objection, the discovery in this case has been extensive and the litigation hard fought.  *See id*.  Moreover, Narkin conveniently ignores that the settlement was achieved only after substantial negotiations, including a mediation session with a well-known and experienced mediator.  *See id.*, ¶¶ 18-19.[16]  Narkin's baseless objections should be rejected by the Court in their entirety.[17]

---

[15] When Narkin made this identical objection in *Arnold*, the court rejected it in part for a reason that applies here – "despite [Narkin's] alleged desire to scrutinize the discovery, the docket demonstrates that he took no action to either challenge the parties' confidentiality designations or to seek leave from the magistrate judge or this Court to review discovery before the final approval hearing."  *Arnold*, ECF No. 130, at 3.

[16] Narkin also contends that Lead Class Counsel should be denied fees and prevented from representing the Class due to their having been "accused of engaging in unethical conduct in another . . . case," *Arnold*. Narkin Objection at 2-3.  Narkin fails to mention the critical facts that:  (1) the "accuser" in *Arnold* was none other than Narkin himself; (2) the "accusations" were little more than the same form objections made in this case (*see Arnold*, ECF No. 119) and (3) the *Arnold* court found Narkin's claims to be "without merit."  *Id.*, ECF No. 121 at 14.

[17] Given Narkin's bankruptcy filing, it is likely that his claim, if he has one, belongs to the trustee.  *See In re Tomaselli*, No. 13-15744-JNF, 2014 Bankr. LEXIS 3794, at *10 (Bankr. D. Mass. Jan. 13, 2014).

**I.** **The Requested Award of Attorneys' Fees and Expenses is Reasonable, Well-Supported and Should Be Approved**

Standard practice for serial objectors is to attack class counsel's fee request, regardless of the requested fee or work performed. But here Plaintiffs' Counsel expended significant time litigating this case including, *inter alia*, conducting an extensive pre-complaint investigation into the facts and Plaintiffs' legal claims, engaging in extensive discovery, and conducting protracted arm's-length settlement negotiations with Vibram, including a day-long mediation session. *See* Pollack Preliminary Review Decl. Class Counsel also will have spent considerably more effort on the case by the time final approval is obtained (potentially after the Settlement is defended on appeal) and relief distributed.

Cain objects that the work done by Plaintiffs' Counsel was insufficient to warrant a fee of 25% of the Settlement Fund. As Cain concedes in her objection, such a fee is the "'benchmark'" in this Circuit. Cain Objection at 12; *see also Latorraca v. Centennial Techs., Inc.*, 834 F. Supp. 2d 25, 27-28 (D. Mass. 2011) ("Courts in this circuit generally award attorneys' fees in the range of 20-30%, with 25% as 'the benchmark[.]'") (collecting cases). Cain nonetheless argues that Plaintiffs' Counsel should receive less than the benchmark based on her own estimation of the amount of work done by Plaintiffs' Counsel, while seeming to intimate that the true scope of Plaintiffs' Counsel's labor has been withheld from the Class. *See id.* at 14.[18] However, Plaintiffs

---

[18] As just one example, Cain argues that "there is nothing in the record which demonstrates that any formal discovery occurred in this case" while in the same sentence also notes that "Class Counsel state in the Settlement Agreement that they reviewed 'over 52,000 pages of documents.'" Cain Objection at 14. Cain ignores the formal discovery taken in the case, which includes "fifty-eight (58) requests for production, fourteen (14) interrogatories and eighteen (18) requests for admission" served on Vibram. *See* Preliminary Review Motion at 8.

have described in detail the work done in this litigation in the Final Approval Motion and Pollack Preliminary Review Declaration, each of which was available to Cain and the Class on the Settlement Website and to which *she actually cites in her objection*. *See* Cain Objection at 14. Cain's attempt to create an alternative history of the case is meritless and therefore Cain's entreaty to award attorneys' fees below the benchmark in this Circuit should be rejected.[19]

Cain further objects to the inclusion of a so-called "clear sailing" provision in the Settlement Agreement. *See* Cain Objection at 16-17. But as Cain concedes, such provisions are not prohibited, *id.* at 17 (citing *Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518, 525 (1st Cir. 1991)), and in fact are recommended to the extent that they facilitate settlement:

> An agreement by the defendant to pay such sum of reasonable fees as may be awarded by the court, and agreeing also not to object to a fee award up to a certain sum . . . serves to facilitate settlements and avoids a conflict, and yet it gives the defendant a predictable measure of exposure of total monetary liability for the judgment and fees in a case. To the extent it facilitates completion of settlements, this practice should not be discouraged.

*Newberg*, § 15:34, p. 112.[20]

---

[19] The Objectors fail to address the fact that the requested fee award of $937,500 represents a fractional multiplier of 0.75. *See* Declaration of Janine L. Pollack in Support of Motion for Final Approval of Class Action Settlement, ¶¶ 4-8. A fractional multiplier is highly suggestive of the reasonableness of requested attorneys' fees. *See, e.g., In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 515 (S.D.N.Y. 2009) (awarding fees of 33 1/3%, noting that even in a mega-fund case, there is "no real danger of overcompensation" where the award represents a fractional multiplier to the lodestar); *In re Blech Sec. Litig.*, Nos. 94 CIV. 7696 (RWS), 95 CIV. 6422 (RWS), 2000 U.S. Dist. LEXIS 6920, at *15 (S.D.N.Y. May 19, 2000) (awarding lead counsel 30% of the settlement, and confirming that the award was reasonable in part because it represented a fractional multiplier of lead counsel's lodestar).

[20] *See also* Alexander, Rethinking Damages in Securities Class Actions, 48 Stan. L. Rev. 1487, 1534 (1996) ("settlement agreement[s] typically include[] a 'clear sailing' clause.").

Moreover, the cases Cain cites for this proposition are inapposite. In *Weinberger*, the First Circuit voiced concerns regarding clear sailing provisions in the context of a settlement where the class received no monetary benefit and the attorneys' fees and expenses were paid for *by the defendants*, not (as here) from a common fund, "render[ing] it improbable that class members will come forward to challenge the reasonableness of the requested fee." 925 F.2d at 525.[21]

Here, attorneys' fees will be provided out of the Settlement Fund, providing ample reason for the Class to object, although only three out of tens of thousands have done so. Moreover, in further support of the requested fees: (1) the amount of attorneys' fees requested is reasonable and in line with the benchmark percentage in this Circuit; and (2) if the Court elects to award less than the requested amount, it shall be paid to the Class or the *cy pres* recipient and will not revert to Vibram.[22]

Objector Ference argues that the requested attorneys' fees are an "unreasonable percentage of the Settlement Fund" but is wrong on the math – he thinks the fee represents 27% of the fund rather than 25%. Ference further claims that the requested amount is objectionable because "there is no indication how much will be paid out under the Settlement and no way to determine how the requested fees compare to that number." Ference Objection at 4. With a

---

[21] The other case cited by Cain, *Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003), also involved attorneys' fees paid for by the defendant and not from a common fund. *See id.* at 970 ("here [] the agreement provides for payment of fees by the defendant").

[22] Narkin states in a cursory fashion that the proposed attorneys' fees and expenses "constitute over reaching and represents unjust enrichment," Narkin Objection at 1, while offering no reason why this is the case. Narkin's objection on this ground should be rejected just as it was when made before the Northern District of California in *Larsen*, 2014 U.S. Dist. LEXIS 95538, at *23.

percentage fee award, this is not a relevant inquiry. *See* Final Approval Motion at 20. Finally, Ference incorrectly claims that the Final Approval Motion was not made available on the Settlement Website. *See* Ference Objection at 4. In fact, the motion was posted on the website on August 11, 2014, before Ference filed his objection. *See* Supp. Prutsman Decl., ¶ 15.

## V.     CONCLUSION

For the reasons set forth above and in Plaintiffs' Final Approval Motion, the objections of Cain, Ference and Narkin should be overruled and the Final Approval Motion granted in its entirety.

Dated: October 15, 2014

**BERMAN DEVALERIO**

By:____/s/ Glen DeValerio_____
   GLEN DEVALERIO (BBO #122010)
   NATHANIEL L. ORENSTEIN (BBO #664513)
One Liberty Square
Boston, MA 02109
Telephone: 617-542-8300
Facsimile: 617-542-1194
gdevalerio@bermandevalerio.com
norenstein@bermandevalerio.com

*Local Counsel for Plaintiffs*

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
JANINE L. POLLACK
270 Madison Avenue, 10th Floor
New York, New York 10016
Telephone: 212-545-4600
Facsimile: 212-686-0114
pollack@whafh.com

*Lead Class Counsel*

**BLOOD HURST & O'REARDON, LLP**
TIMOTHY G. BLOOD
THOMAS J. O'REARDON II
701 B Street, Suite 1700
San Diego, CA 92101
Telephone: 619-338-1100
Facsimile: 619-338-1101
tblood@bholaw.com
toreardon@bholaw.com

**SHEPHERD, FINKELMAN, MILLER & SHAH, LLP**
JAMES C. SHAH
35 East State Street
Media, Pennsylvania 19063
Telephone: 610-891-9880
Facsimile: 610-891-9883
jshaw@sfmslaw.com

**GARY ROBERTS & ASSOCIATES, P.A.**
MICHAEL K. BECK
324 Datura Street
Suite 223
West Palm Beach, FL 33401
Telephone: 561-686-1800
Facsimile: 561-686-1533
michael@palmbeachtrialattorney.net

**POMERANTZ LLP**
JAYNE A. GOLDSTEIN
1792 Bell Tower Lane, Suite 203
Weston, FL 33326
Telephone: 954-313-3454
Facsimile: 954-313-3455
jagoldstein@pomlaw.com

**MILBERG LLP**
JOSHUA E. KELLER
One Pennsylvania Plaza
49th Floor
New York, NY 10119
Telephone: 212-594-5300
Facsimile: 212-868-1229
jkeller@milberg.com

**THE BREEDEN LAW FIRM**
TONY W. BREEDEN
578 Washington Boulevard, Suite 552
Marina Del Rey, CA  90292
Telephone:  310-984-6861
Facsimile: 310-984-6849
tony@breedenlawfirm.com

**SWEETNAM LLC**
WILLIAM M. SWEETNAM
582 Oakwood Avenue, 200
Lake Forest, IL 60045
Telephone: 847-559-9040
Facsimile: 847-235-6618
wms@sweetnamllc.com

**WHATLEY KALLAS, LLC**
PATRICK J. SHEEHAN (BBO # 639320)
60 State Street, Seventh Floor
Boston, Massachusetts 02109
Telephone: 617-573-5118
Fascimile: 617-573-5090
psheehan@whatleykallas.com

*Plaintiffs' Counsel*

763121

## CERTIFICATE OF SERVICE

I, Glen DeValerio, hereby certify that on October 15, 2014 I caused a copy of the foregoing Plaintiffs' Supplemental Memorandum in Support of Motion For Final Approval of Class Action Settlement to be filed electronically via the Court's electronic filing system. Those attorneys who are registered with the Court's electronic filing system may access this filing through the Court's system, and notice of this filing will be sent to these parties by operation of the Court's electronic filing system.

Dated: October 15, 2014                    /s/ *Glen DeValerio*
                                            Glen DeValerio