```
 1                    UNITED STATES DISTRICT COURT
                       DISTRICT OF MASSACHUSETTS
 2

 3    VALERIE BEZDEK, Individually   )
      and on Behalf of All Others    )
 4    Similarly Situated,            )
                                     )
 5                     Plaintiff,    )
                                     )
 6    v.                             )
                                     )  Case No.
 7    VIBRAM USA INC. And VIBRAM     )  1:12-cr-10513-DPW
      FIVEFINGERS LLC,               )
 8                                   )
                       Defendants.   )
 9    _____)
      BRIAN DE FALCO, Individually   )
10    and on  Behalf of All Others   )
      Similarly Situated,            )
11                                   )
                       Plaintiff,    )
12                                   )  Case No.
      v.                             )  1:13-cr-10764-DPW
13                                   )
      VIBRAM USA INC. And VIBRAM     )
14    FIVEFINGERS LLC,               )
                                     )
15                     Defendants.   )
                                     )
16

17    BEFORE:  THE HONORABLE DOUGLAS P. WOODLOCK

18
                        SETTLEMENT CONFERENCE
19
            John Joseph Moakley United States Courthouse
20                        Courtroom No. 1
                         One Courthouse Way
21                        Boston, MA 02210
                     Wednesday, October 29, 2014
22                          2:30 p.m.

23               Brenda K. Hancock, RMR, CRR
                     Official Court Reporter
24          John Joseph Moakley United States Courthouse
                         One Courthouse Way
25                        Boston, MA 02210
                           (617)439-3214
```

1

2

3    APPEARANCES:

4

5        WOLF HALDENSTEIN ADLER FREEMAN & HERZ
         By: Janine L. Pollack, Esq.
6        270 Madison Avenue
         New York, NY 11201
7        On behalf of the Plaintiffs.

8        BERMAN DEVALERIO
         By: Daryl DeValerio Andrews, Esq.
9        One Liberty Square
         Boston, MA 02109
10       On behalf of the Plaintiffs.

11

12       JONES DAY (BOS)
         By:  Christopher M. Morrison, Esq.
             Dana Baiocco, Esq.
13       100 High Street
         Boston, MA 02110
14       On behalf of the Defendant.

15

16       SCOTT & CAIN
         By:  Christopher T. Cain, Esq. (Via telephone)
         550 W Main Street
17       Suite 601
         Knoxville, TN 37902
18       On behalf of Objector Madeline Monti Cain.

19

20

21

22

23

24

25

1           (The following proceedings were held in open court

2    before the Honorable Douglas P. Woodlock, United States

3    District Judge, United States District Court, District of

4    Massachusetts, at the John J. Moakley United States Courthouse,

5    One Courthouse Way, Courtroom 1, Boston, Massachusetts, on

6    Wednesday, October 29, 2014):

7           THE CLERK:  All rise.

8         (The Honorable Court entered the courtroom at 2:30 p.m.)

9           THE CLERK:  This Honorable Court is now in session.

10   You may be seated.

11          This is Civil Action 12-10513, Valerie Bezdek vs.

12   Vibram U.S.A., Inc. et al. And Civil Action 13-10764 Brian De

13   Falco, et al. vs. Vibram, U.S.A., LLC, et al.

14          THE COURT:  Well, I received, I guess, by email

15   earlier today some revisions to the Final Judgment and Final

16   Order Approving Class Action Settlement.  Is there any other

17   material that has been recently generated here?

18          MR. MORRISON:  No, your Honor, and the intent there

19   was just to fill in the dates that had been missing in the

20   original settlement agreement.

21          THE COURT:  Let me step back a bit in two ways.  One

22   is, at this stage you pretty much know what the various members

23   of the class are going to receive, don't you?

24          MS. POLLACK:  Your Honor, we are still -- the

25   Settlement Administrator is still working his way through the

1     claims to determine if there is any redundant claims or claims

2     of people who may not be in the class, so that procedure is

3     ongoing, and we actually started it a little early, but it's a

4     little bit of work.

5          THE COURT:  Well, it may be, but it is also I think

6     material to me to have some idea of what kind of dollar figures

7     we are talking about here.

8          MS. POLLACK:  Yes, your Honor.  We did experience a

9     higher than expected claim rate, which usually is the hallmark

10     of a good settlement, and we did get more claims than we

11     thought we would, so we did a little bit of math, as best we

12     could approximate at this point, without knowing the exact

13     final numbers.

14          THE COURT:  So, what is the approximate?

15          MS. POLLACK:  So, at this point we are approximating

16     around $9 per pair.  It could be $8.50, it could be $8.75, it

17     could be $8.95.  It's around that neighborhood.

18          THE COURT:  With respect to the actual number of

19     claims, what is that, again, estimated?

20          MS. POLLACK:  So, your Honor, there's two different

21     numbers here.  There is the number of people that filed

22     claims --

23          THE COURT:  Right.

24          MS. POLLACK:  -- and then there are the number of

25     pairs claimed upon.  At this point, your Honor, we believe,

1    without accounting for what is going to be disallowed, we had

2    almost 155,000 claims filed, so people who file, although some

3    of those are duplicates, and we had approximately 275,591 pairs

4    claimed against.  The estimate from the Settlement

5    Administrator as per sort of normal course, what they see is

6    probably 10 percent of those will be nonclass members, people

7    who file twice and that kind of thing.

8            THE COURT:  I guess what I want is an affidavit to

9    that effect, recognizing that these are estimates, but what I

10   have been presented with is somewhere between $95 a pair and

11   zero, and now I know it is somewhere in the range of $9.  It is

12   something I want to think about in this setting.  So, I would

13   like an affidavit or declaration, but something I guess from

14   the Claims Administrator estimating what the claims are.  I

15   would like to also know if there is some departure from the

16   estimated size of the class between that and the number of

17   people who are claiming.  Is there any material difference, to

18   your understanding?

19           MS. POLLACK:  I'm not sure I understand the question,

20   your Honor.

21           THE COURT:  You defined the class in a particular way.

22   Now we have claims.

23           MS. POLLACK:  Yes.

24           THE COURT:  Are the claims or the claimants coincident

25   with the class, or more or less, or do you have a better idea

1    the size of the class that we are talking about here?

2          MS. POLLACK:  I believe that for the most part people

3    sent in a claim signing under penalty of perjury, saying, "I

4    bought within the class," and that's what they had to do.

5          THE COURT:  I am just talking about class members.  Do

6    we have any way of knowing whether or not the size of the class

7    is larger than the class members or people, 155,000, who have

8    apparently made claims?  And then there are a few who have

9    decided not to exclude themselves.

10          MR. MORRISON:  If I may, your Honor, no, we simply

11    don't.  What we know and what we used as a rule, a sort of

12    thumbnail sketch, is that during the class period Vibram sold

13    approximately four million pairs of shoes.  That was the number

14    we all agreed to.  We searched our records.  A number of those

15    were people for whom we had direct email addresses, they were

16    direct sales, but the overwhelming majority were retail sales,

17    and there's no way to ascertain who the retail persons were.

18          THE COURT:  So, you have got no better fix on that

19    than really before?

20          MR. MORRISON:  There's nothing in the claim process

21    that would give us a better idea of who that is.

22          THE COURT:  I do want to get some better sense of what

23    the administrative costs and necessary tax and fees are going

24    to be as well, because they get taken out here, and I assume

25    that the calculation that the Claims Administrator is making

1   includes a calculation of taking out the administrative costs

2   and taxes and fees and so on.

3        One of the things I would like a little bit more

4   robust showing on really has to do with the nature of the

5   discovery and the nature of the negotiations.  What I have is

6   relatively conclusory.  I understand that it is difficult to

7   pull something like that together, but I would like to have

8   some better understanding of the nature of the negotiations and

9   the nature and contents of the discovery.  My concern is that,

10  obviously, this is relatively early on in the process, and the

11  settlement is rich for the attorneys.  $9 a pair ain't so rich.

12  So, I want to be sure that I have got a better understanding of

13  exactly what was going on here before I sign off on a

14  settlement like this.

15       Go ahead.

16       MR. MORRISON:  If I may, your Honor, just a clarifying

17  question.  I guess I'm not sure what kind of showing you are

18  looking for.  Are you looking for an affidavit from both sides

19  detailing the negotiation?

20       THE COURT:  Yes.

21       MR. MORRISON:  And are you looking for specifics of

22  cross offers or --

23       THE COURT:  Not so much specifics about cross offers,

24  but the number of times that you met, conferred, discussed, and

25  maybe it would be helpful to have some sense of where you

1  started and where you ended up in the negotiations.  What I

2  have is relatively high-level conclusions about encounters,

3  including an early version that was not altogether successful.

4        MR. MORRISON:  I understand that, your Honor.  My

5  concern about specifics in terms of offers and cross offers is

6  that a lot goes into that and is behind it, and just sort of

7  putting that on the public record can --

8        THE COURT:  I will leave it to you in the first

9  instance.  What you know is I do not think I have enough, or I

10  am not comfortable enough with what I have, but I am not

11  seeking to intrude, and I am not saying I am denying it.

12        MR. MORRISON:  I understand.

13        THE COURT:  But I do want a more robust showing to me

14  of the nature of the negotiations that goes to my consideration

15  of settlement, and I do not feel I have as much as I would like

16  at this point.

17        Similarly with respect to the nature of the discovery.

18  It is one thing to say there are "X" number of pages, but there

19  could have been a delivery of 500 telephone books.  So, the

20  significance of the discovery is something that I am interested

21  in here, and perhaps a little bit more detail on the parties'

22  characterization of the likelihood of success.  Every case is

23  pro and con, but I have to calibrate this to some degree, and,

24  as I have said, I am just a little bit concerned about the size

25  of the recovery by the people who are involved.

1          MR. MORRISON:  I understand, your Honor.  So, are you

2     asking for legal briefing on the likelihood of success?

3          THE COURT:  Trust me, I am not asking for people to

4     spend extraordinary amounts of time and effort and review on

5     it, but I would like a sense of the parties' view of if this

6     went to trial what would happen to it, and the reason to go to

7     trial is maybe a trial will cost $3.5 million to get it to

8     trial, but I want to have that more clearly in my mind here --

9          MR. MORRISON:  I understand.

10          THE COURT:  -- and the likelihood that those who are

11     claimants here would make or not make more than $10 or $9 a

12     pair.

13          MR. MORRISON:  Thank you, your Honor.

14          THE COURT:  So, let me go back, now, to this question

15     of objectors, because I got this set of requests for discovery

16     there.  Of course, I have read what the objectors have to say,

17     themes of ones that I am considering here, but I do not tie

18     them to the fact of objectors, particular objectors, things

19     were brought to my attention.  I do not think anything hinges

20     on the discovery, but maybe I am missing something.

21          Is there anything that hinges on this, other than

22     calling attention to various disabilities that objectors might

23     have themselves?  But their ideas do not necessarily have

24     disabilities.  I will treat them for what they are worth.

25          MS. POLLACK:  Your Honor, one of the things that we

1   had put in the Settlement Agreement and was in the order

2   authorizing notice was just simply proof of purchase by the

3   people who are objecting, because you have to have standing

4   from the get-go, and nobody provided that, and we thought that

5   would be something that would be helpful, to make sure people

6   have standing.

7            THE COURT:  What difference does it make?  This is to

8   say, "If you object you have got to have proof of purchase, but

9   otherwise we will let you have the $9?"

10           MS. POLLACK:  Well, you need to be a member of the

11   class --

12           THE COURT:  So, the people who are getting in without

13   providing proof of purchase, so what is being attached to it is

14   a disability that arises from having had the gall to object?

15           MS. POLLACK:  We don't disagree with that, your Honor.

16   We understand.  The Administrator has the ability to ask people

17   to put in proof of purchase if they think there is an issue for

18   any reason to protect the settlement fund, and it was something

19   that we put into the settlement.  It was in the notice and that

20   sort of thing.  So, we just felt that if it was there it should

21   be complied with in that respect.

22           MR. MORRISON:  I don't disagree that the objectors

23   need to have standing your Honor.  Your question was whether

24   the discovery request goes to the issues you have raised?

25           THE COURT:  Yes.

1         MR. MORRISON:  I think it does.

2         THE COURT:  That is part of it.  The other part of it

3  is whether or not I should just make my order with respect to

4  this not include the special burden for objectors.  It strikes

5  me as a form of retaliation for their unwillingness to go along

6  with things.

7         MS. POLLACK:  We certainly didn't mean it in that way,

8  your Honor.  We weren't pushing the issue, obviously.

9         THE COURT:  Well, you filed motions for discovery.

10         MS. POLLACK:  We did.  The cases seem to suggest, your

11  Honor, that people's motives for objecting aren't relevant.  We

12  were simply following --

13         THE COURT:  Why would they be relevant, really,

14  ultimately?  I am not asking about your motives.  I suppose

15  profit is a motive, but that is a matter of indifference to me.

16  The question is one of fairness under these circumstances.

17         MS. POLLACK:  We understand, your Honor.  We were

18  simply following the case law and what it said.  If the Court

19  feels that it's not necessary --

20         THE COURT:  Well, I just wonder if there is something

21  else other than just a shot across the bow involved in that

22  kind of reflexive response to asking for discovery under these

23  circumstances, if there is something meaningful going on here,

24  or if I am just meant to be an arm of assistance to the Claims

25  Administrator to help him out in his work or her work.

1          The short of it is, I look at this case law and I

2    wonder what it is other than belly-bumping.  Maybe there is a

3    justification, but I have not heard it yet.

4          MS. POLLACK:  We sort of put into our papers what we

5    thought were the reasons.  If the Court is not inclined, we are

6    not going to push the issue.

7          THE COURT:  I might, though.  I might push the issue

8    to find out what is going on and to, perhaps, deal with case

9    law that encourages that kind of extra dimension to this.

10   Certainly, you would not, if I were doing a lodestar analysis,

11   include that as part of the services rendered.

12         MS. POLLACK:  No, your Honor.

13         THE COURT:  So, am I missing something?  Is there

14   something here that I am missing, apart from what we have

15   discussed insofar as objectors are concerned?  The Claims

16   Administrator can do what claims administrators do with

17   everybody, but I do not know why we specially burden the

18   objectors, even though it is always disconcerting to be

19   attacked by gnats.

20         MR. MORRISON:  If I may, you looked at us, your Honor.

21   It's not our motion, and we do not think you are missing

22   anything.  I don't think there's anything untoward going on on

23   either side here.  I think the cases suggest that when someone

24   comes forward and tries to hold up a benefit for a large class,

25   that they have to at least make a minimum showing, and whether

1    you agree with that or not is really your decision.  I want to

2    stress from our perspective there is nothing untoward going on,

3    there is nothing under the surface, as far as defendants are

4    aware.

5             THE COURT:  But I still do not understand it.  I am

6    not going to let go on this one.  I do not understand it,

7    except as, "Here, we are going to make you pay a tax for

8    objecting, and the tax is that you will be open to discovery,"

9    and I am not sure what that serves except some sort of

10   additional weight in the balance of advantage in connection

11   with settlement, and I am not sure that that is part of what I

12   should be doing.  I am supposed to be evaluating this on its

13   own terms and trying to decide whether or not it is fair.  I

14   get observations by objectors, I will consider the arguments, I

15   guess.  Motive seems to me to be, as I say, a matter of

16   indifference to me.

17            MR. MORRISON:  I don't disagree with you, your Honor.

18   From our perspective, I think the objections that were raised

19   were ones that you, in the exercise of your discretion, were

20   likely to raise yourself or questions or issues you were likely

21   to raise.  So, from our perspective, we understand where you're

22   coming from.

23            THE COURT:  All right.

24            And I would like to have updated the fee support here

25   through today and through any additional materials, because,

1    while I will consider this a common fund, I do check that

2    against lodestar.

3          So, how quickly can we have this?  I am not planning

4    on holding this up for any extended period of time.

5          MR. MORRISON:  If I may, your Honor, and I know you

6    are the person who usually asks questions, but just so I can

7    make sure we can give you what is responsive, is your concern

8    the amount of payment per pair?

9          THE COURT:  It is all of it.  I am asked to approve

10   something that is fair.  I am told that in the papers, and I

11   find out today what the figure is, that that it is $95 to zero.

12   If this were a zero settlement or a $2 settlement, I probably

13   would find this not necessarily fair.  If it were a $91

14   settlement, I would probably say, "Seems fair to me."  But now

15   I am at $9, more or less, and so I just want to understand in

16   the fullest possible context what it is that I am signing off

17   on, because this is, as you know, not a private negotiation

18   between the parties but something that is seeking the

19   imprimatur of the Court.

20         So, I have outlined things that I think are critical,

21   if not critical, important to me.  You will respond however you

22   respond, and I will consider whatever you respond with.

23         MR. MORRISON:  I appreciate that.

24         THE COURT:  If there are some things you prefer not to

25   talk about, that is fine.  That is your choice.  It may inflect

1   how I view it, but the first cut is to afford you the

2   opportunity on things that are bothering me --

3           MR. MORRISON:  I understand.

4           THE COURT:  -- to provide additional information.

5           MR. MORRISON:  The answer to your question in terms of

6   how long it will take depends on one further question I have

7   for you.  When you ask for an affidavit from the class

8   administrator --

9           THE COURT:  I just thought that would be the person

10  who would be able to provide estimates that are reliable, as

11  opposed to one or the other of the parties saying, "We talked

12  to the class administrator, and he says this."

13          MR. MORRISON:  Of course.  No, I agree with that.  But

14  the question is do you want to wait until their entire analysis

15  is complete or --

16          THE COURT:  For instance, I am told it might be $8.50,

17  it might be $9.50, we are at the range, then that is good

18  enough.  If, by contrast, it might be 9 and then it might be 1,

19  then that is not good enough.  So, it sounds to me like he is

20  far enough along to know what the reasonable range will be for

21  this sufficiently to be able to say in an affidavit that it is

22  his judgment, based on his experience, that that is what we are

23  talking about.

24          MR. MORRISON:  I think that's right, your Honor.  I

25  point out in the New Balance case, which was before a different

1    judge in this court, as many as a third of the claims were

2    later invalidated by the Claims Administrator.  We used the

3    rule of thumb of 10 percent here.  We don't know what that will

4    be.  But certainly we can give you probably the bottom-line

5    number.  If all the claims were submitted today were allowed,

6    we could tell you what that number is.  It will go up modestly

7    from there as each claim is rejected.

8            THE COURT:  It might be helpful to say, "Here is what

9    would happen with one-third of them rejected."  It is

10   arithmetic in some sense, and even I am capable of arithmetic,

11   but it would be helpful to have the person who actually does

12   this sort of thing tell me what the range of things are here.

13           In some sense, from the defendant's point of view, it

14   is a matter of indifference to you.  You put your dollar figure

15   in, and that is that.  Whether it is somebody gets --

16   Cinderella gets $3.5 million for one pair of shoes or $155,000

17   people get $9 for a pair of shoes, it is a matter of

18   indifference to you.  It is a matter of importance to me in

19   terms of the fairness of the settlement.

20           MR. MORRISON:  It's important to us too, your Honor.

21   First of all, obviously, the settlement was a business decision

22   for Vibram, and there is a lot tied up in that business

23   decision.  Every class member is a Vibram customer, who we

24   value greatly.  So, it is of importance to us as well, your

25   Honor.  I understand your point, though, your Honor.

1          THE COURT:  So, that is where I am looking at this.

2     So, back to the question of timing.

3          MR. MORRISON:  I think we could probably accomplish

4     what you are looking for, your Honor, in a week, unless --

5          THE COURT:  This is not a test of manhood or womanhood

6     on this, just a reasonable amount of time to give you an

7     opportunity to respond to the questions that I am talking

8     about.  It is fresh in my mind, and sooner rather than later,

9     but not spoiling Thanksgiving.  I do not think it is going to

10    go that long, by the way.

11         MR. MORRISON:  I hope not, your Honor.

12         MS. POLLACK:  I was going to suggest two weeks.

13         MR. MORRISON:  Two weeks is fine with us.

14         THE COURT:  Two weeks is fine.

15         MR. MORRISON:  I just want to be clear, because I

16    don't want to disappoint you, your Honor.  You are looking for

17    an affidavit from someone who can tell you, based on their

18    experience, what the claim payment will be --

19         THE COURT:  Right.

20         MR. MORRISON:  -- that will make some assumptions of

21    the attorneys fee award, the cost award and the administration

22    cost award, of course.  Those will be stated in the affidavit.

23         THE COURT:  Right.

24         MR. MORRISON:  You are looking for some kind of

25    declaration from counsel for each side reflecting the nature

1    and course of negotiations?

2         THE COURT:  And the underlying discovery involved in

3    this case to this point.

4         MR. MORRISON:  And the underlying discovery involved

5    in the case.  And then you are looking for some brief statement

6    from each side about the strengths and merits of --

7         THE COURT:  Right, the evaluation of them, something

8    more than, without agreeing that you have committed a violation

9    of any consumer protection law, you agree to settlement, but,

10   "Here are the risks and concerns that we have," that is more

11   detailed than what I have received now.

12        MR. MORRISON:  I believe I understand, your Honor.

13        THE COURT:  I keep emphasizing this.  It is not meant

14   to be this intrusive test.  On the other hand, you are entitled

15   to know that I think that what I have received is far too

16   general and conclusory to leave me sufficiently satisfied that

17   I will not ask for something else.  I will take what you have

18   got and evaluate it in those terms --

19        MR. MORRISON:  I understand.

20        THE COURT:  -- and try promptly to resolve the

21   question of whether or not I am going to accept the fairness

22   judgment.

23        MR. MORRISON:  And would you like to see us again in

24   connection with that?

25        THE COURT:  I do not think so.  I love to see you all

1     the time, but I do not think I am going to set it down for

2     hearing.  I will give seven days after that for anybody who

3     wants to offer any additional comments, that is, the objectors

4     here.  Only one of whom has, I gather, chosen to be present,

5     and that is by phone.

6              MR. CAIN:  Yes, your Honor.

7              THE COURT:  So, you have got seven days after they

8     file to file anything further that you want here, or anybody

9     else does, put it on the record.  But only those persons who

10    have actually appeared in court or made arrangements to appear

11    are entitled to any further notice, as far as I am concerned,

12    except as reflected in the docket.

13             MR. CAIN:  Thank you.

14             THE COURT:  Anything else?

15             MS. POLLACK:  Your Honor, there's just one more matter

16    that I just wanted to clear up.  In my declaration we stated

17    with respect to things that the plaintiffs had themselves done

18    there was an inadvertent error, and I just wanted to correct

19    that on the record.  It's of no moment, but I just thought it

20    would be important to mention it.

21             THE COURT:  Go ahead.

22             MS. POLLACK:  We had gathered any materials the

23    plaintiffs were going to produce to the other side, and we

24    settled right before we sent it.  We were about to hit the

25    button and we settled.  So, in my declaration it says that we

1   sent it off to Vibram, but we actually had it ready to send it.

2   It didn't get sent.  I just wanted to clarify that.  But the

3   plaintiffs did look for documents, searched for documents,

4   responded to document requests, but we, the lawyers, did not

5   forward it to the other lawyers.

6          THE COURT:  Well, that is important -- not important,

7   not critical, but it is something that perhaps you will further

8   elucidate in the affidavit.

9          MS. POLLACK:  I will be happy to, your Honor.

10          THE COURT:  That is the kind of thing that I am

11   interested in.  Is it critical?  Probably not, but

12   understanding where things were at the time that the parties

13   decided to settle.

14          MS. POLLACK:  Yes, your Honor.  We will make sure that

15   we mention that in the upcoming affidavit.

16          THE COURT:  I have just a couple of I think small

17   things here.  With respect to the Final Judgment itself, there

18   is a reference to the persons who are excluded or excluded

19   themselves.  That is G in Paragraph 1.  I do not like to have

20   cross references, but I would like a list of them.  I think it

21   is -- is it Exhibit C?  I am trying to remember.

22          MS. POLLACK:  Yes, your Honor.

23          THE COURT:  I would like it just separately set forth

24   as an attachment to the judgment itself, and the reason for

25   that is simply this:  That if some other judge gets one of

1    these things brought by one of the persons who did not exclude

2    themselves, they can look at the document itself and say, "Wait

3    a minute, you did not exclude yourself on it," so it is

4    self-contained, the final judgment itself is self-contained.

5         The second issue here is just the language of the

6    resolution of Safavi.

7         MR. MORRISON:  Safavi, your Honor.

8         THE COURT:  Safavi.  It is a little squishy for me,

9    and so I guess I would like something just a little bit

10   stronger than "will promptly," maybe "shall promptly

11   stipulate," but something that does not seem as potentially

12   unenforceable as this language, and that may be reflected a

13   little bit.  I am not exactly sure, assuming that I do enter

14   judgment here, how I am going to deal with the parallel

15   language in the final order approving settlement.

16        Perhaps these are not as striking to the two of you,

17   but with respect to a final judgment itself, I want two things:

18   One is something that is self-contained that is the entire

19   judgment here, although there is a final order that is attached

20   to it, and that means a list of the people who are excluded, if

21   they are identified specifically.

22        The second is final judgment should be executing, and

23   so if there is language there that is not sufficiently specific

24   that it could not be executed on, that is, someone come to me

25   and say they did not stipulate, I would like to have it clear.

1    Maybe it is a little schoolmarmish to say I want "shall" rather

2    than "will," but that goes with the job.

3            MR. MORRISON:  If I may, your Honor, maybe we could

4    suggest -- I don't think there is any dispute among the

5    parties -- we were a little concerned about whether you could

6    order that it be dismissed, because, obviously, it is not under

7    your jurisdiction.  Perhaps, assuming, and I don't want to jump

8    ahead, but assuming we address all your concerns and you do

9    enter the final order approving, we would then, within 24

10   hours, file with you a copy notifying you that that action has

11   been dismissed, and then you would not be required to deal with

12   this.  The final order would enter a day or two after the order

13   approving.

14           THE COURT:  See, the problem is it is the premise on

15   which I am settling the case or agreeing to the fairness of the

16   settlement.  I recognize the conundrum that you are in here

17   because Safavi was never made a case here.

18           MR. MORRISON:  Correct.

19           THE COURT:  But it is a premise, and I would like to

20   have it tightened up a bit.  In the first instance, anyway, I

21   leave it to your thought about that.  Right now it just does

22   not feel that I could hold somebody in contempt, and that is

23   the kind of measure that I use of --

24           MR. MORRISON:  As the party benefiting from the

25   dismissal, we appreciate that, your Honor.

1          THE COURT:  Right, right.  So, you will work on those

2     two elements of the language.  That may mean some modification,

3     parallel modification of the final order approving this.

4          MR. MORRISON:  Of course.

5          THE COURT:  And what I would like in the final order

6     that is submitted, and it can be submitted with the materials

7     two weeks from now, is, if you can put it in or send an email

8     to Mr. Lovett so it is in Word format, and we can fill in the

9     blanks here, rather than sending it back to you to fill in the

10    blanks of something that I write in.

11          Anything else?

12          Anything else from -- is it Mr. Crane?

13          MR. CAIN:  Cain.  No, your Honor.

14          THE COURT:  Sorry, Mr. Cain.  Anything else that you

15    would like to offer here?

16          MR. CAIN:  No, your Honor.

17          THE COURT:  All right.  So, we have got a clear

18    understanding of what we are up to.

19          MR. MORRISON:  Thank you, your Honor.

20          MS. POLLACK:  Thank you, your Honor.

21          THE COURT:  Thank you.  We will be in recess.

22          THE CLERK:  All rise.

23       (The Honorable Court exited the courtroom at 3:05 p.m.)

24          (WHEREUPON, the proceedings adjourned at 3:05 p.m.)

25

1 C E R T I F I C A T E

2

3

4        I, Brenda K. Hancock, RMR, CRR and Official Reporter

5 of the United States District Court, do hereby certify that the

6 foregoing transcript constitutes, to the best of my skill and

7 ability, a true and accurate transcription of my stenotype

8 notes taken in the matter of *Bezdek, et al. v. Vibram*.

9

10

11

12

13

14 Date: November 4, 201        *s/ Brenda K. Hancock*
                                 Brenda K. Hancock, RMR, CRR
15                               Official Court Reporter

16

17

18

19

20

21

22

23

24

25