# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| VALERIE BEZDEK, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 12-10513-DPW |
| VIBRAM USA INC. and VIBRAM FIVEFINGERS LLC, | ) ) ) | |
| Defendants. | ) ) | |

---

### RESPONSE OF MADELINE CAIN IN OPPOSITION TO PLAINTIFFS' AND DEFENDANTS' "JOINT MOTION FOR IMPOSITION OF APPEAL BOND UNDER FEDERAL RULE OF APPELLATE PROCEDURE 7" [Doc. 119]

---

Comes Madeline Cain ("Ms. Cain"), by and through her undersigned counsel, and respectfully submits her response in opposition to the Plaintiffs' and Defendants' Joint Motion for Imposition of Appeal Bond [Doc. 119], and would state as follows:

Christopher T. Cain (TN BPR# 19997)
**SCOTT & CAIN**
Bank of America Center, Suite 601
550 Main Street
Knoxville, Tennessee 37902
Tel: 865-525-2150

*Counsel for Madeline Monti Cain*

# TABLE OF CONTENT

I.      PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     THE APPEAL BOND SOUGHT BY THE PARTIES SHOULD BE DENIED. . . . . . . . 3

        A.      Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        B.      The Merits of an Appeal Should Be Determined By the Court of Appeals. . . . . . 4

        C.      Ms. Cain's Appeal Raises Serious and Legitimate Issues – Some of Which
                Were Raised By the District Court – Concerning the Fairness of the
                Settlement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        D.      Plaintiffs' Argument That an Appeal Bond is Warranted Due to the Fact Ms.
                Cain's Counsel is a Purported "Serial" Objector Should Be Rejected. . . . . . . . 11

        E.      Private and Public Factors Weigh Heavily Against Imposition of a Bond. . . . . 14

III.    CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**MAY IT PLEASE THE COURT:**

## I.  PRELIMINARY STATEMENT

20-year old Madeline Cain ("Ms. Cain") has appealed the Court's approval of a class action settlement which reduced Class members' anticipated recovery from $94 per pair of footwear purchased from the Defendants' to a mere $8.44 per pair.  Before the Court is a motion by the Plaintiffs and Defendants (hereinafter, "the parties") jointly seeking an order from the Court imposing a $58,365 appeal bond on Ms. Cain, purportedly representing "double court costs, administrative costs, and attorneys' fees" the parties expect to incur in connection with appeals by three settlement objectors.  [Doc. 119, at p. 1].

While the parties maintain that Ms. Cain's appeal is "patently frivolous," the filings made by Ms. Cain in support of her objections [Docs. 84, 105], the substance of those objections, and the settlement approval proceedings conducted by this Court [Doc. 99] all make it abundantly clear that Ms. Cain's appeal is not at all frivolous.  Indeed, this Court expressed many of the same concerns as Ms. Cain prior to its eventual approval of the settlement.

A Rule 7 bond is not designed "to impose an independent penalty on the appellant." *Capizzi v. States Res. Corp.*, 2005 U.S. Dist. LEXIS 7338, at *4 (D. Mass. Apr. 26, 2005).  Make no mistake, however, that is precisely what the parties seek to do in this instance.  To wit: it appears the real purpose of the parties' substantial bond request is simply to intimidate Ms. Cain and her counsel into abandoning her appeal.  As demonstrated below, this is neither the purpose nor the intent behind appeal bonds.  Requiring Ms. Cain to pay an appeal bond that would exceed the minimal costs associated with printing and copying appellate briefs in this case would be clear legal error and a manifest injustice.

First, the parties have pointed to no rule or statute that would render Ms. Cain liable for the "administrative costs" or "attorneys' fees" even assuming her appeal fails.  Accordingly, the only basis on which to require Ms. Cain to post a bond for those costs is if her appeal is deemed "frivolous."  However, contrary to the parties' intimations, Rule 7 does not provide that the Court should consider the merits of an appeal in determining whether to impose an appeal bond.  Rather, the question of whether Ms. Cain's appeal has any merit or is frivolous is one for the First Circuit, and not for this Court, which previously overruled her objections.

Second, even if Rule 7 did permit such a merits inquiry, Ms. Cain's appeal presents important issues, several of which the Court plainly considered.  What's more, the Court did not suggest or otherwise intimate that Ms. Cain's arguments were "frivolous."  Moreover, Ms. Cain raises one or more issues which appear to be of first impression in this Circuit, *e.g.*, the propriety of requiring more proof from Class members who object than from Class members who submit claims.  The evidence in the record does not enable the Court to conclude – definitively or otherwise – that Ms. Cain is pursuing her appeal for an improper purpose.  Finally, while the parties imply that Ms. Cain's appeal was instituted in bad faith, they fail to cite a single instance where Ms. Cain (or her counsel) has been found to have filed a "frivolous" appeal in the past.  Finally, the question of whether, or how, to deter frivolous appeals is one best left to the First Circuit.

Third, the parties' assault on Ms. Cain's counsel as a purported "serial" or "professional" objector is not only factually misguided but it also demonstrates a basic misconception about the importance of objectors in the class action settlement process, as well-recognized by respected jurists and commentators.

Fourth, private and public factors also weigh heavily against imposition of a large bond in this case.  For instance, the parties have not even attempted to demonstrate that the 20-year old Ms. Cain has the financial wherewithal to post a $58,365 appeal bond, and for good reason.  Similarly, the parties have also failed to show a reasonable risk of nonpayment.  Finally, public policy concerns also favor of a minimal bond amount, as requiring too large a bond will have the undesirable effect of "chilling" meritorious appeals.  When faced with a large bond requirement, many appellants, such as Ms. Cain, may simply be unable to post the bond to pursue an appeal, compelling them to turn away from their appeals.  And thus, imposing a large bond effectively cuts off any right to appeal, takes away that right altogether, and forces the abandonment of otherwise meritorious appeals.

Having failed to satisfy the requirements for imposition of an appeal bond to secure damages or attorneys' fees, the parties' motion should be granted only to the extent they seek an appeal bond to cover the actual costs on appeal, an amount which should not exceed $175.

## II.  THE APPEAL BOND SOUGHT BY THE PARTIES SHOULD BE DENIED

According to the parties, the proposed bond amount would include "approximately half the attorneys' fees and costs Plaintiffs and Defendants are likely incur." [Doc. 119, at p. 5].  Of course, no precedent by the First Circuit permits such a large bond to be imposed on a 20-year old consumer, absent either (1) a substantive statute underlying the claims at issue permitting recovery of costs, or (2) a frivolous appeal.  Here, the parties neither cite nor rely upon a "substantive statute" to secure damages or attorneys' fees.  And while the parties contend that Ms. Cain's appeal is "patently frivolous," their argument is, frankly, unpersuasive and unconvincing.  In the last analysis, the only costs which may be properly included in the appeal bond sought in this instance are those minimal costs associated with printing and copying the parties' appellate briefs.

-3-

At the outset, Rule 7 does not condition the right to an appeal on the filing of an appeal bond. Moreover, it is highly unlikely that, in an era of electronic case management and e-filings, costs associated with an appeal of a judgment approving a class action settlement will exceed $175. Accordingly, imposing an appeal bond such as that requested is supported by neither law nor the facts.  Ms. Cain, however, does not oppose an appeal bond to secure the actual anticipated costs on appeal, which should not surpass $175.

### A.    Standard of Review

"The power to impose an appeal bond under Rule 7 has been specifically given to the discretion of the district court."  *Adsani v. Miller*, 139 F.3d 67, 79 (2d Cir. 1998).  Rule 7 provides in relevant part that, "[i]n a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal."  The purpose of a Rule 7 bond is to "ensure that the appellee will be paid any costs that are awarded to him if the appellant is unsuccessful on the appeal."  20 James Wm. Moore et al., *Moore's Federal Practice* § 307.10[1] (3d ed. 2010).   Thus, "[c]osts for which a Rule 7 bond can be required include only costs relating to the appeal," *id*.; that is, costs which "the appellee stands to have reimbursed" should he prevail on appeal, *Adsani v. Miller*, 139 F.3d 67, 75 (2d Cir. 1998).

### B.    The Merits of an Appeal Should Be Determined By the Court of Appeals

Under First Circuit precedent, "[t]he determination of the nature and amount of the bond is a matter left to the sound discretion of the district court." *Sckolnick v. Harlow*, 820 F.2d 13, 15 (1st Cir. 1987).  Circuit courts addressing the meaning of "costs on appeal" have consistently linked that

phrase to costs that a successful appellate litigant can recover pursuant to a specific rule or statute.[1]

The First Circuit permits an appeal bond to cover costs which are expressly recoverable "as costs"

under the substantive statute underlying the claims at issue.  *See Int'l Floor Crafts, Inc. v. Dziemit*,

420 Fed. Appx. 6, 17 (1st Cir. 2011) (unpublished).[2]  In addition, the First Circuit, contrary to several

other circuits, permits an appeal bond to cover attorneys' fees recoverable under Fed. R. App. P. 38,

which provides that "[i]f a court of appeals determines that an appeal is frivolous, it may . . . award

just damages and single or double costs to the appellee," if there is "a real possibility" that the court

of appeals will deem the appeal to be frivolous."  *Sklolnick v. Harlow*, 820 F.2d 13, 14-15 (1st Cir.

1987) (per curiam).[3]  As demonstrated herein, neither requirement is met in this case.

Although the parties do not and indeed cannot rely upon a substantive statute underlying the

claims at issue, they do argue that Ms. Cain's arguments on appeal are frivolous.  Indeed, the parties

---

[1]This is true even though the circuits  disagree as to precisely what costs a Rule 7 appeal bond can cover.  For example, the D.C. and Third Circuits restrict an appeal bond to costs listed in Fed. R. App. P. 39, which include "(1) the preparation and transmission of the record; (2) the reporter's transcript, if needed to determine the appeal; (3) premiums paid for a supersedeas bond or other bond to preserve rights pending appeal; and (4) the fee for filing the notice of appeal." *See In re Am. President Lines, Inc.*, 779 F.2d 714, 716, 250 U.S. App. D.C. 324 (D.C. Cir. 1985) (per curiam); *Hirschensohn v. Lawyers Title Ins. Corp.*, No. 96-7312, 1997 U.S. App. LEXIS 13793, 1997 WL 307777, at *1-*3 (3d Cir. June 10, 1997) (unpublished).

[2]*See Adsani v. Miller*, 139 F.3d 67, 71-75 (2d Cir. 1998); *see also Azizian v. Federated Dep't Stores, Inc.*, 499 F.3d 950, 953-54 (9th Cir. 2007); *Pedraza v. United Guar. Corp.*, 313 F.3d 1323, 1328-35 (11th Cir. 2002).  The Sixth Circuit goes further, permitting an appeal bond to cover appellate attorneys' fees recoverable under the substantive statute underlying the litigation, even if that statute does not expressly state that those fees can be recovered "as costs." *In re Cardizem CD Antitrust Litig.*, 391 F.3d 812, 815-18 (6th Cir. 2004).

[3]*But see Vaughn v. Am. Honda Motor Co.*, 507 F.3d 295, 298-99 (5th Cir. 2007) (per curiam) (holding an appeal bond cannot cover appellate attorneys' fees under Fed. R. App. P. 38); *Azizian*, 499 F.3d at 954, 960-61 (9th Cir.) (same); *In re Am. President Lines*, 779 F.2d at 716-17 (D.C. Cir.) (same).

argue at length that Ms. Cain's objections were rejected by this Court (a fact readily conceded by Ms. Cain), but then, they twist, turn, and contrive the Court's decision overruling Ms. Cain's objections and approving the settlement into one suggesting Ms. Cain's appeal is frivolous. To be sure, this blithe embellishment of the record has no factual basis, and what's more, it is simply wrong.

The parties suggest, as the class plaintiffs did in *In re Lawnmower*, that an appeal bond is proper because the appeals are purportedly "frivolous" or "without merit." Ms. Cain submits, as most Circuits view it, that Rule 7 is not a vehicle for screening-out frivolous appeals. As the *In re Lawnmower* court correctly observed, Rule 7 does not provide that the Court should consider the merits of an appeal in determining whether to impose an appeal bond. *Id*. at *18-19.[4]

### C. Ms. Cain's Appeal Raises Serious and Legitimate Issues – Some of Which Were Raised By the District Court – Concerning the Fairness of the Settlement.

This Court is well aware of Ms. Cain's arguments as to the settlement and attorneys' fees. There is no doubt that the parties and the Court disagreed with those arguments. The Court's

---

[4]*See, e.g.*, *Azizian v. Federated Department Stores, Inc.*, 499 F.3d 950, 961 (9th Cir. 2007) ("The question of whether, or how, to deter frivolous appeals is best left to the courts of appeals, which may dispose of the appeal at the outset through a screening process, grant an appellee's motion to dismiss, or impose sanctions including attorney's fees under Rule 38 . . . Allowing districts court to impose high Rule 7 bonds on where the appeals might be found frivolous risks impermissibly encumbering appellants' right to appeal and effectively preempts [the appellate court's] prerogative to make its own frivolousness determination.") (internal citation, alterations, and quotation marks omitted); *In re Am. Invs. Life Ins. Co. Annuity Mktg. and Sales Practices Litig.*, 695 F. Supp. 2d 157, 166 (E.D. Pa. 2010) ("Courts in this circuit have found "that the Court of Appeals is the best forum to litigate the merits of the appeal and to account for any frivolity that harms the plaintiffs."); *see also Rossi v. Proctor & Gamble Co.*, No. 11-7238, 2014 U.S. Dist. LEXIS 34180, 2014 WL 1050658, at *2 (D. N.J. March 17, 2014) ("Plaintiff cites no binding legal authority suggesting that a district court may step into the shoes of an appellate court to decide whether an appeal is frivolous . . . ."); *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine Prods. Liab. Litig.)*, No. MDL-1203, 2000 U.S. Dist. LEXIS 16085, 2000 WL 1665134, at *5 (E.D. Pa. Nov. 6, 2000) ("Rule 7 was not intended to be used as a means of discouraging appeals, even if perceived to be frivolous.")

decision, however, did not so much as even imply that Ms. Cain's objections were "frivolous." Notwithstanding the opinions of the parties' counsel and the Court, however, Ms. Cain is undeterred in her belief that the settlement's terms were unfair to Class members.  In fact, as discussed herein, one or more of the issues presented by Ms. Cain appear to be issues of first impression in the First Circuit.

The parties characterize Ms. Cain's objections to the proposed settlement as "vague," ineffectually arguing that Ms. Cain's appeal is "frivolous."  [Doc. 119, at pp. 2-4].  Naturally, Ms. Cain holds an entirely opposite view of the validity and strength of her arguments on appeal.  While the parties falsely contend that Ms. Cain's objections to the settlement were "vague," the record reveals otherwise.  For instance, Ms. Cain's initial concern with the fairness of proposed settlement was the inability of Class members to calculate the value of their own claims.  Ms. Cain pointed to the Notice of Class Action, Part III, Section 9, at p. 5, which provides:

> it is reasonable to expect that Class Members may receive a payment in the range of $20.00 to $50.00 per pair, which could increase (up to the approximate average retail price of $94).

[Doc. 105, at p. 3].  At the settlement hearing, the Court mirrored Ms. Cain's own concern about the amount to be received by each claimant, rightly observing that it was "*material to me to have some idea of what kind of dollar figures we are talking about here*."  [Doc. 99, at p. 4] (emphasis added). Responding to both Ms. Cain's and the Court's concerns, Plaintiffs' counsel replied that the "dollar figures" were "approximating around $9 per pair.  It could be $8.50, it could be $8.75, it could be $8.95.  It's around that neighborhood."  [Doc. 99, at p. 4].  Thus, Plaintiffs' counsel verified that Class members would not be receiving $94 per pair at all, nor would they be receiving $50 per pair, as estimated by the official Class notice; for that matter, nor would Class members be receiving even

$20 per pair – the far low-end of the range provided in the Class notice.  Instead, Class members would likely receive at most between $8.95 and $8.50, less than half of the amount Class members were told they would receive in the Class notice, and less than 10% of the amount listed by Plaintiffs' counsel as the high-end of the range per pair ($94.00).  [Doc. 105, at p. 3].  After the Court instructed Plaintiffs' counsel to provide an update of the "dollar figures," Plaintiffs informed the Court that Class members could not expect even the low-end of the per-pair estimate previously provided to the Court, but a lesser amount: $8.44.  [Docs.  103, at Page 10; 104, at Page 4].

Although the Court inquired about material differences between the estimated size of the Class and the number of claimants [Doc. 99, at p. 5], it appears Plaintiffs did not respond, and the Court, as well as Ms. Cain, was bereft of that information.  In the end, the Court's original blunt assessment of the settlement was correct: "*the settlement is rich for the attorneys. $9 a pair ain't so rich*."  [Doc. 99, at p. 7] (emphasis added).

Ms. Cain also objected to the unknown costs of administration and notice, noting this amount was likely substantial and would necessarily dilute the net settlement available to pay the claims of Class members.  Significantly, the Court was concerned about these costs as well.  [Doc. 99, at p. 7].  The net amount of the settlement is being reduced by $937,500 for attorneys' fees, $61,674.44 for attorneys' expenses, and $6,500 for incentive awards [Doc. 104, at p. 4].  Plaintiffs' counsel later advised the Court that almost half a million dollars – $483,955.11 – will de deducted for estimated notice and administrative costs.  [Doc. 104, at p. 3].  Thus, out of the $3.75 million settlement fund, almost $1.5 million will be deducted for fees, expenses, and costs, leaving $2,262,725.43 (at most) to pay the claims of Class members at the pathetically reduced rate of $8.44 per pair.

-8-

Finally, along with Ms. Cain, the Court inquired about the burden placed upon Ms. Cain and other objectors to provide a "proof purchase," although Class members are not required to provide "proof of purchase" in most circumstances.  [Doc. 99, at pp. 9-12].  Making objectors meet some arbitrary burden not imposed on others is a punitive measure intended to intimidate Class members from disagreeing with the settlement.

Finally, Ms. Cain cannot overemphasize that although the Court overruled her objections and intimated its disagreement with her positions raised therein, it did not, in all of the pages encompassing its decision, characterize ant of Ms. Cain's arguments as "frivolous."[5]

**The parties' allegations of bad faith are unwarranted.**  To be sure, legitimate issues exist in this appeal.  The evidence in this Court's record simply does not enable the Court to conclude – definitively or otherwise – that Ms. Cain is pursuing her appeal for an improper purpose.  What's more, as noted earlier, "the question of whether, or how, to deter frivolous appeals is best left to the courts of appeals, which may dispose of the appeal at the outset through a screening process, grant an appellee's motion to dismiss, or impose sanctions including attorney's fees under Rule 38."  *See Azizian v. Federated Dep't Stores, Inc.*, 499 F.3d 950, 961 (9th Circ. 2007).  For instance, as the Ninth Circuit held:

> "Allowing district courts to impose high Rule 7 bonds on where the appeal might be found frivolous risks impermissibly encumbering appellants' right to appeal and effectively preempting this court's prerogative to make its own frivolousness determination."

---

[5]Moreover, the Court should also be mindful of the novelty of this area of law, and that Ms. Cain presents substantive issues that could warrant additional consideration on appeal. *See, e.g., Chiavarini, Inc. v. Frenchie's Fine Jewelry, Coins & Stamps, Inc.*, 2008 U.S. Dist. LEXIS 45726, at *2 (E.D. Mich. June 12, 2008) (district court noting that although it disagrees with the plaintiff's claims on appeal, "the claims raised are viable and substantial issues").

*Id*. (emphasis and quotations omitted).

Significantly, the parties are not without recourse if an appeal is ultimately determined to be frivolous. For example, the amount of the bond set by the district court is also subject to review on appeal. *See, e.g., Azizian*, 499 F.3d at 955. Also, the parties may move to dismiss or expedite the appeal or move the First Circuit to impose monetary sanctions, if the appeal is found to be frivolous. *See* Fed. R. App. P. 38 (2008); 28 U.S.C. § 1912.

In the final analysis, the parties cannot point to any direct evidence of ill will or dishonest purpose on the part of either Ms. Cain or her counsel. At bottom, their arguments are nothing more than conjecture. And although the Court may have disagreed with the arguments made by Ms. Cain, and while Ms. Cain and her counsel might have disagreed with the Court's decision to grant final approval of the settlement, the fact remains that the "purpose of the appeals process is to permit objectors to challenge such rulings." *In re Countrywide Fin. Corp. Customer Data Security Breach Litig.*, 2010 U.S. Dist. LEXIS 131775 (W .D. Ky. Dec. 13, 2010).

Accordingly, there is no evidence before the Court to support the notion that the present appeal was filed for purposes of harassment or in bad faith. Therefore, this matter is best left to the discretion of the First Circuit. *See, e.g., In re Air Cargo Shipping Servs. Antitrust Litig.*, 2010 U.S. Dist. LEXIS 27242, at *7 (E.D. N.Y. Mar. 22, 2010) ("it is for the court of appeals and not the district court to decide whether Rule 38 costs and damages should be allowed in any given case").

Additionally, granting an excessive appeal bond on the supposition that an appeal is frivolous would create precisely the sort of multiple levels of review of an appeal that the United States Supreme Court explicitly rejected in *Devlin v. Scardelletti*, 536 U.S. 1 (2002). *Devlin* established the right of class action objectors to appeal without first seeking intervention. In doing so, the Court

-10-

expressly rejected the formality which had been adopted by several circuits "to require class members to intervene for purposes of appeal." *Devlin*, 536 U.S. at 11.  The court found no purpose to the formal barrier to appeal given "the ease with which nonnamed class members who have objected at the fairness hearing could intervene for purposes of appeal." *Id*. at 12.

The Supreme Court found the formal intervention rule impractical due to the numerous issues "which should be easily addressable by a court of appeals." *Id*. at 13.  The requirement to intervene required district courts to consider issues normally considered by the appellate court such as "standing to appeal, waiver of objections below, and consolidation of appeals." *Id*. at 14. Should parties be dissatisfied with a district court's decision on intervention, "such determinations still would most likely lead to an appeal." *Id*.  Appellate courts would then consider the same issues analyzed by the district court.  Thus, the formal intervention rule "would only add an additional layer of complexity before the appeal of the settlement approval may finally be heard." *Id*.

Similarly, punitively-constructed and implemented appeal bonds designed and imposed to block supposedly unmerited, frivolous,  or vexatious appeals also require district courts to consider issues best suited to appellate courts.  Should appellant-objectors ever be dissatisfied with their appeal bond, they can simply appeal the bond determination itself, adding yet another layer of complexity, which the *Devlin* court explicitly repudiated.

D.    **The Parties' Argument That an Appeal Bond is Warranted Due to the Fact Ms. Cain's Counsel is a Purported "Serial" or "Professional" Objector Should Be Rejected.**

The parties incorrectly characterize Ms. Cain's counsel as a "serial" or "professional" objector, ridiculously imputing some sort of impure or improper motive to his representation.  The parties' argument regarding Ms. Cain's counsel is, to say the least, well off-the-mark, and

demonstrates, among other things, a fundamental misconception of the importance and role of objectors in the class action settlement process. In contrast to the parties' condemnation of objectors, well-respected jurists[6] and commentators[7] alike have taken a decidedly different view, acknowledging the important role played by objecting class members in the final approval determination. More than anything else, settlement objectors are a tool for ensuring that settlements are fair, reasonable, and adequate. Among other benefits, objectors:

- can focus the Court's attention on problems in the proposed settlement that neither the plaintiffs' nor the defense counsel want to call to the Court's attention because they want the settlement finally approved;

- can force the settling parties to justify these weaknesses in the proposed settlement; and

- can either prompt an improvement in the proposed settlement's terms or convince the Court that approval of the proposed settlement is not warranted, making the parties return to litigation.

---

[6]*E.g.*, *Redman v. Radioshack Corp.*, 2014 U.S. App. LEXIS 18181, at **13-14 (7th Cir. Sept. 19, 2014) (Posner, J.) ("When there are objecting class members, the judge's task is eased because he or she has the benefit of an adversary process: objectors versus settlors (that is, versus class counsel and the defendant."); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, MDL Docket No. 1361, 2003 U.S. Dist. LEXIS 25788, at *7 (D. Maine Oct. 7, 2003) (Hornby, J.) ("I am also mindful of the fact that objectors sometimes serve a useful role in helping police class action settlements in cases where the assumptions that customarily underlie the adversary system may be inaccurate (for example, defendants may co-opt plaintiffs' counsel by agreeing to unreasonably high attorney fees). To pose too high a hurdle for objectors, therefore, could create a general deterrent that might well not comport with public policy.")

[7]Wasserman, R., *Dueling Class Actions*, 80 B. U. L. Rev. 461, 483 (April 2000) (concluding that objectors are the only parties with an incentive to uncover flaws in the proposed settlement); Morrison, Alan B., *Improving the Class Action Settlement Process: Little Things Mean a Lot*, 79 Geo. Wash. L. Rev. 428 (Feb. 2011) ("objectors make the system work better overall, and perhaps even make it more difficult for class counsel to overreach in a way that harms defendants. Judges . . . increasingly realize that counsel for objectors can help them carry out their responsibilities.")

Three of the leading class action cases of the last two decades – *Amchem,*[8] *Ortiz,*[9] and *Devlin*[10] – resulted when objectors litigated successfully all the way through to the Supreme Court. Contrary to the parties' universal condemnation of objectors, some objectors are truly motivated by a desire to improve the settlement for class members and to protect class members from receiving an unfair deal. Moreover, while the parties seek to tag the undersigned as a so-called "serial" or "professional" objector, even a cursory glance at PACER shows that he is most often listed as a plaintiff's and class counsel in class actions, as opposed to being counsel for objectors.[11]

Nevertheless, it is difficult, if not impossible, to parse out which objectors are before the Court to actually improve the terms of the settlement for absent class members and which objectors are there merely seeking a personal payout. Therefore, the solution for any Court is to focus on the substance of the actual objections made, and not who made them. Regardless of who's objecting, the arguments are either valid or they are not, and the Court, as a fiduciary to the settlement class, is obliged to at least read and consider them. In the final analysis, it really should not matter if an objector is a prolific objector or if he or she has never before objected. What matters is what they are saying.

---

[8] *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997).

[9] *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 841-845, 119 S. Ct. 2295, 144 L. Ed. 2d 715 (1999).

[10] *Devlin v. Scardelletti*, 536 U.S. 1 (2002).

[11] Ms. Cain has never previously objected to a class action settlement.

-13-

**E.      Private and Public Factors Weigh Heavily Against Imposition of a High
        Appeal Bond.**

Neither Rule 7 nor the First Circuit has provided explicit guidance in enumerating the factors

a court should consider in determining whether to require a bond.  Other district courts, however,

have articulated three relevant elements of the inquiry: (1) appellant's financial ability to post bond;

(2) the risk that appellant would not pay the costs if the appeal loses; and (3) an assessment of the

likelihood that appellant will lose the appeal and be subject to costs.  *See Schulken v. Wash. Mut.

Bank*, 2013 U.S. Dist. LEXIS 48175, at *12-13 (N.D. Cal. Apr. 2, 2013).  Examination of these

factors in this case inescapably demonstrates that a bond exceeding $175 would be excessive.

        ***The parties have not demonstrated (nor can they demonstrate) that Ms. Cain has the

financial wherewithal to post a $58,365.00 appeal bond.***  The first factor, ability to pay, is grounded

in due process concerns.  *See Azizian*, 499 F.3d at 961 (noting constitutional concern regarding

unduly burdening the right to appeal).  Here, there is no evidence whatsoever indicating that Ms.

Cain, a 20-year old female, barely 2 years removed from high school, working a job which pays

approximately minimum wage,  would be able to post such a large bond.  Consequently, this factor

weighs against requiring a bond securing more than the minimal costs on appeal, *e.g.*, $175.

        ***The parties have also failed to demonstrate a reasonable risk of nonpayment.***  The parties

feign that a risk of nonpayment exists because Ms. Cain is represented by an attorney who is a

"serial" or "professional" objectors, *i.e.*, attorneys who specialize in objecting to large class-action

settlements.  For certain, this argument is flat-out wrong.  In fact, in the event that Ms. Cain is

unsuccessful on appeal <u>and</u> fails to pay costs assessed against her, the parties would merely need to

institute a collection action against her to recover such costs.  Besides, just as one court recently (and

-14-

rightly) concluded in resolving this very argument:

> the fact that the objectors are represented by counsel who specialize in objecting to class-action settlements is not a reason to think that they will shirk their liability for costs on appeal.

*In re Lawnmower Engine Horsepower Marketing & Sales Prac. Litig.,* 2010 U.S. Dist. LEXIS 123761, at *18 (E.D. Wisc. Nov. 2, 2010) (footnote omitted).

In short, the parties have produced nothing whatsoever to permit the Court to assess whether, much less to conclude, there is an actual, as opposed to a speculative, risk of nonpayment of costs. As a result, this factor also weighs against requiring a bond securing more than the minimal costs on appeal.

**Requiring an excessive appeal bond will have the undesirable effect of chilling meritorious appeals.** In addition to the private factors discussed above, public policy concerns also weigh heavily against imposition of such a high appeal bond in this instance. While Rule 7 leaves the question of whether a bond should be imposed, and if so, the amount of the bond, to the sound discretion of the district court, *Page v. A. H. Robins Company*, 85 F.R.D. 139, 140 (E.D. Va. 1980), the Court should be mindful of the ramifications of an excessive bond:

> These decisions are not without consequence. Requiring too large a bond may have the undesirable effect of discouraging meritorious appeals. Requiring too small a bond, or no bond at all, may encourage frivolous, time-consuming, harassing appeals.

*Id*. *See Clark v. Universal Builders, Inc.*, 501 F.2d 324, 341 (7th Cir. 1974) (stating that "any attempt by a court at preventing an appeal is unwarranted and cannot be tolerated"). After all, while the purpose of an appellate cost bond is "to protect the rights of appellees . . . ." *Pedraza*, 313 F.3d at 1333.

In conclusion, a district court may not impose a bond in an amount beyond what is necessary to ensure adequate security if to do so would effectively preclude pursuit of an appeal.  *Lindsey v. Normet*, 405 U.S. 56, 77-79 (1972) (holding statute conditioning appeal on posting of double bond unconstitutional under Fourteenth Amendment equal protection clause).  For all of Ms. Cain to pay a Rule 7 appeal bond in the sum of amount of $58,365.00, is likely to "chill" this appeal, as the parties well know.  *Id*. at 960.

### III.   CONCLUSION

In conclusion, the appeal bond requested by the parties is plainly excessive.   For all of the foregoing reasons, the Court should limit any appeal bond to $175.

Respectfully submitted, this 30th day of March, 2015.

/s/ Christopher T. Cain
Christopher T. Cain (TN BPR# 19997)
**SCOTT & CAIN**
Bank of America Center, Suite 601
550 Main Street
Knoxville, Tennessee 37902
Tel: 865-525-2150

-16-

**CERTIFICATE OF SERVICE**

I hereby certify that on March 30, 2015, a copy of the foregoing was submitted electronically.

Notice of this filing will be sent by operation of the Court's electronic filing system to all parties

indicated on the electronic filing receipt.  All other parties will be served by regular U.S. Mail.

Parties may access this filing through the Court's electronic filing system.

/s/ Christopher T. Cain
Christopher T. Cain